# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KŌLOA RUM COMPANY,<br>3-2087 Kaumualii Highway<br>Lihue, HI 96766,<br><br>        Plaintiff,<br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, 2707 Martin Luther King Jr Ave SE Washington, DC 20528-0525; and PETE R. FLORES, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, Suite 4.4-B, Washington, DC 20229,<br><br>        Defendants. | Civil Action No. 1:25-cv-554 |

## **COMPLAINT**
## INTRODUCTION

1.  Bob Gunter embodies the American Dream. A South Carolinian by birth, Bob came to Hawaiʻi while serving in the military. He subsequently worked in Hawaiʻi's sugar industry which enabled him to support a family. The Gunters split the ensuing years between Kauaʻi and Maui when Bob was introduced to the distilling business. This awakened his entrepreneurial spirit and reinforced everything he loved about Hawaiʻi.

2.  In early 2008, Bob accepted an opportunity to join with a local group of investors to build a rum distillery on Kauaʻi. Starting a distillery from scratch is no easy task, but, in 2009, with determination and hard work, Kōloa Rum Company was born.

1

3.　　For nearly two decades, Kōloa Rum Company has bottled the spirit of Hawaiʻi, crafting world-class premium rum in the very same region where farmers operated Hawaiʻi's first successful commercial sugar plantation in the 1800s. From locally sourced ingredients, like the pristine rainwater from Mount Waiʻaleʻale, to its location on the Garden Island, Kōloa Rum Company captures the Aloha Spirit in all it produces.

4.　　Kōloa Rum Company is the type of business that shows the world what America is about. An individual was able to pursue a dream 5,000 miles from where he grew up—but still in America. He had an entrepreneurial vision, and his hard work made it—and continues to make it—real. Kōloa Rum Company is precisely the type of business our laws should be supporting.

5.　　But Kōloa Rum Company's ability to share its unique, award-winning spirits with Americans living in the mainland United States is crippled by an obsolete, protectionist law that artificially inflates Kōloa Rum Company's costs and places an unjustified and unconstitutional burden on its imports and exports.

6.　　The Merchant Marine Act of 1920 (colloquially known as the "Jones Act") is a century-old shipping law that strangles Hawaiʻi's economy by forbidding businesses like Kōloa Rum Company from using more efficient, affordable shipping options.

7.　　The Jones Act accomplishes its protectionist goals by discriminating against the ports of Hawaiʻi. Indeed, the purpose of Jones Act—which was adopted

before Hawai'i was a state—was always, in part, to force Hawai'i (and Alaska) into subsidizing the American shipping industry.

8. For all its failures at sustaining American shipbuilding, the Jones Act remains successful at forcing Hawaiians to subsidize a floundering shipping industry. This discriminatory purpose of the Jones Act leads to obvious and palpable discriminatory effects. The transportation of goods to and from Hawai'i are vastly more expensive than they are for businesses in other states.

9. Because of the Jones Act's discrimination against the ports of Hawai'i, Kōloa Rum Company faces sky-high import and export costs. This counterproductive and protectionist law places this quintessentially American company at a severe disadvantage among other American companies. Worse, it gives non-American companies a significant advantage in competing for American business.

10. Seeking a level playing field, Kōloa Rum Company challenges the enforcement of the Jones Act, which unlawfully discriminates against the ports of Hawai'i, violating the Port Preference Clause of the U.S. Constitution, Article I, Section 9, Clause 6.

## JURISDICTION AND VENUE

11. This action arises under the U.S. Constitution, Article I, Section 9, Clause 6 (Port Preference Clause) and is brought pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act).

12. Venue is proper in this Court under 28 U.S.C. § 1391(e) because the Defendants, acting in their official capacities, reside in this district and a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES
### Plaintiff

13. Kōloa Rum Company is a producer and seller of rum operating in Hawaiʻi. It relies on maritime transportation to import and export goods to and from the mainland United States. Kōloa Rum Company ships its spirits to 36 mainland states and several foreign countries. Even for its international sales, Kōloa Rum Company must first ship goods to the mainland United States due to a lack of international routes passing through Hawaiʻi ports.

### Defendants

14. Defendants are federal officials responsible for enforcing the Jones Act.

15. Kristi Noem, the Secretary of Homeland Security, is responsible for overseeing U.S. Customs and Border Protection (CBP) and the U.S. Coast Guard, both of which enforce the Jones Act.

16. Pete R. Flores, the Acting Commissioner of U.S. Customs and Border Protection, is responsible for enforcing the Jones Act's restrictions on coastwise trade.

17. Each Defendant is sued in their official capacity for prospective declaratory and injunctive relief. Plaintiff does not seek compensatory damages.

## FACTUAL ALLEGATIONS
### The Jones Act

18. Section 27 of the Merchant Marine Act of 1920 is known colloquially as the "Jones Act." 46 U.S.C. §§ 55102, 55116, 55119.

4

19. The Jones Act requires that any transport between United States ports must be undertaken by vessels that are owned, built, and crewed by U.S. citizens. 46 U.S.C. § 55102(b).

*Purpose of the Jones Act*

20. Wesley Jones, who became the Senior Senator from the State of Washington and the namesake of the Jones Act, was singularly focused on enacting cabotage restrictions that would benefit the Washington shipbuilding industry.

21. As a congressman in 1900, he already proposed bills that expressly sought to restrict Hawaiian shipping. *See* Sam Heavenrich, *The Neglected Port Preference Clause and the Jones Act*, 132 Yale L.J. 559, 596 (2022).

22. In the ensuing years, as both congressman and senator, Jones proposed many bills that sought to force Alaska and Hawaiʻi into using American shipping. *Id.*

23. The legislative history of the Jones Act is replete with testimony from shipping companies that sought to protect their interests at the expense of Hawaiians and Alaskans. *See id.* (and accompanying notes).

24. The Governor of Hawaiʻi, Charles J. McCarthy, testified that the Jones Act would "penalize[]" the port of Hawaiʻi. *Id.* at 599.

25. Prince Kalanianaʻole himself was nearly unable to attend the hearings because there was no available ship to transport him "despite searching for available spots months in advance." *Id.*

26. The Jones Act was ultimately enacted in 1920 with the stated goals of ensuring the United States had a strong and self-sufficient maritime industry, protecting national security interests by maintaining a fleet available for military use

5

in times of war, and supporting American shipbuilding and maritime labor by restricting coastwise trade to U.S.-built, U.S.-owned, and U.S.-crewed vessels.

27. But this express purpose is inextricably linked to its discriminatory purpose. Indeed, as one Senator put it, building up domestic shipbuilding meant "break[ing] down the coastwise-trade laws between Hawai'i and the mainland." *Id.* at 601.

*The Discriminatory Nationwide Effect of the Jones Act*

28. Today, the Jones Act is nearly exclusively applied only to the ports of Hawai'i, Alaska, and Puerto Rico.

29. Businesses in Hawai'i, Alaska, and Puerto Rico have no alternative but to use Jones Act-compliant ships for exporting and importing. The ports of every other state have many alternatives.

30. The Jones Act has failed in its textual purpose of supporting a domestic shipbuilding industry. It has had the opposite effect.

31. The Jones Act has resulted in a severely diminished domestic shipbuilding industry, drastically higher shipping costs, and a monopoly for a small number of U.S. shipping companies that dominate trade with Hawai'i, Alaska, and Puerto Rico.

32. Over the past century, the Jones Act has failed to accomplish its goals and has instead caused severe economic harm to American consumers and businesses, particularly in noncontiguous states and territories such as Hawai'i.

33. The Jones Act fails to protect the U.S. shipbuilding industry or serve the interests of national security.

34. At the time of the Jones Act's passage, the U.S. had a robust shipbuilding industry. However, due to lack of competition and high costs, the number of U.S.-built and U.S.-flagged ships has declined dramatically.

35. Today, fewer than 100 oceangoing commercial vessels of at least 1,000 tons remain in the Jones Act fleet. Even fewer of those are suitable for military use.

36. The Jones Act and lack of competition has resulted in a severely diminished merchant fleet. It forces the U.S. military to rely on foreign-built ships for many operations and aging, decrepit U.S.-built ships for others.

37. The U.S. Navy and Department of Defense have repeatedly cited the Jones Act as an obstacle to efficient military logistics due to the high costs and inefficiencies it creates.

38. The Jones Act has rendered expanding the merchant fleet exorbitantly expensive. American-built ships cost three to five times more than foreign-built ships, making it cost prohibitive for U.S. shippers to expand their fleets or new shipping businesses to enter the market. This leaves businesses like Kōloa Rum Company with few options for importing and exporting goods.

39. The number of U.S. mariners has also declined over the past 50 years, and the U.S. maritime labor force is not large enough to meet commercial and military needs.

40. Meanwhile, foreign shipping fleets have grown exponentially, demonstrating that U.S. protectionist policies have failed to make American shipping globally competitive.

*The Jones Act's Discriminatory Effect on Hawaiʻi*

41. Hawaiʻi is uniquely dependent on maritime shipping because it lacks alternative transportation methods such as rail or trucking, which are available to mainland states. Over 80% of Hawaiʻi's goods are imported, and nearly all come via ship.

42. Because of the Jones Act's restrictions, shipping to and from Hawaiʻi is significantly more expensive than it would be under a competitive market.

43. The cost of shipping a container from the U.S. West Coast to Hawaiʻi is two to three times higher than the cost of shipping the same container from the West Coast to Asia despite the latter being a much longer route.

44. A foreign-built ship operating without Jones Act restrictions could transport goods between Hawaiʻi and California at ~50% lower costs than a Jones Act-compliant vessel.

45. Businesses located in mainland states have shipping options that do not require Jones Act-flagged ships. Both rail and long-haul trucking provide affordable options for non-Hawaiian businesses.

46. Moreover, ports located in states on the lower 48 have options to ship directly in foreign commerce without first transporting interstate. A business in Kentucky, for example, can easily get its cargo to Los Angeles, New York, or Miami, where it can board a foreign-flagged vessel for international commerce.

47. There are only two Jones Act compliant shippers available to Hawaiʻi businesses. This lack of competition drives up shipping costs and the overall cost of doing business on the island.

48.     Foreign flagged ships regularly pass close to Hawai'i en route to the West Coast and, absent the Jones Act, would be able to offer shipping services to Hawai'i businesses eager to send goods to the mainland United States.

49.     The higher shipping costs imposed by the Jones Act lead to inflated prices for essential goods, including food products, raw materials, equipment and many other items.

50.     Due to the Jones Act, businesses and consumers in Hawai'i pay an estimated $1.2 billion annually in excess costs—a hidden tax on all goods transported to and from the state. *Quantifying the cost of the Jones Act to Hawai'i*, Grassroot Institute of Hawai'i, (July 2020)[1].

51.     These increased costs disproportionately harm businesses like Kōloa Rum Company, which pay higher prices for goods, have fewer, more expensive shipping options for export, and face increased operational expenses that reduce their competitiveness compared to mainland businesses.

*The Effect of the Jones Act on Kōloa Rum Company*

52.     Established on Kaua'i in 2009, Kōloa Rum Company crafts and sells premium rums to Hawaiians and to customers all over the world. As a quintessentially Hawaiian company, even Kōloa Rum Company's name pays homage to the island state's history—the Kōloa region was the home of Hawai'i's first successful sugarcane plantation in 1835.

---

[1] https://www.grassrootinstitute.org/wp-content/uploads/2020/07/GRIH-Quantifying-the-cost-of-the-Jones-Act-to-Hawaii.pdf (last visited Feb. 16, 2025).

9

53. Kōloa Rum Company is a relatively small but growing enterprise, employing, on average, about 45 people.

54. Kōloa Rum Company's rums are truly unique with many of them incorporating local ingredients produced on Kauaʻi. For example, all of Kōloa Rum Company's rums use pure rainwater from Mount Waiʻaleʻale. And Kōloa Rum Company's coffee and cacao rums use coffee and cacao grown on Kauaʻi.

55. Kōloa Rum Company seeks to make its unique, premium rums available to customers across the United States and the world. To accomplish this mission, Kōloa Rum Company relies heavily on maritime shipping to and from the mainland United States.

56. Kōloa Rum Company regularly imports raw materials such as sugar, glass bottles, and packaging from the mainland United States. And it regularly exports its rums to distributors and other partners on the mainland.

57. These products cost significantly more due to Jones Act restrictions.

58. Because of the unique burdens the Jones Act imposes on Hawaiian ports and businesses, Plaintiff is forced to pay significantly higher costs to ship goods to and from the mainland United States.

59. Due to a lack of international shipping routes from Hawaiʻi, Kōloa Rum Company must often ship goods to Los Angeles before they are shipped internationally.

60. For an international order from Hawaiʻi to Sydney, Australia, Kōloa Rum Company must first ship its goods to Los Angeles and then from Los Angeles to Australia.

61. If not for the Jones Act, a ship from Los Angeles bound to Australia could easily stop in Hawaiʻi. But the Jones Act prohibits an Australian-flagged vessel—or any foreign nation's vessel from—picking up in Hawaiian ports.

62. It is three-times more expensive to ship from Kauaʻi to Los Angeles than it is from Los Angeles to Australia.

63. This is typical. Shipping to distributers and other partners on the mainland regularly costs more than shipping to foreign countries much further away.

64. These enhanced costs severely restrict Kōloa Rum Company's ability to do business with mainland customers and makes Kōloa Rum Company's products less competitive in mainland markets.

65. International rums significantly undercut Kōloa Rum Company's costs due solely to the Jones Act's cabotage restrictions driving up shipping costs.

66. These increased costs also make it difficult to compete with foreign-produced rums even within the State of Hawaiʻi. Kōloa Rum Company must still use Jones Act-flagged ships to transport inter-island.

67. The higher costs of shipping result in increased prices for consumers, negatively impacting businesses like Plaintiff's, which must either absorb the additional costs or pass them on to purchasers.

68. Due to Jones Act restrictions, Kōloa Rum Company faces increased costs, supply chain delays, and barriers to market expansion, placing it at a competitive disadvantage compared to mainland distilleries that do not face these shipping constraints.

69. As a Hawaiian company, Kōloa Rum Company faces disproportionate burdens on its ability to operate compared to mainland states. These burdens are imposed by the Jones Act.

70. Absent Jones Act restrictions, Kōloa Rum Company would have access to shipping options with more competitive pricing and better service. The Jones Act prevents Hawaiʻi from benefiting from the global shipping market, even though foreign ships routinely travel through the Pacific near Hawaiʻi on their way to and from the mainland U.S. and Asia.

71. Absent Jones Act restrictions, Kōloa Rum Company would be able to expand its operations and enter new markets on the mainland.

## CAUSE OF ACTION

**Violation of the Port Preference Clause (U.S. Const. art. I, § 9, cl. 6)**

72. Plaintiff alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

73. The Port Preference Clause of the U.S. Constitution, Article I, Section 9, Clause 6, prohibits Congress from enacting laws that favor certain ports over others through regulation of commerce or revenue.

74. The Jones Act's restrictions are designed to prefer mainland U.S. ports over the ports of Hawaiʻi.

12

75. The Jones Act was purposefully designed to force Hawai'i to subsidize mainland commerce before Hawai'i was a state.

76. This discriminatory purpose is accomplished by forcing Hawaiian businesses to exclusively use Jones Act-flagged vessels.

77. The effect of the Jones Act is to discriminate against Hawaiian ports.

78. The Jones Act imposes uniquely higher costs on shipping to and from Hawai'i.

79. In purpose and effect, the Jones Act discriminates against the ports of Hawai'i.

80. Because the Jones Act discriminates against the ports of Hawai'i, it violates the Port Preference Clause of the U.S. Constitution.

81. The economic harms inflicted by the Jones Act on Kōloa Rum Company are significant and ongoing. Kōloa Rum Company pays substantially higher shipping costs, has fewer available shipping options, and operates at a competitive disadvantage compared to businesses that have access to ports in other states.

82. Plaintiff seeks declaratory and injunctive relief to prevent Defendants from enforcing the Jones Act's restrictions as applied to interstate commerce between Hawai'i and the mainland United States.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

A. An entry of judgment declaring the Jones Act's cabotage provisions unconstitutional under the Port Preference Clause as applied to interstate commerce between the ports of Hawai'i and the mainland United States;

13

B. An entry of a permanent injunction prohibiting Defendants from enforcing these provisions against Kōloa Rum Company as applied to interstate trade with Hawaiʻi;

C. An award of any further legal or equitable relief this Court may deem just and proper.

Dated: February 25, 2025.

Respectfully submitted,

/s/ Joshua P. Thompson
JOSHUA P. THOMPSON
D.D.C. Bar No. TX0084
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
JThompson@pacificlegal.org

*Counsel for Plaintiff*