**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KŌLOA RUM COMPANY,<br>3-2087 Kaumualii Highway<br>Lihue, HI 96766,<br><br>   Plaintiff,<br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, 2707 Martin Luther King Jr. Ave. SE Washington, DC 20528-0525; and PETE R. FLORES, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, Suite 4.4-B, Washington, DC 20229,<br><br>   Defendants. | Civil Action No. 1:25-cv-00554-JEB |

## FIRST AMENDED COMPLAINT
### INTRODUCTION

1. Bob Gunter embodies the American Dream. Born in South Carolina, Bob came to Hawaiʻi while serving in the military. He later worked in Hawaiʻi's sugar industry, which enabled him to support a family. The Gunters divided the ensuing years between Kauaʻi and Maui, where Bob was introduced to the distilling business. This awakened his entrepreneurial spirit and reinforced everything he loved about Hawaiʻi.

2. In early 2008, Bob accepted an opportunity to join with a local group of investors to build a rum distillery on Kauaʻi. Starting a distillery from scratch is no easy task, but in 2009, with determination and hard work, Kōloa Rum Company was born.

1

3.     For nearly two decades, Kōloa Rum Company has bottled the spirit of Hawai'i, crafting world-class premium rum in the very same region where farmers operated Hawai'i's first successful commercial sugar plantation in the 1800s. Kōloa Rum Company's rums are truly unique. From locally sourced ingredients, like the pristine rainwater from Mount Wai'ale'ale and coffee and cacao grown on Kaua'i, to its location on the Garden Island, Kōloa Rum Company captures the Aloha Spirit in all it produces.

4.     Kōloa Rum Company is a business that exemplifies American values: innovation, entrepreneurship, and hard work. An individual pursued a dream 5,000 miles from where he grew up—but still in America. That dream became a reality through his vision, perseverance, and dedication. Kōloa Rum Company employs around 45 people, and it continues to grow.

5.     But Kōloa Rum Company's ability to share its unique, award-winning spirits with Americans living in the mainland United States is crippled by an outdated, protectionist statute that artificially inflates Kōloa Rum Company's costs and places an unjustifiable and unconstitutional burden on its imports and exports.

6.     The Merchant Marine Act of 1920 (colloquially known as the "Jones Act") is a century-old shipping law that strangles Hawai'i's economy by forbidding businesses like Kōloa Rum Company from using more efficient, affordable shipping options. It requires any transport between United States ports to be undertaken by vessels that are owned, built, and crewed by U.S. citizens. These cabotage provisions

effectively ban foreign vessels from participating in domestic maritime trade, limiting competition and driving up shipping costs.

7. The Jones Act accomplishes its protectionist goals by discriminating against the ports of Hawaiʻi. Indeed, the Jones Act—which was adopted before Hawaiʻi was a state—was explicitly designed to force Hawaiʻi (and Alaska) into subsidizing the American shipping industry.

8. For all its failures at sustaining American shipbuilding, the Jones Act is successful at forcing Hawaiians to subsidize a floundering shipping industry. The Act's discriminatory purpose has led to obvious and palpable discriminatory effects. The transportation of goods to and from Hawaiʻi are vastly more expensive than they are for businesses in other states.

9. Because of the Jones Act's discrimination against the ports of Hawaiʻi, Kōloa Rum Company faces sky-high import and export costs. This counterproductive and protectionist law places a quintessentially American company at a severe disadvantage compared to other businesses. It also gives non-American companies a significant advantage when competing for American business.

10. Seeking a level playing field, Kōloa Rum Company challenges the enforcement of the Jones Act, which unlawfully discriminates against the ports of Hawaiʻi in violation of the Port Preference Clause of the U.S. Constitution, Article I, Section 9, Clause 6, and which deprives Kōloa Rum Company of liberty without due process of law in violation of the Fifth Amendment to the U.S. Constitution.

## JURISDICTION AND VENUE

11. This action arises under the U.S. Constitution, Article I, Section 9, Clause 6 (Port Preference Clause) and the Fifth Amendment to the U.S. Constitution and is brought pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act).

12. Venue is proper in this Court under 28 U.S.C. § 1391(e) because the Defendants, acting in their official capacities, reside in this District and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES
### Plaintiff

13. Kōloa Rum Company is a producer and seller of rum operating in Hawaiʻi. It relies on maritime transportation to import and export goods to and from the mainland United States. Kōloa Rum Company ships its spirits to 36 mainland states and several foreign countries. Even for its international sales, Kōloa Rum Company must first ship goods to the mainland United States due to a lack of international routes passing through Hawaiʻi ports.

### Defendants

14. Defendants are federal officials responsible for enforcing the Jones Act.

15. Kristi Noem, the Secretary of Homeland Security, is responsible for overseeing U.S. Customs and Border Protection (CBP) and the U.S. Coast Guard, both of which enforce the Jones Act.

16. Pete R. Flores, the Acting Commissioner of U.S. Customs and Border Protection, is responsible for enforcing the Jones Act's restrictions on coastwise trade.

17. Each Defendant is sued in their official capacity for prospective declaratory and injunctive relief. Plaintiff does not seek compensatory damages.

## FACTUAL ALLEGATIONS
### The Jones Act

18. The Merchant Marine Act of 1920 is known colloquially as the "Jones Act." 46 U.S.C. §§ 55102, 55116, 55119.

19. Section 27 of the Jones Act requires that any transport between United States ports must be undertaken by vessels that are owned, built, and crewed by U.S. citizens. 46 U.S.C. § 55102(b).

### *Purpose of the Jones Act*

20. Wesley Jones, a Senior Senator from the State of Washington and the namesake of the Jones Act, was motivated to enact cabotage restrictions that benefit the Washington shipbuilding industry, even at the expense of other ports or states.

21. As a congressman in 1900, he had proposed bills that expressly sought to restrict Hawaiian shipping. *See* Sam Heavenrich, *The Neglected Port Preference Clause and the Jones Act*, 132 Yale L.J. 559, 596 (2022).

22. In the ensuing years, as both congressman and senator, Jones proposed many bills that sought to force Alaska and Hawai'i into using American shipping. *Id.*

23. The legislative history of the Jones Act is replete with testimony from shipping companies that sought to protect their interests at the expense of Hawaiians and Alaskans. *See id.* (and accompanying notes). The Governor of Hawai'i, Charles J. McCarthy, testified that the Jones Act would "penalize[]" the port of Hawai'i. *Id.* at 599.

24. The Jones Act was ultimately enacted in 1920 with the stated goals of ensuring the United States had a strong and self-sufficient maritime industry, protecting national security interests by maintaining a fleet available for military use in times of war, and supporting American shipbuilding and maritime labor by restricting coastwise trade to U.S.-built, U.S.-owned, and U.S.-crewed vessels.

25. This express purpose is inextricably linked to its discriminatory purpose. Indeed, as one Senator put it, building up domestic shipbuilding meant "break[ing] down the coastwise-trade laws between Hawai'i and the mainland." *Id.* at 601.

*The Discriminatory Nationwide Effect of the Jones Act*

26. Jones Act-compliant ships are three to five times more expensive to build than foreign-built ships, meaning fewer are ordered and fewer shipping businesses enter the U.S. market. This has led to a decline in the number and quality of American-built commercial ships, leaving businesses like Kōloa Rum Company with few options for importing and exporting goods.

27. The number of U.S. mariners has also declined over the past 50 years, and the U.S. maritime labor force is not large enough to meet commercial and military needs.

28. Meanwhile, foreign shipping fleets have grown exponentially, demonstrating that U.S. protectionist policies have failed to make American shipping globally competitive.

29. Hawai'i, Alaska, and U.S. territories like Puerto Rico bear the greatest burdens.

30. Businesses in Hawaiʻi, Alaska, and U.S. territories have no alternative but to use Jones Act-compliant ships for trade with the mainland, unlike the ports of the continental United States, which have many alternatives. For example, they enjoy greater access to international ships coming directly from other countries, or they can move goods by truck, train, or other non-maritime means between states.

31. Because Hawaiʻi, Alaska, and U.S. territories have no fallback options, they are stuck paying higher prices for slower, less efficient shipping — costs that get passed on to consumers.

32. What's more, the Jones Act has failed in its stated purpose of supporting a domestic shipbuilding industry. Instead, it has had the opposite effect.

33. Because it has driven up the cost of usable ships, the Jones Act has resulted in a severely diminished domestic shipbuilding industry, drastically higher shipping costs, and a monopoly for a small number of U.S. shipping companies that dominate trade with Hawaiʻi, Alaska, and territories like Puerto Rico.

34. Over the past century, the Jones Act has failed to accomplish its goals and has instead caused severe economic harm to American consumers and businesses, particularly in noncontiguous states and territories such as Hawaiʻi.

35. The Jones Act also fails to protect the U.S. shipbuilding industry or serve the interests of national security.

36. At the time of the Jones Act's passage, the U.S. had a robust shipbuilding industry. However, due to lack of competition and high costs, the number of U.S.-built and U.S.-flagged ships has declined dramatically.

37. Today, fewer than 100 oceangoing commercial vessels of at least 1,000 tons remain in the Jones Act fleet, a tiny fleet for such a large country. Even fewer of those are suitable for military use.

38. The Jones Act and a corresponding lack of competition has resulted in a severely diminished merchant fleet. This forces the U.S. military to rely on foreign-built ships for many operations and aging, decrepit U.S.-built ships for others.

39. The U.S. Navy and Department of Defense have repeatedly cited the Jones Act as an obstacle to efficient military logistics due to the high costs and inefficiencies it creates.

*The Jones Act's Discriminatory Effect on Hawaiʻi*

40. Hawaiʻi is uniquely dependent on maritime shipping because it lacks alternative transportation methods such as rail or trucking, which are available to mainland states. Over 80% of Hawaiʻi's goods are imported, and nearly all come via ship.

41. Because of the Jones Act's restrictions, shipping to and from Hawaiʻi is significantly more expensive than it would be under a competitive market.

42. The cost of shipping a container from the U.S. West Coast to Hawaiʻi is two to three times higher than the cost of shipping the same container from the West Coast to Asia despite the latter being thousands of miles farther away.

43. Foreign flagged vessels regularly pass close by to Hawaiian ports and would be able to pick up and transport cargo from Hawaiʻi to the West Coast and vice versa at little additional cost.

44. A foreign-built ship operating without Jones Act restrictions could transport goods between Hawaiʻi and California at ~50% lower costs than a Jones Act-compliant vessel.

45. Businesses located in mainland states have shipping options that do not require Jones Act-flagged ships. Both rail and long-haul trucking provide affordable options for non-Hawaiian businesses.

46. Moreover, ports located in states on the lower 48 have options to ship directly in foreign commerce without first transporting interstate. A business in Kentucky, for example, can easily get its cargo to Los Angeles, New York, or Miami, where it can board a foreign-flagged vessel for international commerce.

47. There are only two Jones Act compliant shippers available to Hawaiʻi businesses. This lack of competition drives up shipping costs and the overall cost of doing business on the island.

48. Foreign flagged ships regularly pass close to Hawaiʻi en route to the West Coast and, absent the Jones Act, would be able to offer shipping services to Hawaiʻi businesses eager to send goods to the mainland United States.

49. The higher shipping costs imposed by the Jones Act lead to inflated prices for essential goods, including food products, raw materials, equipment, and many other items.

50. Due to the Jones Act, businesses and consumers in Hawaiʻi pay an estimated $1.2 billion annually in excess costs—a hidden tax on all goods transported

9

to and from the state. *Quantifying the cost of the Jones Act to Hawaiʻi*, Grassroot Institute of Hawaiʻi, (July 2020).[1]

51. These increased costs disproportionately harm businesses like Kōloa Rum Company, which pay higher prices for goods, have fewer, more expensive shipping options for export, and face increased operational expenses that reduce their competitiveness compared to mainland businesses.

*The Effect of the Jones Act on Kōloa Rum Company*

52. Kōloa Rum Company seeks to make its unique, premium rums available to customers across the United States and the world. To accomplish this mission, Kōloa Rum Company relies heavily on maritime shipping to and from the mainland United States.

53. Kōloa Rum Company regularly imports raw materials such as sugar, glass bottles, and packaging from the mainland United States. And it regularly exports its rums to distributors and other partners on the mainland.

54. These products cost significantly more due to Jones Act restrictions.

55. Because of the unique burdens the Jones Act imposes on Hawaiian ports and businesses, Plaintiff is forced to pay significantly higher costs to ship goods to and from the mainland United States.

56. Due to a lack of international shipping routes from Hawaiʻi, Kōloa Rum Company must often ship goods to Los Angeles before they are shipped internationally.

---

[1] https://www.grassrootinstitute.org/wp-content/uploads/2020/07/GRIH-Quantifying-the-cost-of-the-Jones-Act-to-Hawaii.pdf (last visited Feb. 16, 2025).

57. For example, for an international order from Hawaiʻi to Sydney, Australia, Kōloa Rum Company must first ship its goods to Los Angeles and then from Los Angeles to Australia.

58. It is three-times more expensive to ship from Kauaʻi to Los Angeles than it is from Los Angeles to Australia, despite being a much shorter route.

59. This is typical. Shipping to distributers and other partners on the mainland regularly costs more than shipping to foreign countries much further away.

60. If not for the Jones Act, a ship from Los Angeles bound to international destinations could stop in Hawaiʻi and unload goods from the mainland. But the Jones Act prohibits any foreign nation's vessel from picking up goods in a mainland port and unloading them in a Hawaiian port, even if it's on the way or if the ship is already stopping to unload goods with an international origin. The same is true for ships carrying goods from an international port to a mainland port.

61. The resulting enhanced costs severely restrict Kōloa Rum Company's ability to do business with mainland customers and makes Kōloa Rum Company's products less competitive in mainland markets.

62. International rums significantly undercut Kōloa Rum Company's costs due solely to the Jones Act's artificially inflated shipping expenses.

63. These increased costs also make it difficult to compete with foreign-produced rums even within the State of Hawaiʻi. Kōloa Rum Company must still use Jones Act-flagged ships to transport inter-island.

64. The higher costs of shipping result in increased prices for consumers, negatively impacting businesses like Plaintiff's, which must either absorb the additional costs or pass them on to purchasers.

65. Due to Jones Act restrictions, Kōloa Rum Company faces increased costs, supply chain delays, and barriers to expanding its market share, placing it at a competitive disadvantage compared to mainland distilleries that do not face these shipping constraints.

66. As a Hawaiian company, Kōloa Rum Company faces disproportionate burdens on its ability to operate compared to mainland states. These burdens are imposed by the Jones Act.

67. Absent Jones Act restrictions, Kōloa Rum Company would have access to shipping options with more competitive pricing and better service. The Jones Act prevents Hawai'i from benefiting from the global shipping market, even though foreign ships routinely travel through the Pacific near Hawai'i on their way to and from the mainland U.S. and Asia.

68. Absent Jones Act restrictions, Kōloa Rum Company would be able to expand its operations and enter new markets on the mainland.

## FIRST CAUSE OF ACTION
**Violation of the Port Preference Clause (U.S. Const. art. I, § 9, cl. 6)**

69. Plaintiff alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

70. The Port Preference Clause of the U.S. Constitution, Article I, Section 9, Clause 6, prohibits Congress from enacting laws that favor certain ports over others through regulation of commerce or revenue.

71. The Jones Act's restrictions are designed to prefer mainland U.S. ports over the ports of Hawaiʻi.

72. The Jones Act was purposefully designed to force Hawaiʻi to subsidize mainland commerce before Hawaiʻi was a state.

73. This discriminatory purpose is accomplished by forcing Hawaiian businesses to exclusively use Jones Act-flagged vessels.

74. The effect of the Jones Act is to discriminate against Hawaiian ports.

75. The Jones Act imposes uniquely higher costs on shipping to and from Hawaiʻi.

76. In purpose and effect, the Jones Act discriminates against the ports of Hawaiʻi.

77. Because the Jones Act discriminates against the ports of Hawaiʻi, it violates the Port Preference Clause of the U.S. Constitution.

78. The economic harms inflicted by the Jones Act on Kōloa Rum Company are significant and ongoing. Kōloa Rum Company pays substantially higher shipping costs, has fewer available shipping options, and operates at a competitive disadvantage compared to businesses that have access to ports in other states.

79. Plaintiff seeks declaratory and injunctive relief to prevent Defendants from enforcing the Jones Act's restrictions as applied to interstate commerce between Hawai'i and the mainland United States.

## SECOND CAUSE OF ACTION
**Violation of the Due Process of Law Clause (U.S. Const. Amend. V)**

80. Plaintiff alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

81. The Due Process of Law Clause prohibits Congress from depriving people of liberty without due process of law. The Supreme Court has interpreted the clause as having both a procedural and substantive component. As a substantive matter, laws may not deprive people of liberty unless they serve government interests, otherwise they are arbitrary and unconstitutional.

82. The Jones Act deprives Kōloa Rum Company of its right to earn a living without due process of law.

83. The right to earn a living is deeply rooted in this nation's history and traditions. It was a fundamental right at English common law, a primary concern of the Framers of the Constitution, and continued to enjoy strong protections long after ratification.

84. Because the Jones Act restricts a fundamental right, it is subject to strict scrutiny. What's more, Alaska and Hawai'i lacked meaningful access to the political process at the time the Jones Act was passed, since they were not states, and continue to lack meaningful access since they bear burdens not shouldered by the contiguous

states. This further necessitates a heightened level of judicial scrutiny. *See United States v. Carolene Products*, 304 U.S. 144, 152 n.4 (1938).

85. The Jones Act is not narrowly tailored to any compelling state interest. It has not achieved its stated goals and instead affirmatively undermines them. What's more, changed circumstances have rendered it harmful to American interests, since it was passed before Hawai'i and Alaska became states.

86. Nor does the Act bear even a rational relationship to a legitimate state interest. It demonstrably undermines the domestic shipping industry and American businesses involved in interstate commerce. There is no evidence demonstrating that the Jones Act has furthered any of its purported goals.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant:

A. An entry of judgment declaring the Jones Act's cabotage provisions unconstitutional under the Port Preference Clause and Due Process of Law Clause of the Fifth Amendment as applied to interstate commerce between the ports of Hawai'i and the mainland United States;

B. An entry of a permanent injunction prohibiting Defendants from enforcing these provisions against Kōloa Rum Company as applied to interstate trade with Hawai'i; and

C. An award of any further legal or equitable relief this Court may deem just and proper.

Dated: March 31, 2025.

Respectfully submitted,

/s/ Joshua P. Thompson
JOSHUA P. THOMPSON
D.D.C. Bar No. TX0084
JOSHUA W. POLK*
Cal. Bar No. 329205
ANASTASIA P. BODEN
D.D.C. Bar No. CA00222
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
JThompson@pacificlegal.org
JPolk@pacificlegal.org
ABoden@pacificlegal.org

*Counsel for Plaintiff*
*\*pro hac vice*