# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KOLOA RUM COMPANY,

        Plaintiff,

    v.

KRISTI NOEM, in her official capacity
as Secretary of Homeland Security; and
PETE R. FLORES, in his official
capacity as Acting Commissioner of
U.S. Customs and Border Protection,

        Defendants.

Case No. 1:25-cv-00554-JEB

---

## MEMORANDUM IN SUPPORT OF MOTION OF
## MATSON NAVIGATION COMPANY, INC. TO INTERVENE
## IN SUPPORT OF DEFENDANTS

Miguel A. Estrada, DC Bar No. 456289
Lucas C. Townsend, DC Bar No. 1000024
Amalia Reiss, DC Bar No. 241775
Eric Brooks,* DC Bar No. 1660507
Noah J. Delwiche,* DC Bar No. 90027464
MEstrada@gibsondunn.com
LTownsend@gibsondunn.com
AReiss@gibsondunn.com
EBrooks2@gibsondunn.com
NDelwiche@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
*Application for admission pending.

Rachel S. Brass, *pro hac vice* forthcoming
RBrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8200

*Counsel for Proposed Intervenor
Matson Navigation Company, Inc.*

## TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST ........................................................................................... 1

BACKGROUND ............................................................................................................... 2

    I.      The Jones Act And The Promotion Of An American Merchant Marine. .............. 2

    II.     This Litigation ................................................................................................ 4

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT .................................................................................................................... 5

    I.      Matson Is Entitled To Intervene As Of Right Under Rule 24(a) .......................... 5

          A.     The Motion Is Timely ................................................................... 6

          B.     Matson Has An Interest Relating To The Jones Act That Is The Subject Of This Action ................................................................... 7

          C.     The Disposition Of This Action May, As A Practical Matter, Impair Or Impede Matson's Ability To Protect Its Interests ................... 8

          D.     Matson's Interests Will Not Be Adequately Represented By Existing Parties ........................................................................... 9

          E.     Matson Has Article III Standing. ............................................... 12

    II.     The Court Should Alternatively Grant Permissive Intervention Under Rule 24(b) ....................................................................................................... 13

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*100Reporters LLC v. United States Dep't of Justice*,
307 F.R.D. 269 (D.D.C. 2014) ................................................................................6

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
584 F. Supp. 2d 1 (D.D.C. 2008) ...........................................................................7

*Am. Horse Prot. Ass'n v. Veneman*,
200 F.R.D. 153 (D.D.C. 2001) ...............................................................................8

*Aristotle Int'l, Inc. v. NGP Software, Inc.*,
714 F. Supp. 2d 1 (D.D.C. 2010) ..........................................................................14

*Baude v. Heath*,
538 F.3d 608 (7th Cir. 2008) ..................................................................................7

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022) ................................................................................................9

*Campaign Legal Ctr. v. Fed. Election Comm'n*,
334 F.R.D. 1 (D.D.C. 2019) ...........................................................................6, 14

*Cent. Vt. Transp. Co. v. Durning*,
294 U.S. 33 (1935) ..................................................................................................3

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
788 F.3d 312 (D.C. Cir. 2015) .........................................................................7, 12

*Ctr. for Biological Diversity v. EPA*,
274 F.R.D. 305 (D.D.C. 2011) .............................................................................14

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
640 F. Supp. 3d 59 (D.D.C. 2022) ........................................................................12

*\*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1986) .................................................................7, 8, 9, 10

*Eldred v. Ashcroft*,
255 F.3d 849 (D.C. Cir. 2001) ..............................................................................10

*Farmer v. EPA*,
No. 24-CV-1654, 2024 WL 5118193 (D.D.C. Dec. 16, 2024)..............................13

*Forest Cnty. Potawatomi Cmty. v. United States*,
317 F.R.D. 6 (D.D.C. 2016) ...................................................................................6

*\*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) .............................................1, 5, 7, 8, 9, 10, 11, 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hardin v. Jackson,*
    600 F. Supp. 2d 13 (D.D.C. 2009) ...................................................................10

*Indep. U.S. Tanker Owners Comm. v. Dole,*
    809 F.2d 847 (D.C. Cir. 1987) .......................................................................3

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
    591 U.S. 657 (2020) ......................................................................................13

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ......................................................................................12

*Milos Prod. Tanker Corp. v. Valero Mktg. & Supply Co.,*
    117 F.4th 1153 (9th Cir. 2024) .....................................................................4

*Mova Pharm. Corp. v. Shalala,*
    140 F.3d 1060 (D.C. Cir. 1998) ....................................................................8

*Nat. Res. Def. Council v. Costle,*
    561 F.2d 904 (D.C. Cir. 1977) ......................................................................11

*Navistar, Inc. v. Jackson,*
    840 F. Supp. 2d 357 (D.D.C. 2012) ..............................................................6

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ..................................................................7, 13

*Parker v. John Moriarty & Assocs.,*
    319 F.R.D. 18 (D.D.C. 2016) .......................................................................14

*Roeder v. Islamic Republic of Iran,*
    333 F.3d 228 (D.C. Cir. 2003) ......................................................................12

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt,*
    331 F.R.D. 5 (D.D.C. 2019) .........................................................................13

*Sierra Club, Inc. v. EPA,*
    358 F.3d 516 (7th Cir. 2004) ........................................................................11

*Smoke v. Norton,*
    252 F.3d 468 (D.C. Cir. 2001) ..................................................................6, 11

*Telligent Masonry, LLC v. Cont'l Cas. Co.,*
    No. CV 19-1078 (RMC), 2019 WL 13255497 (D.D.C. July 3, 2019) .................12

*Town of Chester v. Laroe Estates,*
    581 U.S. 433 (2017) ......................................................................................13

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972) ......................................................................................9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*United States v. Microsoft Corp.*,
  No. 94-CV-01564, 1995 WL 121107 (D.D.C. Mar. 14, 1995) ...............................11

*United States v. Sineneng-Smith*,
  590 U.S. 371 (2020)..............................................................................................10

*Va. House of Delegates v. Bethune-Hill*,
  587 U.S. 658 (2019)..............................................................................................13

*Waterkeeper All., Inc. v. Wheeler*,
  330 F.R.D. 1 (D.D.C. 2018).............................................................................6, 7, 12

*Wildearth Guardians v. Salazar*,
  272 F.R.D. 4 (D.D.C. 2010).................................................................................8, 9

**Statutes**

46 U.S.C. § 8103(b) ..................................................................................................3

46 U.S.C. § 55101 .....................................................................................................3

46 U.S.C. § 55102(b) ................................................................................................3

Merchant Marine Act of 1920, ch. 250, § 1, 41 Stat. 988, 988...............................2

**Rules**

*Fed. R. Civ. P. 24 .....................................................................................................8

Fed. R. Civ. P. 24(b) ...............................................................................................13

Fed. R. Civ. P. 24(b)(3)...........................................................................................13

**Regulations**

46 C.F.R. § 67.19 ......................................................................................................3

**Constitutional Provisions**

U.S. CONST. art. I, § 9, cl. 6 ....................................................................................4

Plaintiff Koloa Rum Company filed a complaint in this Court challenging the constitutionality of the Jones Act and naming the Secretary of Homeland Security and the Acting Commissioner of U.S. Customs and Border Protection as defendants. Koloa Rum alleges that the Jones Act violates (1) the Port Preference Clause of the U.S. Constitution by discriminating in purpose and effect against Hawaii's ports; and (2) the Fifth Amendment's Due Process Clause by restricting Koloa Rum's right to earn a living. Matson Navigation Company, Inc. ("Matson") respectfully moves to intervene as of right in support of the defendants pursuant to Federal Rule of Civil Procedure 24(a)(2), or alternatively, to intervene by permission under Rule 24(b)(1)(B).

Matson is the largest Jones Act container carrier in the United States and the leading Jones Act carrier for coastwise trade with Hawaii. Matson has a direct and vital stake in this litigation and would be significantly harmed if the Court granted Koloa Rum its requested relief. Matson is entitled to intervene as of right because (1) this motion is timely; (2) Matson has sufficient interests in this litigation because Koloa Rum challenges the enforcement of the Jones Act with respect to carriage between Hawaii and the mainland U.S.; (3) the disposition of this case could impair Matson's interests; and (4) the defendants do not adequately represent Matson's interests in this case. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). Alternatively, permissive intervention is proper under Rule 24(b).

## STATEMENT OF INTEREST

Matson is the leading Jones Act carrier in the United States, the larger of the "two Jones Act compliant [container carriers] available to Hawai'i" that Koloa Rum references in its amended complaint. Dkt. 13 ("FAC") ¶ 47. Since 1882, Matson's core business has been carrying freight between the continental United States and Hawaii. *See* Declaration of Matthew J. Cox ("Cox Decl.") ¶¶ 4, 9. The Jones Act, enacted as part of the Merchant Marine Act of 1920, has shaped

Matson's fundamental business strategy for more than a century.  Today, Matson owns seventeen and charters one Jones Act-compliant vessels, employs over 4,300 individuals, and earns approximately half of its $2.8 billion in annual ocean transportation revenues from Jones Act trade with Hawaii and Alaska.  *Id.* ¶¶ 7, 9.

In addition to its historical investments and operations in Jones Act trade, Matson is investing over $1 billion to expand its Jones Act-compliant carriage between Hawaii and the U.S. mainland.  Cox Decl. ¶ 12.  Construction of three new Jones Act-compliant vessels for Matson's fleet is underway.  *Id.*  Matson has invested—and continues to invest—in cranes, terminals, and other capital-intensive projects to enhance coastwise trade with Hawaii.  *Id.* ¶¶ 12-13.  Matson also owns a 35-percent interest in a joint venture that operates exclusive-use terminals for Matson in Long Beach and Oakland, California and Tacoma, Washington to help ensure the timely unloading of goods for Hawaii.  *Id.* ¶ 8.  Matson makes all of these decisions in reliance on the Jones Act.  *Id.* ¶ 15.  Accordingly, Matson unquestionably has a strong interest in intervening to defend the Jones Act.

## BACKGROUND

### I.    The Jones Act And The Promotion Of An American Merchant Marine.

The "Jones Act" refers to Section 27 of the Merchant Marine Act of 1920, which Congress passed to encourage the growth of "a merchant marine of the best equipped and most suitable types of vessels sufficient to carry the greater portion of its commerce and serve as a naval or military auxiliary in time of war or national emergency."  Merchant Marine Act of 1920, ch. 250, § 1, 41 Stat. 988, 988 (codified as amended at 46 U.S.C. § 50101, *et seq.*).  Under the Jones Act, "a vessel may not provide any part of the transportation of merchandise by water, or by land and water, between points in the United States to which the coastwise laws apply, either directly or via a

foreign port, unless the vessel—(1) is wholly owned by citizens of the United States for purposes of engaging in the coastwise trade; and (2) has been issued a certificate of documentation with a coastwise endorsement . . . or is exempt from documentation but would otherwise be eligible for such a certificate and endorsement." 46 U.S.C. § 55102(b). To receive a coastwise endorsement, a vessel must have a crew of at least 75 percent American citizens or permanent residents. 46 U.S.C. § 8103(b). Thus, with limited exceptions, only U.S.-built, -owned, and -crewed vessels may conduct U.S. coastwise trade, meaning trade between points in the United States, including its island territories and possessions (except for American Samoa, the Virgin Islands, and in certain cases, the Northern Mariana Islands). *See* 46 U.S.C. §§ 55101, 55102(b); 46 C.F.R § 67.19.

The Jones Act "encourage[s] the development of a U.S. merchant marine, for both national defense and commercial purposes." U.S. CUSTOMS AND BORDER PROTECTION, WHAT EVERY MEMBER OF THE TRADE COMMUNITY SHOULD KNOW ABOUT: THE JONES ACT 7 (2024), https://tinyurl.com/234ked7z. The Jones Act is one of "a series of statutes" passed by Congress, "beginning with the first year of the government, which have imposed restrictions of steadily increasing rigor on the transportation of freight in coastwise traffic by vessels not owned by citizens of the United States." *Cent. Vt. Transp. Co. v. Durning*, 294 U.S. 33, 38 (1935). American vessels historically have been more expensive to build and operate "not only because they typically must meet more stringent environmental and safety standards, but also because foreign ships often are subsidized and otherwise assisted by their own governments." *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 849 (D.C. Cir. 1987). The enforcement of the Jones Act thus helps equalize competition between American and foreign vessels by reserving a domestic market for American ships. And by stimulating a U.S. merchant marine, the Jones Act ensures safe and consistent carriage to far-flung parts of the U.S., including major military bases, and a stable and

secure supply of goods for the U.S. citizens there. *See, e.g.*, Sen. Roger Wicker et al., *Why the Jones Act is Still Needed 100 Years Later*, DEFENSENEWS (June 5, 2020), https://tinyurl.com/2p4pphjx.

## II.    This Litigation.

Koloa Rum, a Hawaiian rum producer, alleges that the Jones Act violates the Port Preference Clause of the U.S. Constitution by discriminating in purpose and effect against Hawaii's ports. *See* FAC ¶¶ 7-10; U.S. CONST. art. I, § 9, cl. 6 ("No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another."). Koloa Rum also alleges that the Jones Act violates the Fifth Amendment's Due Process Clause. *See* FAC ¶ 10. Specifically, Koloa Rum alleges that the Jones Act "drives up shipping costs and the overall costs of doing business on the island." *Id.* ¶ 47. Koloa Rum alleges that "only two Jones Act compliant shippers [sic]"—one of which is Matson—provide coastwise carriage to Hawaii. *Id.*[1] Koloa Rum asks this Court to declare the Jones Act unconstitutional under the Port Preference Clause and Due Process Clause and grant "injunctive relief to prevent Defendants from enforcing the Jones Act's restrictions as applied to interstate commerce between Hawai'i and the mainland United States." *Id.* ¶ 79. The defendants currently must file a responsive pleading by May 12, 2025. *See* Dkts. 9, 9-1.

Counsel for Matson has conferred with counsel for the parties regarding this motion, noting that Matson intends to intervene as a defendant and file a dispositive motion in accordance with the existing briefing schedule or a schedule stipulated by the parties. Counsel for the defendants

---

[1] The complaint uses certain terminology incorrectly. Vessel operators (such as Matson) are referred to as "carriers," whereas companies that utilize transportation services to ship goods (such as Koloa Rum) are referred to as "shippers." *See generally Milos Prod. Tanker Corp. v. Valero Mktg. & Supply Co.*, 117 F.4th 1153, 1159 (9th Cir. 2024) (defining these terms).

did not confirm their position on the requested relief as of the time of filing.  Counsel for Koloa Rum stated that Koloa Rum opposes Matson's intervention.

## LEGAL STANDARD

Under Rule 24(a)(2), a movant has a right to intervene when: (1) the motion is timely; (2) the movant "claims an interest relating to the property or transaction which is the subject of the action"; (3) "the [movant] is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) "the [movant's] interest is [not] adequately represented by existing parties."  *Fund for Animals*, 322 F.3d at 731 (quotation marks omitted).  Under Rule 24(b), "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."

## ARGUMENT

For the reasons set forth below, Matson should be allowed to intervene under Rule 24 as of right, or, alternatively, by permission, in order to defend the constitutionality of the Jones Act.[2]

### I.    Matson Is Entitled To Intervene As Of Right Under Rule 24(a).

Matson is entitled to intervene in this action as a matter of right under Rule 24(a) because: (a) the motion is timely; (b) Matson claims an interest relating to the Jones Act; (c) disposition of this action may, as a practical matter, impair or impede Matson's ability to protects its interests; (d) Matson's interests are not adequately represented by the existing parties; and (e) Matson has Article III standing.  The Court therefore should grant Matson's motion under Rule 24(a).

---

[2] Matson has filed concurrently with this Motion a proposed answer pursuant to Local Civil Rule 7(j), but intends to file a Rule 12 motion in accordance with the schedule set by the parties and court should intervention be granted.

### A.    The Motion Is Timely.

Rule 24(a) requires that motions to intervene be "timely."  The timeliness of a motion to intervene is "to be judged in consideration of all the circumstances," *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (quotation marks omitted), but mainly considers the "time elapsed since the inception of the action" and "the probability of prejudice to those already party to the proceedings," *Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 10 (D.D.C. 2016). Matson's motion is timely.

*First*, less than two months has elapsed since Koloa Rum filed its original complaint on February 25, 2025, *see* Dkt. 1, and only two weeks has elapsed since Koloa Rum filed its amended complaint on March 31, 2025, *see* Dkt. 13.  The defendants have yet to appear in this case, and no litigation has yet occurred.  Motions to intervene submitted less than two months after the filing of a complaint and before a defendant's answer are "certainly timely."  *Campaign Legal Ctr. v. Fed. Election Comm'n*, 334 F.R.D. 1, 6 (D.D.C. 2019).  Courts in this Circuit routinely find motions filed on similar timeframes to be timely.  *See, e.g.*, *Forest Cnty.*, 317 F.R.D. at 13 (motion filed before defendants filed answer); *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 6 (D.D.C. 2018) (motion filed almost two months after suit commenced); *100Reporters LLC v. United States Dep't of Justice*, 307 F.R.D. 269, 274-75 (D.D.C. 2014) (motion filed approximately three months after the complaint); *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (motion filed two and a half months after the complaint).

*Second*, there will be no prejudice to the parties.  The defendants have yet to file a responsive pleading.  Matson has committed to filing a motion or responsive pleading on the same schedule that will govern the defendants and therefore will not delay the proceedings.  Intervention at this early stage therefore would not cause any prejudice to the existing parties.

### B.    Matson Has An Interest Relating To The Jones Act That Is The Subject Of This Action.

Courts in this Circuit take a "liberal approach" to Rule 24(a)'s legal interest requirement. *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 6 (D.D.C. 2008). The "'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). Courts routinely allow private parties to intervene to defend statutes or other governmental action that benefit them. *See, e.g.*, *Baude v. Heath*, 538 F.3d 608, 612 (7th Cir. 2008) (noting that a trade association intervened to defend the constitutionality of a statute that benefited its members); *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (insurance company had a legally protected interest when it "relied upon" a challenged statute in setting rates for insurance policies); *Waterkeeper All.*, 330 F.R.D. at 7 (noting that a "sufficient legal interest . . . typically is established 'where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit'") (quoting *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015)).

Because this suit directly concerns Jones Act-compliant carriage with Hawaii, "there can be no question" that Matson has a legally protected interest in this action. *Fund for Animals*, 322 F.3d 728 at 735. As "the largest carrier of ocean cargo between the U.S. mainland and Hawaii," Matson undisputably relies on and benefits from the Jones Act. Cox Decl. ¶ 3. Matson owns or charters a fleet of 18 Jones Act-compliant vessels and provides extensive Jones Act-compliant carriage between the U.S. mainland and Hawaii. *Id.* ¶ 7. Last year, approximately half of Matson's $2.8 billion in total ocean transportation revenues derived from Jones Act-compliant trade to and from Hawaii and Alaska. *Id.* ¶ 9. Matson has also made substantial investments in reliance on the

Jones Act, including $500 million in 2002 for four containerships, approximately $1 billion from 2013 to 2020 for four additional vessels, another $1 billion through 2028 for three new containerships, and an ongoing $60 million modernization project of its terminal facility at Sand Island, Honolulu. *Id.* ¶¶ 10-12. And Matson has invested approximately $900 million in acquiring or leasing cranes, containers, and other equipment to operate its coastwise carriage. *Id.* ¶ 13. Matson therefore has a legally protected interest in this action. *See Fund for Animals*, 322 F.3d at 735 (Mongolian agency had legally protected interest when defendant agency promulgated regulation concerning Mongolian sheep); *Dimond*, 792 F.2d at 192 (insurance company had a legally protected interest in defending a statute that it relied upon to set insurance rates); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14 (D.D.C. 2010) (coal company had legally protected interest in agency decision to sell public land near the company's mining operations).

### C. The Disposition Of This Action May, As A Practical Matter, Impair Or Impede Matson's Ability To Protect Its Interests.

"In determining whether a movant's interests will be impaired by an action, courts in this circuit look to the 'practical consequences' to [the] movant of denying intervention." *Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 158 (D.D.C. 2001); *see also* Fed. R. Civ. P. 24, advisory committee's note to 1966 amendment ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."). An intervenor-defendant satisfies this factor if its "loss of revenues during any interim period would be substantial and likely irreparable." *Fund For Animals*, 322 F.3d at 735; *see also Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (holding that the "danger of losing market share" due to an adverse ruling satisfies Rule 24(a)'s third factor).

Here, Koloa Rum seeks to invalidate the "Jones Act's restrictions as applied to interstate commerce between Hawai'i and the mainland United States." FAC ¶ 79. Such an outcome would

directly impair and undermine Matson's substantial investments in Jones Act-compliant vessels and shipping services between Hawaii and the U.S. mainland.  *See* Cox Decl. ¶ 15.  Matson has yet to fully recover its $1 billion investment in the four Jones Act-compliant vessels built through 2020, and would be unable to recover its additional $1 billion investment in the ongoing construction of Jones Act-compliant ships, *id.* ¶¶ 11, 15, which would threaten its "ability to remain competitive in the national . . . market in both the short and long term."  *Wildearth Guardians*, 272 F.R.D. at 15.  And any loss in Matson's revenues during the intervening period would be substantial and likely irreparable.  *See* Cox Decl. ¶ 15.

### D. Matson's Interests Will Not Be Adequately Represented By Existing Parties.

Matson need only show that representation of its interests by existing parties "may be" inadequate and "the burden of making that showing should be treated as minimal."  *Fund for Animals*, 322 F.3d at 735 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *see also Dimond*, 792 at 192 ("[T]he applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate.").  Matson easily clears that bar for several reasons.

*First*, Koloa Rum obviously does not represent Matson's interests here.  But neither do the defendants.  As the Jones Act regulator, the government "is charged by law with representing the public interest of its citizens," not the particular interests of a private intervenor.  *Dimond*, 792 F.2d at 192.  While the defendants' and Matson's interests may be aligned "[a]t a high level of abstraction" in that both would be defending the Jones Act, their precise interests are "not 'identical.'"  *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022).  Unlike the defendants, Matson is a private coastwise carrier that relies on and benefits directly from the Jones Act, and courts in this Circuit have "often concluded that governmental entities do not adequately

represent the interests of aspiring intervenors." *Fund For Animals*, 322 F.3d at 736; *see Dimond*, 792 F.2d at 181, 192–93 (allowing a private party to intervene to defend a statute from constitutional challenge); *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) ("The EPA does not oppose intervention, and the D.C. Circuit has repeatedly held that private companies can intervene on the side of the government, even if some of their interests converge.").

Matson's long history as the leading coastwise carrier in the Pacific gives it a unique interest in this case. Matson has provided carriage to Hawaii for more than 140 years—since Hawaii was a kingdom. *See* Cox Decl. ¶ 4. Not only does Matson have more than a century of commercial experience operating under the Jones Act, it also operated under prior cabotage legislation. *See id.* Indeed, Matson is repeatedly mentioned throughout the Jones Act legislative history that Koloa Rum misleadingly cites in its complaint. *See* FAC ¶¶ 23-25; 58 CONG. REC. 3519 (1919) (statement of Rep. Kahn) ("The Matson Co. contemplated building additional American ships when this war broke out. They were stopped in their efforts on account of the war, but I have no doubt that as soon as conditions are again normal this line will put additional American ships into the service between the mainland and the Hawaiian Islands."). No party is better able to speak to the commercial realities of the Jones Act and predecessor statutes, particularly with respect to the Hawaii service that Koloa Rum challenges, than Matson.

Moreover, amicus status would be inadequate. The government is under no obligation to adopt Matson's views in litigation, which could imperil Matson's rights and interests. *See generally United States v. Sineneg-Smith*, 590 U.S. 371, 375–76 (2020) (discussing the principle of "party presentation"); *Eldred v. Ashcroft*, 255 F.3d 849, 850–52 (D.C. Cir. 2001) (declining to adopt amicus arguments not expressly adopted by the parties). Moreover, if this case proceeds to discovery, the merits issues are likely to be fact-dependent and the evidentiary record complex.

For example, the parties may need to develop evidence about shipping routes to Hawaii and throughout the Pacific, geographic considerations, the effects of foreign laws, tariffs, and actions by international carriers, and other factors that contribute to the costs of goods and the availability of shipping options in Hawaii. Matson is uniquely well-situated to develop the necessary evidentiary record. But if Matson is relegated to amicus status, it may be unable to participate in record development. *See, e.g.*, *United States v. Microsoft Corp.*, No. 94-CV-01564, 1995 WL 121107, at *1 (D.D.C. Mar. 14, 1995) (noting that "[n]one of the amici has been accorded the customary discovery rights that parties have under the Federal Rules of Civil Procedure").

*Second*, Matson is "likely to serve as a vigorous and helpful supplement" to the government's defense. *Fund for Animals*, 322 F.3d at 736 n.9. With over a century of experience investing in and operating Jones Act vessels, Matson is best positioned to explain how the Act works in practice, refute the factual inaccuracies in the complaint, and explain possible unforeseen effects of enjoining enforcement of the Act. *See id.*; *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 913 (D.C. Cir. 1977) (holding that a private company could intervene "on the basis of their experience and expertise in their relevant fields"). The defendants cannot adequately provide that perspective.

*Third*, if the government loses this case, "the Solicitor General may decide that the matter lacks sufficient general importance to justify" an appeal. *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 518 (7th Cir. 2004). Intervention is therefore critical to ensure that, in that event, Matson could continue to press its interests, which could otherwise be lost at that point. *Cf. Smoke*, 252 F.3d at 472 (Henderson, J., concurring) (assuming that the government would not adequately represent aspiring intervenors' interests if they could have appealed "had they been parties before the district court ruled").

E.        **Matson Has Article III Standing.**

This Circuit also has traditionally required "a party seeking to intervene as of right [to] demonstrate that it has standing under Article III of the Constitution," *Fund for Animals*, 322 F.3d at 731–32, and has explained that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement," *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). Here, Matson satisfies all the elements for intervention as of right under Rule 24(a), and therefore has Article III standing. *See Waterkeeper All.*, 330 F.R.D. at 6, 8 n.6 (relying on *Roeder* to hold that an intervenor had Article III standing because it satisfied the elements of Rule 24(a)); *Telligent Masonry, LLC v. Cont'l Cas. Co.*, No. CV 19-1078 (RMC), 2019 WL 13255497, at *2 (D.D.C. July 3, 2019) (same).

Put differently, Matson meets the traditional Article III standing requirements of injury in fact, causation, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Because Matson directly benefits from the Jones Act, it "would suffer concrete injury if the court were to grant the relief" that Koloa Rum seeks. *Fund for Animals*, 322 F.3d at 733; *see also Crossroads*, 788 F.3d at 317–18 (finding that an intervenor suffered a concrete injury because it benefited from the challenged agency action). As noted above, Koloa Rum's requested relief would undermine Matson's longstanding and ongoing investments in Jones Act-compliant carriage. Moreover, Matson easily satisfies the causation and redressability requirements here because if Koloa Rum's litigation were successful, Matson would be stripped of the benefits it receives as a result of its substantial investments in Jones Act-compliant vessels. *See Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 640 F. Supp. 3d 59, 66 (D.D.C. 2022) (holding that intervenors satisfied Article III standing given their "financial investments" in and benefit

from a challenged regulatory scheme). Therefore, to the extent a separate standing inquiry is relevant here, Matson easily satisfies Article III standing.[3]

## II. The Court Should Alternatively Grant Permissive Intervention Under Rule 24(b).

In the alternative, this Court should grant Matson permission to intervene under Rule 24(b). *See* Fed. R. Civ. P. 24(b) ("On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."). This is not a restrictive standard: "Rule 24(b) . . . provides basically that anyone may be permitted to intervene if his claim and the main action have a common question of law or fact," *Nuesse*, 385 at 704, so long as intervention would not "unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3). This Court has "wide latitude" and "discretio[n]" to grant "[p]ermissive intervention." *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 9 (D.D.C. 2019) (quotation marks omitted).

Matson easily meets this standard. Matson's arguments in this action share common questions of law and fact with Koloa Rum's action. Further, the Motion here is timely, and no party will be prejudiced by Matson's intervention and participation. *See* Part I.A, *supra*. Matson

---

[3] It is questionable whether a party seeking to intervene as a *defendant* must demonstrate Article III standing, at least when the proposed intervenor seeks no relief beyond that sought by the existing parties to the litigation. The Supreme Court has held that an intervenor of right need only demonstrate Article III standing when "seek[ing] additional relief beyond that which the plaintiff requests." *Town of Chester v. Laroe Estates*, 581 U.S. 433, 439 (2017); *accord Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020) (holding that Third Circuit erred in inquiring into intervenor's independent Article III appellate standing when the intervenor sought same relief as the government); *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (state legislative house did not have "to demonstrate its standing" to "interven[e] in support of the State Defendants"). Here, Matson seeks only to defend against Koloa Rum's claims and does not intend to assert claims seeking additional relief. Although recent cases from this District have divided on the need for Article III standing in these circumstances, *see Farmer v. EPA*, No. 24-CV-1654, 2024 WL 5118193, at *2 n.2 (D.D.C. Dec. 16, 2024) (collecting cases), Matson has Article III standing in any event.

will not unnecessarily stall resolution of this case.  *See Campaign Legal Ctr.*, 334 F.R.D at 6.  Nor

will Matson "require discovery into matters completely unrelated" to Koloa Rum's claim.  *Parker*

*v. John Moriarty & Assocs.*, 319 F.R.D. 18, 23 (D.D.C. 2016).  And Matson will "contribute to . . .

the just and equitable adjudication of the legal question presented," *Aristotle Int'l, Inc. v. NGP*

*Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (quotation marks omitted), by bringing

"substantial expertise and a unique perspective" to the case, *Ctr. for Biological Diversity v. EPA*,

274 F.R.D. 305, 313 (D.D.C. 2011).  In light of Rule 24(b)'s low threshold, the potential harms to

Matson's interests detailed above establish grounds for permissive intervention.

## CONCLUSION

For the foregoing reasons, Matson respectfully requests that the Court grant it leave to

intervene in this case in support of the defendants.

Dated: April 11, 2025

Respectfully submitted,

/s/ *Miguel A. Estrada*

Miguel A. Estrada (DC Bar No. 456289)
Lucas C. Townsend (DC Bar No. 1000024)
Amalia Reiss (DC Bar No. 241775)
Eric Brooks* (DC Bar No. 1660507)
Noah J. Delwiche* (DC Bar No. 90027464)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
MEstrada@gibsondunn.com
LTownsend@gibsondunn.com
AReiss@gibsondunn.com
EBrooks2@gibsondunn.com
NDelwiche@gibsondunn.com

*Application for admission pending.

Rachel S. Brass, *pro hac vice* forthcoming
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
(415) 393-8200
RBrass@gibsondunn.com

*Counsel for Proposed Intervenor*
*Matson Navigation Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025, I caused a copy of the foregoing document to be served on all parties through the Court's CM/ECF system.

/s/ *Miguel A. Estrada*
Miguel A. Estrada (DC Bar No. 456289)