## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KŌLOA RUM COMPANY, | |
| Plaintiff, | Case No. 1:25-cv-00554-JEB |
| v. | |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; and PETE R. FLORES, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection; | |
| Defendants. | |

## PLAINTIFF'S OPPOSITION TO
## MATSON'S MOTION TO INTERVENE

### INTRODUCTION

Plaintiff Kōloa Rum Company, a Hawaiʻian rum producer, challenges the constitutionality of the Jones Act as applied to trade between Hawaiʻi and the mainland United States. First Amended Complaint, Doc. 13 at 15. Matson Navigation Company, Inc. ("Matson"), one of the two companies that dominate coastwise shipping between Hawaiʻi and the mainland United States, seeks to intervene. Doc. 15. Although Matson has indirectly profited from the Jones Act's anti-competitive effects, its desire to stifle competition alone does not confer a right to intervene. Nor can Matson claim any additional regulatory burden if the challenged law is struck down that would confer upon it some legally protectable interest sufficient to intervene.

Moreover, the federal government shares Matson's objective of upholding the constitutionality of the Jones Act and therefore adequately represents whatever interest Matson has in seeing the law stay on the books. Although Matson's motion comes too early to establish the full scope of the government's defenses, there is no reason to doubt that the government is fully capable of defending its own statute and that it will pursue that objective vigorously. Matson's participation would only needlessly complicate and delay proceedings for what should be a straightforward constitutional challenge. Matson's participation will multiply filings, increase burdens on the parties and this Court, and potentially delay resolution of this case. For these reasons and those set forth below, its motion should be denied.

## STATEMENT OF THE CASE

For nearly two decades, Kōloa Rum Company has produced premium, award-winning rums on the island of Kauai, using local ingredients and Hawaiʻian-grown sugar. *See* Doc. 13 at 2. Its success reflects years of innovation, entrepreneurship, and sustained investment. But like many small businesses in Hawaiʻi, Kōloa Rum depends heavily on access to mainland markets, where most of its customer base resides. *Id.* at 9–12. The Jones Act imposes significant logistical and economic burdens on that access. By requiring that all goods transported between U.S. ports travel on U.S.-built, U.S.-flagged, and U.S.-crewed vessels, the Act sharply inflates the cost of shipping to and from Hawaiʻi. *See* Doc. 13 at 6–10. Unlike mainland businesses that can rely on rail and truck transport, Hawaiʻian companies face

uniquely high costs. *Id.* These disparities affect Kōloa Rum Company's ability to compete and grow.

Kōloa Rum Company challenges the Jones Act under the Port Preference Clause and the Due Process Clause of the U.S. Constitution, alleging that the law discriminates against Hawaiʻi's ports and unreasonably restricts the company's right to earn a living without sufficient reason. *See* Doc. 13. Defendants responsible for enforcing the Jones Act are represented by the Department of Justice, which is expected to vigorously defend the statute.

Matson is a corporate behemoth that dominates trade between Hawaiʻi and the mainland. Doc. 15-1 at 3–4. It attributes its own market power in part to the Jones Act's elimination of foreign competition. *Id.* As the leading carrier serving Hawaiʻi, Matson enjoys higher shipping rates, reduced competition, and outsized profits at the expense of Hawaiʻian consumers and businesses. Doc. 13 at 3, 6–8.

Matson now moves to intervene as of right under Rule 24(a) or, alternatively, by permission under Rule 24(b). It asserts an economic interest in preserving the statute and speculates that the government may not adequately represent its position. But Matson's interests are fully aligned with those of the government, and its participation at this stage would serve only to duplicate the government's defense, expand the scope of the litigation, and delay resolution of an important constitutional question.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 24(a)(2), a party seeking to intervene as of right must establish that: (1) its motion is timely; (2) it asserts a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) its interest is not adequately represented by the existing parties. *Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). Each of the four prongs is mandatory; failure to satisfy even one requires denial of the motion. *Id.*

Plaintiff does not dispute that Matson's motion was timely filed. But Matson fails to establish a legally protectable interest under Rule 24(a), and any interest it asserts is adequately represented by the government and its attorneys at the Department of Justice. Moreover, because the government has yet to file any responsive pleading or motion, Matson's concerns about the government's litigation strategy are entirely speculative, making its request premature and unwarranted at this stage.

## ARGUMENT

## I.    MATSON LACKS A LEGALLY PROTECTABLE INTEREST

To intervene as of right under Rule 24(a)(2), Matson must demonstrate an interest related to the "property or transaction" that is the subject of the action. *See Donaldson v. United States*, 400 U.S. 517, 531 (1971) (emphasis added); *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). Not just any interest will

4

do. Rather, the intervenor must demonstrate an interest that is "significantly protectable" by law. *Id.*

Matson appears to contend that any entity with an economic stake in a challenged law is entitled to intervene, even where that interest is indirect or speculative. *See* Doc. 15-1 at 7. But courts have consistently rejected the notion that a generalized financial interest in preserving favorable regulation constitutes a significantly protectable interest under Rule 24. For example, in *United States v. Tennessee*, the Sixth Circuit denied intervention where the proposed intervenor sought to protect its financial interests in the continued application of a statute, holding that economic interests, alone, were insufficient. 260 F.3d 587, 596 (6th Cir. 2001). The court distinguished between cases where a party sought to intervene because it had some financial stake in the outcome of the lawsuit and where a party had statutory rights or were subject to a contract that would be affected by the litigation, and which it could not escape. *Id.* Matson claims no such statutory right or inescapable contract here.

Similarly, in *Blount-Hill v. Board of Education of Ohio*, the Sixth Circuit reaffirmed that economic actors seeking to preserve regulatory advantages must pursue their goals through legislative or administrative channels, not by inserting themselves into constitutional litigation. 195 F. App'x 482, 487 (6th Cir. 2006). The Ninth Circuit has likewise held that a party's financial interest in the outcome of a lawsuit does not, on its own, create a protectable interest. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 919-20 (9th Cir. 2004). Matson cites no authority to the

contrary—nor could it. There are no cases recognizing a right to intervene based solely on a party's self-interest in preserving the competitive effects of a challenged legal regime.

Matson asserts that courts routinely permit private parties to intervene in order to defend statutes or agency actions. Doc. 15-1 at 7–8. But it identifies no case in which a party was granted intervention solely because it might be subject to increased market competition if a challenged law were invalidated. Its reliance on *Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986), is especially misplaced. There, the proposed intervenor, State Farm, was directly regulated by the statute at issue and had set binding insurance rates in reliance on it. *See id.* at 192. When the statute was declared invalid, State Farm faced immediate legal exposure— specifically, liability for pain and suffering damages and litigation expenses—with no ability to recoup those losses due to D.C. law's prohibition on retroactive rate adjustments. *Id.* Matson, by contrast, would face no retroactive liability, no new legal obligations, and no regulatory sanction if the Jones Act is found unconstitutional. Its claimed "reliance" interests consist of ordinary business investments made under the assumption that a favorable legal regime would continue—a risk every market actor knowingly assumes. *See* Doc. 15-1 at 7–8. There is simply no authority deeming a business's interest in keeping rivals out of the market sufficient to intervene in constitutional litigation.

The other cases Matson cites are similarly unavailing. In *Fund For Animals v. Norton*, the D.C. Circuit found that the proposed intervenor had a protectable interest

because it asserted rights in specific, tangible property that was the subject of the challenged agency action. 322 F.3d at 735. The court emphasized that a claimed interest in identifiable property affected by the outcome of the litigation provides a strong basis for intervention. *Id.* Matson, by contrast, asserts no such interest. No outcome in this case will alter its rights in any vessel, facility, or other tangible asset. It claims no ownership over any property directly at risk, no entitlement to a government license or contract threatened in this litigation, and no legally enforceable right (contract or otherwise) that would be impaired by a ruling in Plaintiff's favor.

*Waterkeeper Alliance v. Wheeler* is similarly inapposite. 330 F.R.D. 1 (D.C. Cir. 2018). In *Waterkeeper*, the proposed intervenors were direct participants in a state and federal regulatory program at issue in a lawsuit. *Id.* at 6. The parties had submitted permit applications, expended resources in reliance on the program's validity, and faced immediate regulatory disruption including duplicative compliance obligations if the program were invalidated. *Id.* at 7. By contrast, Matson is not subject to any permitting process that would be disrupted by the current lawsuit, and would not be subject to any new regulatory compliance obligations if Plaintiff is successful in this case. It faces no disruption to legal entitlements, no revocation of licenses or permits, and no duplicative regulatory burdens like the intervenors in *Waterkeeper*. Rather, Matson's asserted "interest" is the loss of incidental economic protection that it receives from the present regulatory regime—an interest that courts typically reject as insufficient. *Maxwell's Pic-Pac, Inc. v. Vance*, 2011 WL

7

13210024, at *1 (W.D. Ky. Apr. 8, 2011) (an "economic interest based in the potential for increased competition is probably not a substantial legal interest").

Matson's expansive theory of intervention would, if accepted, produce absurd results. Under Matson's logic, any individual or business entity that incidentally benefits or suffers from the Jones Act's cabotage provisions—whether a shipping company, a freight broker, a port operator, or even a mainland exporter shipping goods to or from Hawaiʻi—would have a "significantly protectable interest" sufficient to intervene in this case. Rule 24 does not permit every economic actor with a speculative financial interest in a regulatory regime to become a party to constitutional litigation, especially given that many laws have incidental, anti-competitive effects. *Tennessee*, 260 F.3d at 596. And, as explicitly acknowledged by this Court, Rule 24 does not grant the right to intervene to every individual or business affected by a challenged policy, otherwise "there would be no limits to the entitlement of parties who benefit in some fashion from government regulations to intervene as of right whenever those regulations are challenged." *Humane Soc'y of the United States v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985). Matson's claimed reliance on the Jones Act for its business planning is no different from the countless other market participants who make investments based on the prevailing legal landscape. Matson's theory would therefore obliterate the limits on intervention of right and convert every constitutional challenge with economic implications into a multi-party melee. This isn't necessary. Nor is it helpful.

Rule 24(a) requires more than the mere possibility of increased market rivalry. The appropriate way for Matson to protect its interest is enforcing its current contracts, competing for services in the market for coastwise shipping between Hawaiʻi and the mainland, or submitting an amicus brief in this case at the appropriate time.

## II.    THE GOVERNMENT ADEQUATELY REPRESENTS MATSON'S INTERESTS

### A.    Presumption of Adequate Representation

Generally, where a prospective intervenor and a named party have "the same ultimate objective" in the litigation, there "is a presumption of adequate representation" that requires a showing of "special circumstances" to warrant intervention. *Atl. Refinishing & Restoration, Inc. v. Travelers Cas. and Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010); *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013). The presumption of adequate representation applies here. Matson and the government share the same ultimate objective—establishing the constitutionality of the Jones Act. *See Walker*, 705 F.3d at 659 ("[T]he Employees and the state share the same goal: protecting Act 10 against the Unions' constitutional challenge."); *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013) (where both parties "want the [policy] to be constitutionally sustained," their interests are aligned). When the government defends the constitutionality of its own statutes, the presumption is even stronger, as the defendant is a government entity "charged by law with protecting the interests of the proposed intervenors." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007). In other words, a government defendant is

"presumed to represent the interests of its citizens" when it acts in its sovereign capacity. *United States v. New York*, 820 F.2d 554, 558 (2d Cir. 1987).

To overcome the presumption of adequate representation, Matson must show the existence of "special circumstances," such as adversity of interest, collusion, or nonfeasance by the government. *See Cobell v. Jewell*, 2016 WL 10703793, at *2 (D.D.C. 2016) (citing *Commonwealth of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). Matson generally asserts that courts have allowed private parties to intervene alongside the government in defense of state or federal laws. *See* Doc. 15 at 9–10. That's true, but only under extraordinary circumstances. Matson has failed to identify any specific facts demonstrating that the government's representation in this case will be inadequate.

Matson attempts to distinguish its position from the government's based on its financial reliance on the Jones Act, arguing that its interest is more direct or substantial than the government's. *See* Doc. 15 at 9–10. But courts, including this one, have repeatedly held that more particularized or intense economic interests do not defeat the presumption of adequate representation. *See Humane Soc'y of the United States*, 109 F.R.D. at 521. That's because "[a] successful challenge to government policy will almost always have a more 'direct or immediate' impact on private citizens who benefit from that policy than it will have on the government agency which adopted it." *Id*. Still, "that factor alone is not sufficient to mandate intervention as of right." *Id.*; *Stuart*, 706 F.3d at 353 ("[S]tronger, more specific interests do not adverse interests make.").

There is no indication that the government will forgo viable defenses or that its position will diverge from Matson's in any material way. To the contrary, Matson's broad interest in preserving the Jones Act's protectionist framework mirrors the statute's stated purpose and is presumptively represented by the United States in its sovereign capacity.

*Hardin v. Jackson*, 600 F.Supp.2d 13 (D.D.C. 2009), is significantly different than the facts here. Not only did BASF, the proposed intervenor, hold specific property rights that were directly threatened by the outcome of the litigation, *id*. at 16, BASF demonstrated that the government had entered into damaging stipulations and had adopted a litigation strategy materially narrower than the one BASF sought to pursue. *Id*. at 17. BASF also filed its own dispositive motion asserting broader and distinct legal arguments. Based on these clear divergences, the court allowed intervention. Similarly, while Matson cites *Baude v. Heath*, 538 F.3d 608 (7th Cir. 2008), there, the state explicitly declined to defend the constitutionality of one of the challenged statutory provisions, leaving the intervenor's interests entirely unrepresented. *Id*. at 612.

Here, by contrast, Matson asserts no proprietary interest, identifies no concessions or stipulations by the Department of Justice, and points to no divergence in litigation strategy. Both Matson and the federal government seek the same outcome: to uphold the Jones Act, and there's every reason to believe the Department of Justice will defend the statute vigorously. There is no evidence—nor any indication—that the government will abandon viable defenses or fail to represent

Matson's position fully. Accordingly, the presumption of adequate representation remains firmly in place.

### B. Matson's speculative concerns about potential future divergence are insufficient to overcome the presumption of adequate representation

Matson suggests that there may be some future divergence in preferred litigation strategy between itself and the government. Doc. 15 at 10–11 ("The government is under no obligation to adopt Matson's views in litigation, which could imperil Matson's rights and interests" and "if the government loses this case, [the government] may decide that the matter lacks sufficient general importance to justify an appeal."). But such speculation is inadequate. And even if the government eventually diverged from Matson's preferred litigation strategy, that still would not be enough to justify intervention. Until Matson demonstrates there's reason to believe the government will give up entire defenses or fail to appeal, the motion to intervene must be denied.

Courts have repeatedly held that speculation about how the government may conduct itself in litigation in the future cannot overcome the presumption of adequacy. *See, e.g., Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) (proposed intervenors "must produce something more than speculation as to the purported inadequacy"); *LULAC v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997) (a proposed intervenor's "assertion that its interests might . . . at some . . . unspecified time in the future, diverge from the interest of the governor and attorney general is purely speculative, and does not justify intervention as a full-fledged party."). And all Matson has is speculation. The federal government has not yet filed a dispositive

motion, answer, or brief setting forth its legal theories or defenses. At this stage, Matson cannot credibly claim that its interests will be inadequately represented, let alone that the government's representation is actually deficient. There is no indication—factual or legal—that the government will offer anything less than a full and vigorous defense of the Jones Act.

The law is clear that mere differences in motive or emphasis are not enough to justify intervention. See *NRDC, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62–63 (2d Cir. 1987) ("[a] putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party"). But Matson doesn't even have that. And while there are limited exceptions in cases where the court must perform a quasi-administrative function or the government party's interests are directly adverse to the proposed intervenor. *See Env't Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 242–43 (D.D.C. 1978). This is not such a case. Further, because the arguments in this case will necessarily revolve around whether the Jones Act is unconstitutional, the individual business interests Matson seeks to advance are "largely irrelevant" and thus do not serve to undermine the presumption of adequate representation. *See Costle*, 79 F.R.D. at 243.

What's more, even if Matson's concerns were eventually borne out, courts have repeatedly held that disagreements regarding how a case should be argued do not render representation inadequate. *See Jones v. Prince George's County*, 348 F.3d 1014, 1019 (D.C. Cir. 2003) (differences in litigation tactics insufficient to establish

inadequacy); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009); *Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997). Should the government's defense meaningfully diverge from Matson's interests—for example, by declining to present relevant arguments or refusing to appeal—Matson may then seek to intervene or move for limited participation on appeal. *See United States v. City of Detroit*, 712 F.3d 925, 931-32 (6th Cir. 2013). But until such divergence materializes, the presumption of adequacy remains.

Contrary to Matson's suggestion, participation as *amicus curiae* offers an appropriate and sufficient alternative for presenting its views to the Court. Courts routinely recognize that amicus participation can adequately protect a non-party's interests and ensure that relevant perspectives are considered—without the burdens and delays associated with full intervention. See, e.g., *Colorado River Cutthroat Trout v. Salazar*, 2010 WL 11575619, at *3 (D.D.C. 2010); *United States v. Microsoft Corp.*, 2002 WL 319436, at *3-4 (D.D.C. 2002); *Feehan v. Wis. Elections Comm'n*, 2020 WL 7249866, at *7 (E.D. Wis. Dec. 9, 2020) ("The court has the benefit of the movant's perspective [as amicus]; he does not need to become a party to ensure that the court takes into account th[at] perspective."). To the extent Matson has information or arguments it believes are relevant to the disposition of this case, it may present them in an amicus brief. That approach allows the Court to consider Matson's industry perspective without transforming a focused constitutional challenge into a needlessly complex multi-party proceeding.

Matson expresses concern that the Court may not consider arguments presented in an amicus brief. See Doc. 15 at 10. But, again, that concern is premature. At this early stage, Matson has not identified any legal arguments or factual issues that the government is unwilling or unable to raise. Matson further suggests that the case will involve "fact-dependent" merits questions and a complex evidentiary record. *See* Doc. 15 at 10-11. Yet there is no indication that any discovery—if warranted— will be incomplete or inadequate without Matson's participation. The government remains fully capable of requesting relevant information from Matson through standard discovery channels, and it has equal, if not greater, access to the legislative history of the Jones Act. Moreover, the financial interests Matson seeks to defend— its individual business advantages under the Jones Act—are not legally relevant to the constitutional questions at issue. As *Costle* makes clear, where the case turns on legal principles, the intervenor's business-specific perspective is "largely irrelevant" and does not support intervention. *Costle*, 79 F.R.D. at 243.

## III.    PERMISSIVE INTERVENTION SHOULD BE DENIED

Rule 24(b)(1)(B) imposes a threshold requirement of raising a claim or defense that shares a common question of law or fact with the underlying matter. As set forth above, Matson does not have a legally protectable interest in this case. A party that seeks to support the government but offers no genuinely distinct legal interest should not be granted permissive intervention. *Norfolk S. Ry. Co. v. Solis*, 915 F.Supp.2d 32, 41 (D.D.C. 2013) (denying intervention where intervenor's support for the government was based on "speculative" interests). But even if Matson could satisfy

the threshold requirement, this Court should still deny permissive intervention because intervention "will unduly delay or prejudice the adjudication of the original parties' rights."

Matson's participation as a full party would significantly complicate the litigation. It would result in entirely duplicative briefing, the introduction of additional, largely irrelevant factual assertions, and likely an unjustified expansion of discovery that would burden Plaintiff without any benefit to the parties or the Court. Matson has signaled its intent to submit independent factual materials, economic analysis, and briefing. Doc. 15 at 10-11. But given that the government has yet to file a responsive pleading, it is not clear that Matson would add anything materially distinct. At least some of what Matson proposes to submit, e.g., Jones Act legislative history, will certainly be presented by the government defendant, who has far better knowledge of those events than private parties. See *Env't Def. Fund v. Thomas*, 1985 WL 6050, at *7 (D.D.C. Oct. 29, 1985) (denying intervention where proposed arguments would be cumulative).

More importantly, Matson's individual, factual interests—its shipping revenues, fleet investments, and commercial strategies—are largely irrelevant to the question before the Court: whether the Jones Act violates the Constitution. *Center for Food Safety v. EPA*, 2024 WL 1299338 at *10-11 (D.D.C. 2024) (denying permissive intervention by party seeking to contribute expertise tangentially related to the underlying subject of litigation). Matson's participation would serve only to turn a focused legal case into a sprawling economic policy debate. Rule 24(b) was not

16

designed to open the door to every commercial beneficiary of a challenged statute when doing so provides no tangible benefits and only needlessly complicates litigation.

Matson seeks to intervene merely because it wants to preserve an indirect commercial advantage it has long enjoyed under a statute now subject to constitutional scrutiny. While understandable, such an interest is not a valid basis for permissive intervention and comes with significant costs. For these reasons, the Court should deny Matson's request for permissive intervention.

**CONCLUSION**

Matson's motion should be denied.

Dated: May 2, 2025.

Respectfully submitted,

/s/ Joshua P. Thompson
JOSHUA P. THOMPSON
D.D.C. Bar No. TX0084
JOSHUA W. POLK*
Cal. Bar No. 329205
ANASTASIA P. BODEN
D.D.C. Bar No. CA00222
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
JThompson@pacificlegal.org
JPolk@pacificlegal.org
ABoden@pacificlegal.org

*admitted pro hac vice

17

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2025, the forgoing document was filed via the

court's electronic filing system which effected service on all counsel of record:

ROBERT W. MEYER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Robert.W.Meyer@usdoj.gov
*Counsel for Defendants*

Miguel A. Estrada
Lucas C. Townsend
Amalia Reiss
Eric Brooks
Noah J. Delwiche
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
MEstrada@gibsondunn.com
LTownsend@gibsondunn.com
AReiss@gibsondunn.com
EBrooks2@gibsondunn.com
NDelwiche@gibsondunn.com

Rachel S. Brass*
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
RBrass@gibsondunn.com
*admitted pro hac vice*

*Counsel for Proposed-Intervenor*
*Matson Navigation Company, Inc.*

/s/ Joshua P. Thompson
JOSHUA P. THOMPSON

18