IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KOLOA RUM COMPANY,<br><br>   Plaintiff,<br><br>  v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; and PETE R. FLORES, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection,<br><br>   Defendants. | Case No. 1:25-cv-00554-JEB |

**CONSOLIDATED REPLY IN SUPPORT OF MOTION OF MATSON NAVIGATION COMPANY, INC. TO INTERVENE IN SUPPORT OF DEFENDANTS**

Miguel A. Estrada, DC Bar No. 456289
Lucas C. Townsend, DC Bar No. 1000024
Amalia Reiss, DC Bar No. 241775
Eric Brooks,* DC Bar No. 1660507
Noah J. Delwiche, DC Bar No. 90027464
MEstrada@gibsondunn.com
LTownsend@gibsondunn.com
AReiss@gibsondunn.com
EBrooks2@gibsondunn.com
NDelwiche@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
*Application for admission pending.

Rachel S. Brass, *pro hac vice*
RBrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8200

*Counsel for Proposed Intervenor*
*Matson Navigation Company, Inc.*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1
II. ARGUMENT ........................................................................................................................ 2
    A. Matson's Timeliness And Article III Standing Are Undisputed ............................ 2
    B. Matson Has Demonstrated A Specific Protectable Interest In This Case .............. 3
    C. Matson Has Shown That Its Interest May Be Inadequately Represented .............. 5
    D. The Parties' Arguments Against Permissive Intervention Are Unpersuasive ........................................................................................................... 9
III. CONCLUSION ................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akiachak Native Cmty. v. Dep't of Interior*,
  584 F. Supp. 2d 1 (D.D.C. 2008) ...................................................................................9

*Araraki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) .......................................................................................8

*Black v. LaHood*,
  2012 WL 13054502 (D.D.C. Apr. 30, 2012) ................................................................9

*Blount-Hill v. Board of Educ. of Ohio*,
  195 F. App'x 482 (6th Cir. 2006) ..................................................................................4

*Campaign Legal Ctr. v. Fed. Election Comm'n*,
  334 F.R.D. 1 (D.D.C. 2019) ..........................................................................................9

*Cobell v. Jewell*,
  2016 WL 10704595 (D.D.C. Mar. 30, 2016) .............................................................7, 8

*Colorado River Cutthroat Trout v. Salazar*,
  2010 WL 11575619 (D.D.C. May 17, 2020) ..............................................................11

*Crossroads Grassroots Pol'y Strategies v. FEC*,
  788 F.3d 312 (D.C. Cir. 2015) ......................................................................................7

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
  640 F. Supp. 3d 59 (D.D.C. 2022) .............................................................................8, 9

*Ctr. for Food Safety v. EPA*,
  2024 WL 1299338 (D.D.C. Mar. 26, 2024) .................................................................10

*Dimond v. District of Columbia*,
  792 F.2d 179 (D.C. Cir. 1986) ..................................................................................6, 7

*Feehan v. Wis. Elections Comm'n*,
  506 F. Supp. 3d 640 (E.D. Wis. 2020) ........................................................................11

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
  447 F.3d 835 (D.C. Cir. 2006) ....................................................................................10

*Foster v. Gueory*,
  655 F.2d 1319 (D.C. Cir. 1981) ....................................................................................3

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) .............................................................................2, 5, 6

*HRH Servs. LLC v. Travelers Indem. Co.*,
  2024 WL 4699925 (D.D.C. Nov. 6, 2024) ...................................................................6

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Humane Soc'y of the United States v. United States Dep't of Agric.*,
    2023 WL 3433970 (D.D.C. May 12, 2023) ............................................................. 9

*Humane Soc'y of United States v. Clark*,
    109 F.R.D. 518 (D.D.C. 1985) ............................................................................... 8

*Ligas ex rel. Foster v. Maram*,
    478 F.3d 771 (7th Cir. 2007) ................................................................................. 8

*Norfolk S. Ry. Co. v. Solis*,
    915 F. Supp. 2d 32 (D.D.C. 2013) ....................................................................... 10

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) ............................................................................. 11

*Stuart v. Huff*,
    706 F.3d 345 (4th Cir. 2013) ................................................................................. 8

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) ............................................................................................... 5

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ................................................................................. 5

*United States v. Microsoft Corp.*,
    2002 WL 319436 (D.D.C. Feb. 28, 2002) ........................................................... 11

*United States v. New York*,
    820 F.2d 554 (2d Cir. 1987) .................................................................................. 7

*United States v. Tennessee*,
    260 F.3d 587 (6th Cir. 2001) ................................................................................. 4

*Waterkeeper All., Inc. v. Wheeler*,
    330 F.R.D. 1 (D.D.C. 2018) ............................................................................. 4, 7

*Wildearth Guardians v. Salazar*,
    272 F.R.D. 4 (D.D.C. 2010) ............................................................................. 4, 9

*Wis. Educ. Ass'n Council v. Walker*,
    705 F.3d 640 (7th Cir. 2013) ................................................................................. 8

## Other Authorities

58 CONG. REC. 3519 (1919) ......................................................................................... 3

## Rules

*Fed. R. Civ. P. 24(b)(3) ............................................................................................. 10

## I.      INTRODUCTION

The narrow grounds on which Koloa Rum and the federal defendants oppose intervention do not overcome Matson's unusually strong right to intervene in this case. Matson's business is inextricably intertwined with the Jones Act, and Matson has demonstrated specific investment-backed expectations in the Act's continued enforcement. Matson is currently investing over $1 billion in the construction of three Jones Act-compliant vessels in the United States—a binding investment Matson would not have made but for the Jones Act. Invalidation of the Jones Act would substantially impair the value of Matson's investments. Indeed, the Amended Complaint refers to Matson's central role in the Jones Act Hawaiian trade, and the Act's legislative history expressly confirms Matson's century-long investment-backed interests in the constitutional validity of the Jones Act. Koloa Rum's characterization of Matson's interest as a "generalized financial interest," Dkt. 27 (Koloa Rum Opp.) at 5, and an "ordinary business investment[]," *id.* at 6, is nothing more than empty rhetoric because there is nothing generalized or ordinary about Matson's record of investment in ships, cranes, jobs, and trade under the Jones Act. To the contrary, it is difficult to conceive of a stronger interest in the subject matter of this lawsuit than Matson's—which presumably is why the federal defendants do not join Koloa Rum's strained attempts to mischaracterize the record and minimize Matson's interest.

Both Koloa Rum and the defendants attempt to persuade this Court that the government will adequately represent Matson's interest, but their arguments do not withstand scrutiny. The defendants' core contention that the government can adequately defend statutes from constitutional attack again ignores Matson's unique proprietary interest in this case, which the government has no specific duty to consider, much less defend. Only Matson can represent those interests, as the defendants effectively concede by ignoring the record of Matson's investments. And only Matson

1

can safeguard those investments against future changes in federal policy or enforcement discretion in this case. Courts in this Circuit routinely allow intervention in similar circumstances.

Finally, in opposing Matson's permissive intervention, both Koloa Rum and the defendants fret that Matson's party participation could "delay" or "complicate" the litigation, but this is a stock objection to any intervention that wholly disregards the interests of the proposed intervenor and, in any event, it is vastly overstated here. Matson has no interest in protracting this lawsuit or litigating immaterial issues; indeed, Matson expects that the case will be dismissed on the pleadings. But if the case proceeds to discovery, Matson will not only ensure that Koloa Rum is held to its burden of proving the allegations in its complaint, but its presence in this case will avoid the delay that subpoenas and other *non-party* discovery risks. That is not "needlessly complicating" the case, but the normal functioning of the adversarial process, and Matson's participation as an *amicus* would not be an adequate substitute. Unfounded stock fears about delay and complication are not reason to deny Matson's intervention.

## II.   ARGUMENT

### A.   Matson's Timeliness And Article III Standing Are Undisputed.

All parties agree that Matson's motion to intervene is timely. *See* Koloa Rum Opp. at 4; Dkt. 29 (Gov't Opp.) at 2. And no party disputes that, to the extent it is required, Matson has Article III standing. *See* Dkt. 15-1 (Mot.) at 12–13. Thus, Matson also has a protectable interest in this case, because a "conclusion that [an intervenor] has constitutional standing is alone sufficient to establish that [the intervenor] has 'an interest relating to the property or transaction which is the subject of the action'" for purposes of satisfying Rule 24(a)(2). *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003).

B.      **Matson Has Demonstrated A Specific Protectable Interest In This Case.**

Koloa Rum—but not the defendants—disputes Matson's protectable interest in this case on two grounds, but neither has merit.

*First*, Koloa Rum mischaracterizes Matson's interest as a mere "generalized financial interest" and an "ordinary business investment[]," Koloa Rum Opp. at 5–6, while ignoring the actual evidence Matson submitted. Matson quantified specific, demonstrable investments in reliance on the constitutionality of the Jones Act. *See generally* Dkt. 15-2 (Cox Decl.). For example, Matson is now investing more than $1 billion in the construction of three new Jones Act-compliant vessels in the United States that will service the Hawaiian trade. Mot. at 2. Construction of the vessels is underway with delivery dates starting in 2027, and Matson cannot walk away from the contract if the Jones Act were invalidated. *See* Cox Decl. ¶ 12; Mot. at 9. Matson would not have made that binding investment in domestic shipbuilding but for the Jones Act. Matson also employs over 4,300 individuals, including the U.S. crews who must operate Jones Act vessels. Cox Decl. ¶¶ 5, 7, 15. No company has invested more than Matson in reliance on the Jones Act over its 105-year history, as evidenced by the many references to Matson in the Jones Act legislative history cited in the complaint. *See* Mot. at 2, 7–8; FAC ¶¶ 23–25, 47; 58 CONG. REC. 3519 (1919) (statement of Rep. Kahn). And if there were any doubt, the complaint itself references Matson as one of the "only two Jones Act compliant shippers available to Hawai'i" that allegedly "driv[e] up shipping costs and the overall cost of doing business on the island," FAC ¶ 47, thereby placing Matson's Hawaiian Jones Act trade at issue in this case. Koloa Rum's characterization of Matson's interest in the subject of this lawsuit as "generalized" and "ordinary" is a distortion of the record and contrary to the complaint. Matson has an "obvious" proprietary interest in protecting the value of its property and investments directly implicated in this lawsuit. *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981).

3

Contrary to Koloa Rum's argument (at 6), this Circuit has never held that economic interests suffice only if a proposed intervenor would face "retroactive liability," "legal obligations," or "regulatory sanction" if a plaintiff won. Rather, "even indirect and tangential benefits deriving from" government action are sufficient to establish a protected interest. *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 7 (D.D.C. 2018) (cleaned up); *see also Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14 (D.D.C. 2010) (holding that a company had a protected interest because the plaintiff's relief would render the company "incapable of operating competitively"). Matson easily clears this bar given its direct and substantial interest in protecting the investments it has made in reliance on the Jones Act. *See* Mot. at 7–8.

Koloa Rum's reliance on out-of-circuit cases involving proposed intervenors who lacked Matson's strong and specific proprietary interest is misplaced. *See* Koloa Rum Opp. at 5–6. In *United States v. Tennessee*, 260 F.3d 587 (6th Cir. 2001), an association sought to intervene late in the litigation, when "[a]ll substantive issues had been resolved" and there was "very little" for the court to do apart from administering a settlement. *Id.* at 592–93. In these circumstances, the panel ruled that the association's "economic interest in how community service programs are funded" was insufficient to justify late-stage intervention where the association's claimed interests did "not concern the constitutional . . . violations alleged in the litigation" and where the association could "protect its economic interests in contract negotiations with the State." *Id.* at 595. Similarly, in *Blount-Hill v. Board of Education of Ohio*, 195 F. App'x 482 (6th Cir. 2006), a firm sought to intervene in a case to defend a funding statute for community schools that would, in turn, "contract with service providers such as" the firm. *Id.* at 484. A panel found that because the firm was "not a party to any challenged contract nor is it directly targeted by plaintiffs' complaint," its economic interests were insufficient to justify intervention. *Id.* at 486. Here, of

4

course, Matson *has* shown that Koloa Rum's lawsuit places Matson's contracts for domestic shipbuilding at issue, Cox Decl. ¶ 12, and that Matson is directly targeted by Koloa Rum's complaint, FAC ¶ 47.

Koloa Rum also overreads *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004), which concerned a party seeking to intervene solely to protect judgment funds it wished to recover. *Id.* at 920. Far from holding "that a party's financial interest in the outcome of a lawsuit does not . . . create a protectable interest," Koloa Rum Opp. at 5, the Ninth Circuit ruled that "a non-speculative, economic interest may be sufficient to support a right of intervention" where the interest "related to the underlying subject matter of the action," *Alisal Water Corp.*, 370 F.3d at 919. Matson's proprietary interests are directly related to the subject matter of this action.

*Second*, with considerable exaggeration, Koloa Rum argues that allowing Matson to intervene in this case would "produce absurd results" in future cases. Koloa Rum Opp. at 8. Little needs to be said about this hyperbolic argument, except that it once again ignores Matson's specific, unique record of investment in reliance on the Jones Act. Matson is at the economic core of the Jones Act. Matson contracts to build Jones Act-compliant vessels, employs Jones Act-compliant crews, operates the nation's largest Jones Act container fleet, and invests heavily in port facilities and other infrastructure to support the Hawaiian Jones Act trade. Matson is currently the only Jones Act container ship operator with vessels actively under construction in the United States. Matson is referenced in the complaint and featured in the Jones Act's legislative history. If Matson's interest does not qualify for intervention of right, it is difficult to conceive of an interest that would.

C.     **Matson Has Shown That Its Interest May Be Inadequately Represented.**

Matson satisfied its "minimal" and "not onerous" burden, *Fund for Animals*, 322 F.3d at 735 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)), to show that

"representation of [its] interest 'may be' inadequate, not that representation will in fact be inadequate," *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see* Mot. at 9–11. Koloa Rum and the defendants offer two contrary arguments, but neither succeeds.

*First*, Koloa Rum and the defendants argue that Matson has the "same ultimate objective" as the government—defending the constitutionality of the Jones Act—so there is a "presumption of adequa[cy]" that Matson must overcome by showing some "special circumstances." Koloa Rum Opp. at 9; Gov't Opp. at 3. But Matson does not have the "same ultimate objective" as the government in defending the Jones Act. *HRH Servs. LLC v. Travelers Indem. Co.*, 2024 WL 4699925, at *9 (D.D.C. Nov. 6, 2024). To be sure, Matson accepts the defendants' representation, for the present, that they "intend to vigorously defend the Jones Act." Gov't Opp. at 1. But Matson's ultimate objective as the nation's largest Jones Act container carrier is to protect its investments made in reliance on the Jones Act. Those investments include more than $1 billion committed to the construction of three new Jones Act-compliant vessels to expand its Jones Act-compliant carriage between Hawaii and the U.S. mainland, Cox Decl. ¶ 12; a prior $1 billion investment in four Jones Act-compliant vessels built through 2020 for the Hawaiian trade, which Matson has not yet fully recovered, *id.* ¶ 11; and cranes, terminals, and other capital-intensive projects to enhance coastwise trade with Hawaii, *id.* ¶¶ 12–13. It also seeks to protect its workforce and ocean transportation revenues from Jones Act trade with Hawaii and Alaska, *id.* ¶¶ 7, 9. The government neither shares nor claims to share Matson's objective in protecting these investments. That divergence of interests is more than sufficient to satisfy the adequacy of representation element of Rule 24(a). *See, e.g.*, *Dimond*, 792 F.2d at 192; *Fund For Animals*, 322 F.3d at 736.

In any event, the D.C. Circuit has cautioned that "treating general alignment as dispositive" goes "against the weight of authority in this Circuit," which "stresse[s] that even when the interest of a federal agency and potential intervenor can be expected to coincide, that does not necessarily mean adequacy of representation is ensured." *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (quotation marks and alteration omitted). Matson's proprietary interests are far from "identical" to the government's interest in defending the Jones Act, Gov't Opp. at 5, because only Matson can protect its own investments against possible changes in government policy or enforcement discretion. Accordingly, no presumption of adequacy exists, and Matson has shown that the government "cannot adequately represent [its] interests because [Matson is] focused on the effects of this litigation on [its] . . . financial interests" as a Jones Act carrier, not the "broad policy concerns potentially motivating" the defendants. *Waterkeeper All.*, 330 F.R.D. at 8; *see also Dimond*, 792 F.2d at 193 ("Since State Farm's interest cannot be subsumed within the shared interest of the citizens of the District of Columbia, no presumption exists that the District will adequately represent its interests.").[1]

Even if Matson needed to rebut a presumption of adequacy, it has done so because any exceptions to such a presumption are not limited to "adversity of interest, collusion, or nonfeasance." Koloa Rum Opp. at 10; Gov't Opp. at 3. Those circumstances are illustrative examples of—not exhaustive requirements for—how an intervenor can establish a potential inadequacy of representation. *See Cobell v. Jewell*, 2016 WL 10704595, at *2 (D.D.C. Mar. 30, 2016) (holding an intervenor can rebut the presumption of adequate representation by showing

---

[1] Koloa Rum's reliance (at 10) on *United States v. New York*, 820 F.2d 554 (2d Cir. 1987), is misplaced. In that case, the Second Circuit upheld a denial of intervention because the motion was "untimely," and found that the presumption of adequate representation was "inappropriate" because the state was a party to the lawsuit in its capacity as an employer. *Id.* at 557–58.

7

"special circumstances . . ., *such as* adversity of interest collusion, or nonfeasance") (emphasis added and quotation marks omitted).  A proposed intervenor also can rebut the presumption of adequacy by showing, as Matson has done here, that the suit implicates proprietary interests not shared by another party.  *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 640 F. Supp. 3d 59, 68–69 (D.D.C. 2022) (holding that government could not adequately represent proposed-intervenor companies' "specific" "property and financial investments").  Matson is not simply claiming that its interest is "more direct or immediate" than the government's, as in *Humane Society of United States v. Clark*, 109 F.R.D. 518 (D.D.C. 1985).  *See* Koloa Rum Opp. at 10.  Instead, Matson's interest is distinct and independent of whatever policy interest the government seeks to protect.  *Contra Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774–75 (7th Cir. 2007) (defendant was "governmental body charged by law with protecting the interests of the proposed intervenors").

      Similarly, a party can show potentially inadequate representation by demonstrating that he intends "to raise claims or arguments that would not otherwise be raised."  *Cobell*, 2016 WL 10704595, at *2 (quotation marks omitted).  The government does not claim to represent Matson's investments in its Jones Act vessels, port facilities, and personnel, and therefore is unlikely to raise the same arguments that Matson would raise.  Thus, even under the out-of-circuit cases that the parties cite, *see* Gov't Opp. at 5; Koloa Rum Opp. at 13–14, Maton would qualify for intervention.  *See Stuart v. Huff*, 706 F.3d 345, 353 (4th Cir. 2013) (intervenor sought to press same arguments as government); *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013) (proposed intervenors admitted to having "exactly the same goal as the state"); *Araraki v. Cayetano*, 324 F.3d 1078, 1087 (9th Cir. 2003) (proposed intervenor "fail[ed] to demonstrate it would offer any necessary elements to the proceeding that other parties would neglect").

8

*Second*, Koloa Rum's argument (at 13–14) that Matson must wait until the government files dispositive briefing to show a divergence in interests contradicts Rule 24's timeliness requirement. Courts often find that motions to intervene are timely precisely *because* they are filed before the original parties submit answers or dispositive briefing. *See, e.g., Akiachak Native Cmty. v. Dep't of Interior*, 584 F. Supp. 2d 1, 5–6 (D.D.C. 2008); *Campaign Legal Ctr. v. Fed. Election Comm'n*, 334 F.R.D. 1, 6 (D.D.C. 2019); *Black v. LaHood*, 2012 WL 13054502, at *1 (D.D.C. Apr. 30, 2012). Matson is not required to wait on the sidelines until the parties take positions contrary to its protectable interests and risk a ruling then that its intervention motion came too late. Instead, it is enough to show at the outset that the government's public interest *may* diverge from an intervenor's distinct private interest, and Matson has done exactly that. *See Humane Soc'y of the United States v. United States Dep't of Agric.*, 2023 WL 3433970, at *9 (D.D.C. May 12, 2023) (noting that courts often hold that the government may not adequately represent private parties' interests "because the entities' interests could always diverge later on in the course of the litigation").[2]

### D. The Parties' Arguments Against Permissive Intervention Are Unpersuasive.

Although Matson has more than satisfied the requirements for intervention as of right, this Court should, in the alternative, grant Matson permission to intervene under Rule 24(b) because

---

[2] On the day this reply brief was due to be filed, the American Maritime Partnership and the Maritime Trades Department of the AFL-CIO advised the parties that they will also seek leave to move to intervene in this case to defend the Jones Act. Although Matson is a member of the American Maritime Partnership, Matson has been advised by the associations that they will seek to protect a broader range of interests in the industries that support the domestic maritime trade, including labor and construction. Those protectable interests in the Jones Act are distinct from the unique proprietary and economic interests that Matson has intervened to protect. *See, e.g., Wildearth Guardians*, 272 F.R.D at 15 (allowing trade association and private company to intervene because the trade association had "broader regional and national interests" in the action); *Ctr. for Biological Diversity*, 640 F. Supp. 3d at 68–69 (similar).

Matson's motion is timely and its arguments share common questions of law and fact with Koloa Rum's action.  Fed. R. Civ. P. 24(b)(3); *see* Mot. at 13–14.

Koloa Rum's passing objection (at 15) that Matson lacks a legally protectable interest sufficient for permissive intervention is wrong.  As Matson has amply demonstrated, *see supra* at 3–5; Mot. at 7–8, there is nothing remotely "speculative" about Matson's interests in this case. *Norfolk S. Ry. Co. v. Solis*, 915 F. Supp. 2d 32, 41 (D.D.C. 2013).

The parties' primary argument, that Matson would "significantly" or "needlessly" complicate this case, also rings hollow.  Koloa Rum Opp. at 16; Gov't Opp. at 8.  Koloa Rum's constitutional claims should fail on the pleadings, and Matson's participation in motion-to-dismiss briefing would not complicate or delay any resolution, as Matson will abide by the schedule stipulated by the parties and ordered by the Court.  *See* Minute Order (Apr. 30, 2025).  But should this action proceed to discovery, there is no prejudice in ensuring that Koloa Rum carries its burden of proof.  *Cf. FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835, 840 (D.C. Cir. 2006) (noting that "simple exposure to adjudication" is not "a qualifying form of prejudice" under default judgment rules).  Koloa Rum has made allegations regarding the Jones Act and trade with Hawaii, and Matson is well situated to develop a factual record countering those claims, and its participation as a party would speed discovery, avoiding the invariable challenges of seeking information from a non-party.  This is not a case where Matson's "expertise and perspective . . . have no bearing on the issues here in dispute." *Ctr. for Food Safety v. EPA*, 2024 WL 1299338, at *10 (D.D.C. Mar. 26, 2024) (cited at Koloa Rum Opp. at 16).  Matson has no interest in prolonging this litigation, burdening the Court with immaterial issues, or turning this case into a "sprawling economic policy debate."  Koloa Rum Opp. at 16.  Matson would simply protect its own interests while ensuring that Koloa Rum is held to its burden of proof.

Finally, consigning Matson to *amicus* status would be inadequate. Koloa Rum Opp. at 14; Gov't Opp. at 8. Matson's proprietary interests require party participation, unlike the cases that Koloa Rum cites.³ In these circumstances, where Matson could not "tender any evidence, make any motions, or take or prosecute an appeal," *amicus* status is "not an adequate substitute" to intervention. *Nuesse v. Camp*, 385 F.2d 694, 704 n.10 (D.C. Cir. 1967).

### III. CONCLUSION

Matson respectfully requests that the Court grant the Motion to Intervene.

---

³ *See Colorado River Cutthroat Trout v. Salazar*, 2010 WL 11575619, at *2 (D.D.C. May 17, 2020) (proposed intervenor's "claims or defenses do not involve a question of law or fact in common with the main action"); *United States v. Microsoft Corp.*, 2002 WL 319436, at *2 (D.D.C. Feb. 28, 2002) (proposed intervenor "failed to articulate an interest in this case"); *Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 640, 649 (E.D. Wis. 2020) (proposed intervenor had already filed an *amicus* brief before moving to intervene).

11

Dated: May 20, 2025                              Respectfully submitted,


                                              /s/ *Miguel A. Estrada*
                                              Miguel A. Estrada (DC Bar No. 456289)
                                              Lucas C. Townsend (DC Bar No. 1000024)
                                              Amalia Reiss (DC Bar No. 241775)
                                              Eric Brooks* (DC Bar No. 1660507)
                                              Noah J. Delwiche (DC Bar No. 90027464)
                                              GIBSON, DUNN & CRUTCHER LLP
                                              1700 M Street, N.W.
                                              Washington, D.C. 20036-4504
                                              (202) 955-8500
                                              MEstrada@gibsondunn.com
                                              LTownsend@gibsondunn.com
                                              AReiss@gibsondunn.com
                                              EBrooks2@gibsondunn.com
                                              NDelwiche@gibsondunn.com

                                              *Application for admission pending.

                                              Rachel S. Brass (*pro hac vice*)
                                              GIBSON, DUNN & CRUTCHER LLP
                                              One Embarcadero Center, Suite 2600
                                              San Francisco, CA 94111-3715
                                              (415) 393-8200
                                              RBrass@gibsondunn.com

                                              *Counsel for Proposed Intervenor*
                                              *Matson Navigation Company, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that on May 20, 2025, I caused a copy of the foregoing document to be served on all parties through the Court's CM/ECF system.

                                                  */s/ Miguel A. Estrada*
                                                  Miguel A. Estrada (DC Bar No. 456289)