# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KŌLOA RUM COMPANY, | |
| Plaintiff, | Case No. 1:25-cv-00554-JEB |
| v. | |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; and PETE R. FLORES, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection, | |
| Defendants. | |

## PLAINTIFF'S OPPOSITION TO AMP/MTD'S MOTION TO INTERVENE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ............................................................................................... 1

STATEMENT OF THE CASE .............................................................................. 2

LEGAL STANDARD.......................................................................................... 4

ARGUMENT ..................................................................................................... 4

   I.   AMP LACKS A LEGALLY PROTECTABLE INTEREST ............................... 4

   II.   THE GOVERNMENT ADEQUATELY REPRESENTS
       AMP'S INTERESTS.................................................................................. 9

       A.  Presumption of Adequate Representation ................................. 9

       B.  AMP's Speculative Concerns About Potential Future Divergence
           Are Insufficient To Overcome the Presumption of Adequate
           Representation ......................................................................... 13

   III.  PERMISSIVE INTERVENTION SHOULD BE DENIED ............................. 15

CONCLUSION.................................................................................................. 17

CERTIFICATE OF SERVICE ............................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Horse Protection Ass'n v. Veneman*,
200 F.R.D. 153 (D.D.C. 2001)......................................................................... 8

*Atl. Refinishing & Restoration, Inc. v. Travelers Cas. and Sur. Co. of Am.*,
272 F.R.D. 26 (D.D.C. 2010)......................................................................... 10

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich*,
40 F.3d 1275 (D.C. Cir. 1994) ...................................................................... 4

*Blount-Hill v. Board of Education of Ohio*,
195 F. App'x 482 (6th Cir. 2006) ................................................................. 5

*Center for Food Safety v. EPA*,
No. 23-1633 (CKK), 2024 WL 1299338 (D.D.C. 2024) .................................. 16–17

*Cobell v. Jewell*,
No. 96-01284 (TFH), 2016 WL 10703793 (D.D.C. 2016)................................. 10

*Colo. River Cutthroat Trout v. Salazar*,
No. 09-2233 (PLF), 2010 WL 11575619 (D.D.C. 2010) .................................. 15

*Commonwealth of Va. v. Westinghouse Elec. Corp.*,
542 F.2d 214 (4th Cir. 1976) ....................................................................... 10

*County of San Miguel v. MacDonald*,
244 F.R.D. 36 (D.D.C. 2007)........................................................................ 7–8

*Defense Fund, Inc. v. Costle*,
79 F.R.D. 235 (D.D.C. 1978)........................................................................ 14

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1986) ..................................................................... 8, 12

*Donaldson v. United States*,
400 U.S. 517 (1971) .................................................................................... 4–5

*Env't Def. Fund v. Thomas*,
No. 85-1747, 1985 WL 6050 (D.D.C. Oct. 29, 1985) ..................................... 16

*Feehan v. Wisconsin Elections Comm'n*,
No. 20-cv-1771-pp, 2020 WL 7249866 (E.D. Wis. Dec. 9, 2020) ................... 15

ii

*Ligas ex rel. Foster v. Maram,*
  478 F.3d 771 (7th Cir. 2007) ............................................................. 10

*Fund for Animals, Inc. v. Norton,*
  322 F.3d 728 (D.C. Cir. 2003) ........................................................ 4–6

*Hardin v. Jackson,*
  600 F.Supp.2d 13 (D.D.C. 2009) ................................................. 11–12

*Humane Soc'y of the United States v. Clark,*
  109 F.R.D. 518 (D.D.C. 1985) ...................................................... 9, 11

*Jones v. Prince George's County,*
  348 F.3d 1014 (D.C. Cir. 2003) ........................................................ 14

*LULAC v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997) ......................................................... 13

*Mandan, Hidatsa & Arikara Nation v.*
  *United States Dep't of the Interior,*
  66 F.4th 282 (D.C. Cir. 2023) ........................................................... 6

*Maxwell's Pic-Pac, Inc. v. Vance,*
  No. 3:11-cv-18-H, 2011 WL 13210024 (W.D. Ky. Apr. 8, 2011) ........................ 6–7

*Moosehead Sanitary Dist. v. S.G. Phillips Corp.,*
  610 F.2d 49 (1st Cir. 1979) ............................................................. 13

*Norfolk S. Ry. Co. v. Solis,*
  915 F.Supp.2d 32 (D.D.C. 2013) ........................................................ 15

*NRDC, Inc. v. N.Y. State Dep't of Env't Conservation,*
  834 F.2d 60 (2d Cir. 1987) .............................................................. 11

*Stuart v. Huff,*
  706 F.3d 345 (4th Cir. 2013) ....................................................... 10–11

*United States v. Alisal Water Corp.,*
  370 F.3d 915 (9th Cir. 2004) ............................................................. 5

*United States v. City of Detroit,*
  712 F.3d 925 (6th Cir. 2013) ........................................................... 14

*United States v. Microsoft Corp.,*
  No. Civ.A. 98-1232(CKK), 2002 WL 319436 (D.D.C. 2002) ................................ 15

iii

*United States v. New York,*
    820 F.2d 554 (2d Cir. 1987)............................................................................. 10

*United States v. Tennessee,*
    260 F.3d 587 (6th Cir. 2001) ...................................................................... 5, 9

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission,*
    834 F.3d 562 (5th Cir. 2016) ........................................................................... 8

*Wildearth Guardians v. Salazar,*
    272 F.R.D. 4 (D.D.C. 2010)......................................................................... 6–7

*Wisconsin Educ. Ass'n Council v. Walker,*
    705 F.3d 640 (7th Cir. 2013) ....................................................................... 10

## Rules

Fed. R. Civ. P. 24 .......................................................................................... 5, 7, 9

Fed. R. Civ. P. 24(a) ........................................................................................... 3–4

Fed. R. Civ. P. 24(a)(2) ........................................................................................... 4

Fed. R. Civ. P. 24(b) ........................................................................................ 3, 17

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................. 15

Fed. R. Civ. P. 24(b)(3).......................................................................................... 16

**INTRODUCTION**

For the second time, private entities seek to intervene in this litigation to defend the constitutionality of the Jones Act alongside the United States. The Court is already considering a motion to intervene filed by Matson Navigation Co.—one of only two Jones Act carriers operating between Hawaii and the mainland United States and current member of the American Maritime Partnership. Doc. 15; Doc. 31-1 at 15–16. This latest motion seeks to add two additional parties, that same maritime trade association and a union, to the defense.

By its very existence, this second intervention request underscores the untenability of the theory of intervention asserted by all proposed intervenors in this case. Proposed intervenors' theory of intervention would, if accepted, mean that any individual, business, or trade association that incidentally benefits or suffers from the Jones Act's cabotage provisions would have the right to intervene in this case on one side or the other. The Court need not, and should not, adopt such an expansive theory. As the government itself acknowledges, this case is ultimately a constitutional challenge that turns on questions of law, not the mountains of highly specialized industry information that American Maritime Partnership and Maritime Trades Department of the AFL-CIO[1] wish to introduce. *See* Defendants' Response to Matson's Motion to Intervene, Doc. 29 at 7–8.

Although AMP's members profit from the Jones Act's anticompetitive protections, its desire to preserve those protections does not create a right to

---

[1] Collectively referred to as "AMP" throughout this brief.

intervene in a constitutional lawsuit. Nor does AMP face any additional regulatory burden that would arise if the challenged statutory provisions were invalidated. The federal government fully shares AMP's objective of upholding the Jones Act. And, while the precise contours of the government's defense remain to be developed, there is no basis for doubting that it will fully and vigorously defend its own statute. Doc. 29 at 1 ("Defendants in the case ... intend to vigorously defend the Jones Act from Plaintiff's suit."). AMP's intervention would serve only to complicate these proceedings. Their participation promises to multiply filings, increase the burdens of discovery and motion practice, and delay resolution of what is, at bottom, a straightforward constitutional question. For these reasons, and those discussed more fully below, the motion should be denied.

## STATEMENT OF THE CASE

For nearly two decades, Kōloa Rum Company has produced premium, award-winning rums on the island of Kauai, using local ingredients and Hawaiian-grown sugar. *See* Doc. 13 at 2. Its success reflects years of innovation, entrepreneurship, and sustained investment. But like many small businesses in Hawaiʻi, Kōloa Rum Company depends heavily on access to mainland markets, where most of its customer base resides. *Id.* at 9–12. The Jones Act imposes significant logistical and economic burdens on that access. By requiring that all goods transported between U.S. ports travel on U.S.-built, U.S.-flagged, and U.S.-crewed vessels, the Act sharply inflates the cost of shipping to and from Hawaiʻi. *See* Doc. 13 at 6–10. Unlike mainland businesses that can rely on rail and truck transport, Hawaiian companies face

uniquely high costs. *Id.* These disparities affect Kōloa Rum Company's ability to compete and grow.

Kōloa Rum Company challenges the Jones Act under the Port Preference Clause and the Due Process Clause of the U.S. Constitution, alleging that the law discriminates against Hawaiʻi's ports and unreasonably restricts the company's right to earn a living without sufficient reason. *See* Doc. 13. Defendants responsible for enforcing the Jones Act are represented by the Department of Justice, which has already ensured the Court that it intends to vigorously defend the statute in this lawsuit. Doc. 29 at 1.

AMP represents the commercial interests of various maritime carriers, trade associations, and union workers. Doc. 31-1 at 4–5. It claims all of its members enjoy a general competitive advantage across multiple facets of the maritime industry due in part to the Jones Act's elimination of foreign competition. *Id.* AMP now moves to intervene as of right under Rule 24(a) or, alternatively, by permission under Rule 24(b). It asserts an economic interest in preserving the statute and speculates that the government may not adequately represent its position because it has more specific financial interests than the federal government. But AMP's interests are fully aligned with those of the government—even by its own terms. Doc. 31-1 at 9 (stating that the government's interest in upholding the Jones Act is to ensure economic benefit to AMP's members). Ultimately, AMP's participation at this stage would serve only to duplicate the government's defense, expand the scope of the litigation, and

delay resolution of an important constitutional question. AMP's motion should be denied.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 24(a)(2), a party seeking to intervene as of right must establish that: (1) its motion is timely; (2) it asserts a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) its interest is not adequately represented by the existing parties. *Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). Each of the four prongs is mandatory; failure to satisfy even one requires denial of the motion. *Id.*

Plaintiff does not dispute that AMP's motion was timely filed. But AMP fails to establish a legally protectable interest under Rule 24(a), and any interest it asserts is adequately represented by the government. Moreover, because the government has yet to file any responsive pleading or motion, AMP's concerns about the government's litigation strategy are entirely speculative, making its request premature and unwarranted at this stage.

## ARGUMENT

## I.   AMP LACKS A LEGALLY PROTECTABLE INTEREST

To intervene as of right under Rule 24(a)(2), AMP must demonstrate an interest related to the "property or transaction" that is the subject of the action. *See Donaldson v. United States*, 400 U.S. 517, 531 (1971); *Fund for Animals, Inc. v.*

*Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). Not just any interest will do. Rather, the intervenor must demonstrate an interest that is "significantly protectable" by law. *Donaldson*, 400 U.S. at 631.

AMP asserts an interest in a favorable regulatory environment, suggesting that any entity with an economic stake in a challenged law is entitled to intervene, even where that interest is incidental or speculative. *See* Doc. 31-1 at 8–12. But courts have consistently rejected the notion that a generalized financial interest in preserving favorable regulation constitutes a significantly protectable interest under Rule 24. *See, e.g.*, *United States v. Tennessee*, 260 F.3d 587, 596 (6th Cir. 2001). In *Tennessee*, the Sixth Circuit denied intervention where the proposed intervenor sought to protect its financial interests in the continued application of a statute, holding that economic interests, alone, were insufficient. The court distinguished between cases where a party sought to intervene because it had some financial stake in the outcome of the lawsuit and where a party had statutory rights or was subject to a contract that would be affected by the litigation, and which it could not escape. *Id.*; *see also Blount-Hill v. Board of Education of Ohio*,195 F. App'x 482, 486–87 (6th Cir. 2006) (reaffirming that economic actors seeking to preserve regulatory advantages must pursue their goals through legislative or administrative channels, not by inserting themselves into constitutional litigation); *United States v. Alisal Water Corp.*, 370 F.3d 915, 919–20 (9th Cir. 2004) (holding that a party's financial interest in the outcome of a lawsuit does not, on its own, create a protectable interest). AMP claims no statutory right or inescapable contract here, and there are no cases

5

recognizing a right to intervene based solely on a party's self-interest in preserving the anti-competitive effects of a challenged legal regime.

The cases AMP cites are inapposite because each involved parties asserting specific legal entitlements directly regulated or affected by the challenged government action. In *Wildearth Guardians v. Salazar*, for example, the intervenors' members held concrete property interests in federal coal leases that were the direct subject of the agency action being challenged. 272 F.R.D. 4, 15–16 (D.D.C. 2010). Likewise, in *Fund for Animals v. Norton*, the D.C. Circuit found a protectable interest where the intervenor claimed rights in specific, tangible property directly at issue in the litigation. 322 F.3d at 735. The court emphasized that a claimed interest in the identifiable property forming the subject of the litigation provides a strong basis for intervention. *Id.* Even AMP acknowledges this distinction when citing *Mandan, Hidatsa & Arikara Nation v. United States Department of the Interior*, 66 F.4th 282, 286 (D.C. Cir. 2023), noting that the state's asserted interests in "riverbed, minerals, mining leases and royalties that were *the subject of litigation* sufficed to intervene." Doc. 31-1 at 11 (emphasis added). Here, AMP asserts no comparable interest. No outcome in this case will affect its rights in any vessel, facility, or other tangible asset. It claims no ownership over property directly at risk, no entitlement to a license or contract threatened by this litigation, and no legally enforceable right subject to adjudication in this case. The only interest AMP asserts is its members' desire to exclude competition for their own financial benefit—a purely economic interest that is irrelevant to the constitutional questions presented here. *See Maxwell's Pic-Pac,*

6

*Inc. v. Vance*, No. 3:11-cv-18-H, 2011 WL 13210024, at *1 (W.D. Ky. Apr. 8, 2011) ("economic interest based in the potential for increased competition is probably not a substantial legal interest").

Further, in *Salazar*, this Court reasoned that the proposed intervenor association had independent standing to sue with regard to the subject agency action to preserve coal leasing on federal lands; thus, the association had a legally cognizable interest sufficient to satisfy Rule 24. 272 F.R.D. 4 at 16; *see also County of San Miguel v. MacDonald*, 244 F.R.D. 36, 46 (D.D.C. 2007) (granting intervention where the intervenor association would have had standing to sue directly). By contrast, neither AMP nor any of its members would have independent standing to sue to preserve the Jones Act's cabotage provisions if Congress itself chose to repeal or amend them. The Jones Act does not confer any affirmative legal entitlement or right on AMP or its members that is threatened in this litigation, and there is no constitutional right to exclude foreign competition. Accordingly, AMP's standing analysis—which rests entirely on the possibility that Plaintiff's success on the merits may eliminate market protections its members currently enjoy—should be rejected. Doc. 31-1 at 18–20.

For the same reasons, the string of out-of-circuit cases cited by AMP is unavailing. Doc. 31-1 at 10. Each involved intervention by a party whose legal rights or entitlements were directly at issue in the litigation. That is not the case here. AMP broadly asserts that courts routinely allow trade associations to intervene in actions challenging regulatory regimes. Doc. 31-1 at 9. While that may be true in cases involving direct regulation, AMP identifies no authority allowing intervention solely

7

because a party may face increased market competition if a challenged statute is invalidated. In *Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986), intervention was permitted where the proposed intervenor was directly regulated by the challenged statute and faced concrete financial exposure tied to its invalidation. There, the intervenor had set binding insurance rates under the statute, and when the law was struck down, it faced retroactive liability for pain and suffering damages without any ability to recoup those costs under D.C. law's prohibition on retroactive rate adjustments. *Id.* at 192. AMP, by contrast, would face no retroactive liability, no newly imposed legal obligations, and no regulatory consequences if the Jones Act's cabotage provisions are found unconstitutional as applied here.

Other cases cited by AMP on this point are equally unhelpful. In *MacDonald*, the intervenor association's members would face new restrictions on the use of their property if the plaintiff were successful in the lawsuit. 244 F.R.D. at 44. In *American Horse Protection Ass'n v. Veneman*, intervenors would be subject to ongoing regulatory obligations directly imposed by the challenged rule process and thus had the right to intervene. 200 F.R.D. 153, 158 (D.D.C. 2001). And in *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*, the trade associations represented licensees whose ability to obtain and maintain licensure depended on the challenged regulatory scheme. 834 F.3d 562, 567 (5th Cir. 2016). Here, by contrast, AMP's members are not at risk of new regulatory obligations. They hold no permits, licenses, or legal entitlements whose validity depends on the outcome of this case. Instead, they assert only a generalized economic interest in preserving favorable market

conditions created by the Jones Act's exclusionary provisions. There is simply no authority deeming an interest in keeping rivals out of the market sufficient to intervene in constitutional litigation.

As AMP's own motion illustrates, the expansive theory of intervention advanced by the proposed intervenors would, if accepted, eliminate any meaningful barrier to intervention under Rule 24. Under AMP's logic, any individual member or business entity that incidentally benefits from, or is economically affected by, the Jones Act's cabotage provisions would have a "significantly protectable interest" sufficient to intervene. But Rule 24 does not permit every economic actor with a financial interest in preserving a regulatory scheme to intervene in constitutional litigation—particularly where many statutes have incidental anticompetitive effects. *Tennessee*, 260 F.3d at 596. As this Court has previously recognized, if Rule 24 were read so broadly, "there would be no limits to the entitlement of parties who benefit in some fashion from government regulations to intervene as of right whenever those regulations are challenged." *Humane Soc'y of the United States v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985). The theory advanced by AMP and Matson already threatens to transform *this* constitutional challenge into an unnecessarily burdensome, multi-party melee. The Court should deny AMP's motion.

## II.    THE GOVERNMENT ADEQUATELY REPRESENTS AMP'S INTERESTS

### A.    Presumption of Adequate Representation

Generally, where a prospective intervenor and a named party have "the same ultimate objective" in the litigation, there is a "presumption of adequate

representati[on]" that requires a showing of "special circumstances" to warrant intervention. *Atl. Refinishing & Restoration, Inc. v. Travelers Cas. and Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010). The presumption of adequate representation applies here. AMP and the government share the same ultimate objective—defending the constitutionality of the Jones Act. *See Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013) ("[T]he Employees and the state share the same goal: protecting Act 10 against the Unions' constitutional challenge."); *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013) (where both parties "want the [policy] to be constitutionally sustained," their interests are aligned). When the government defends the constitutionality of its own statutes, the presumption is even stronger, as the defendant is a government entity "charged by law with protecting the interests of the proposed intervenors." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007). In other words, a government defendant is "presumed to represent the interests of its citizens" when it acts in its sovereign capacity. *United States v. New York*, 820 F.2d 554, 558 (2d Cir. 1987). To overcome the presumption of adequate representation, AMP must show the existence of "special circumstances," such as adversity of interest, collusion, or nonfeasance by the government. *See Cobell v. Jewell*, No. 96-01284 (TFH), 2016 WL 10703793, at *2 (D.D.C. 2016) (citing *Commonwealth of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). AMP generally asserts that courts have allowed private parties to intervene alongside the government in defense of state or federal laws. *See* Doc. 31-1 at 14. But it fails to

show why the government's representation would be inadequate to defend the statute it also wishes to defend on the same grounds.

AMP contends that its members' economic dependence on the Jones Act creates an interest more immediate or substantial than the government's sovereign interest in defending its own statute. *See* Doc. 31-1 at 14–15. But courts have consistently rejected the notion that the relative size or specificity of a private party's financial stake alters the adequacy analysis where the government shares the same litigation objective. As this Court has recognized, government policy will often carry financial consequences for private parties who benefit from it, but that fact does not transform the government's adequate representation into inadequate representation. *See Humane Soc'y*, 109 F.R.D. at 521 ("A successful challenge to government policy will almost always have a more 'direct or immediate' impact on private citizens who benefit from that policy than it will have on the government agency which adopted it. But that factor alone is not sufficient to mandate intervention as of right."); *Stuart*, 706 F.3d at 353 ("[S]tronger, more specific interests do not adverse interests make."); *see also NRDC, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 61–62 (2d Cir. 1987) ("A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party.").

Contrary to AMP's suggestion, *Hardin v. Jackson*, 600 F.Supp.2d 13 (D.D.C. 2009), does not hold that the absence of a government financial interest renders government representation inadequate. *See* Doc. 31-1 at 14. Rather, in *Hardin*, the

11

proposed intervenor held specific property rights directly threatened by the litigation's outcome. *Id.* at 16. In addition, the intervenor demonstrated that the government had entered into stipulations adverse to its position and had adopted a materially narrower litigation strategy. *Id.* at 17. The intervenor also filed its own dispositive motion raising broader and distinct legal arguments. It was these concrete divergences—not simply the government's lack of financial stake—that led the court to permit intervention. Similarly, while *Dimond* acknowledged that governmental representation may be inadequate "in certain circumstances," it did not adopt a general rule that government entities cannot represent the interests of economically affected private parties. 792 F.2d at 192. There, the intervenor faced potential retroactive liability depending on the litigation's outcome, giving rise to a direct legal interest sufficient to support intervention. *Id.* No comparable circumstances exist here.

There is no indication that the government will forgo viable defenses or that its position will diverge from AMP's in any material way. To the contrary, AMP's broad interest in preserving the Jones Act's protectionist framework mirrors the statute's exact purpose as explained by AMP itself. Doc. 31-1 at 9. AMP identifies no concessions or stipulations by the Department of Justice, and points to no divergence in litigation strategy. Both AMP and the federal government seek the same outcome: to uphold the Jones Act, and there's every reason to believe the Department of Justice will defend the statute vigorously. There is no evidence—nor any indication—that the

government will abandon viable defenses or fail to represent AMP's position fully. Accordingly, the presumption of adequate representation remains firmly in place.

### B. AMP's Speculative Concerns About Potential Future Divergence Are Insufficient To Overcome the Presumption of Adequate Representation

AMP duplicates Matson's speculation that there may be some future divergence in preferred litigation strategy between the proposed intervenors and the government. Doc. 31-1 at 16 ("[I]t is difficult to predict the course of the litigation and any discovery, as well as the strategies and arguments of the parties over time, to assess whether existing parties will provide zealous and adequate representation"). But such speculation is inadequate. And even if the government eventually diverged from AMP's preferred litigation strategy, that still would not be enough to justify intervention. Until AMP demonstrates there is reason to believe the government will give up entire defenses or fail to appeal, the motion to intervene should be denied.

Courts have repeatedly held that speculation about how the government may conduct itself in future litigation cannot overcome the presumption of adequate representation. *See, e.g.*, *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) (proposed intervenors "must produce something more than speculation as to the purported inadequacy"); *LULAC v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997) (A proposed intervenor's assertion that its interests might "at some … unspecified time in the future, diverge from the interest of the governor and attorney general is purely speculative, and does not justify intervention as a full-fledged party."). Here, speculation is all AMP offers. The federal government has not yet filed an answer, dispositive motion, or brief setting forth its legal theories, but it has

expressly assured the Court that it intends to defend the Jones Act vigorously. Doc. 29 at 1. At this stage, AMP cannot plausibly argue that its interests are inadequately represented, much less that the government's representation is actually deficient. There is no factual or legal basis to suggest that the government will provide anything short of a full defense. In any event, mere differences in litigation tactics do not establish inadequacy. *See Jones v. Prince George's County*, 348 F.3d 1014, 1019–20 (D.C. Cir. 2003).

The law is clear that mere differences in motive or emphasis are not enough to justify intervention. Further, because the arguments in this case will necessarily revolve around whether the Jones Act is unconstitutional, the individual business interests AMP seeks to advance are "largely irrelevant" and thus do not serve to undermine the presumption of adequate representation. *Defense Fund, Inc. v. Costle*, 79 F.R.D. 235, 243 (D.D.C. 1978). Should the government's defense meaningfully diverge from AMP's interests—for example, by declining to present relevant arguments or refusing to appeal—AMP may then seek to intervene or move for limited participation on appeal. *See United States v. City of Detroit*, 712 F.3d 925, 931–32 (6th Cir. 2013). But until such divergence materializes, the presumption of adequacy remains.

As with Matson, AMP's participation as amicus curiae provides an appropriate and sufficient alternative for presenting its views to the Court. Courts routinely recognize that amicus participation can adequately protect a nonparty's interests and ensure that relevant perspectives are heard—without the burdens and delays that

14

accompany full intervention. *See, e.g.*, *Colo. River Cutthroat Trout v. Salazar*, No. 09-2233 (PLF), 2010 WL 11575619, at *3 (D.D.C. 2010); *United States v. Microsoft Corp.*, No. Civ.A. 98-1232(CKK), 2002 WL 319436, at *3–4 (D.D.C. 2002); *Feehan v. Wisconsin Elections Comm'n*, No. 20-cv-1771-pp, 2020 WL 7249866, at *7 (E.D. Wis. Dec. 9, 2020) ("The court has the benefit of the movant's perspective [as amicus]; he does not need to become a party to ensure that the court takes into account th[at] perspective ...."). To the extent AMP believes it has information or arguments relevant to the disposition of this case, it may present them through amicus briefing. The government remains fully capable of obtaining any additional relevant information from AMP or other sources through standard discovery mechanisms. Based on AMP's own motion, it would plainly be willing to cooperate with any discovery requests. This approach allows the Court to consider AMP's industry perspective while preserving the streamlined nature of this constitutional challenge and avoiding unnecessary procedural complexity.

## III.    PERMISSIVE INTERVENTION SHOULD BE DENIED

Rule 24(b)(1)(B) imposes a threshold requirement of raising a claim or defense that shares a common question of law or fact with the underlying matter. As set forth above, AMP does not have a legally protectable interest in this case. A party that seeks to support the government but offers no genuinely distinct legal interest should not be granted permissive intervention. *Norfolk S. Ry. Co. v. Solis*, 915 F.Supp.2d 32, 41 (D.D.C. 2013) (denying intervention where intervenor's support for the government was based on "speculative" interests). But even if AMP could satisfy the

threshold requirement, this Court should still deny permissive intervention because intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

AMP's participation as a full party would significantly complicate these proceedings. It would result in duplicative briefing, the introduction of largely irrelevant factual assertions, and a likely expansion of discovery that would burden Plaintiff without providing any corresponding benefit to the parties or the Court. While AMP asserts that it will coordinate with the government to avoid duplication, Doc. 31-1 at 18, it has identified no failure by the government to defend the Jones Act, nor has it clearly articulated what distinct legal arguments, if any, it intends to advance. AMP further suggests that it may submit independent factual materials and contends that it is better positioned than the government to respond to "fact-laden" arguments it anticipates Kōloa Rum Company will raise. Doc. 31-1 at 15. But AMP has provided no basis to conclude that the government is incapable of fully developing both the factual and legal arguments necessary to defend its own statute. And given that the government has not yet filed a responsive pleading, there is no indication that AMP's participation would contribute any materially distinct defense. *See Env't Def. Fund v. Thomas*, No. 85-1747, 1985 WL 6050, at *7 (D.D.C. Oct. 29, 1985) (denying intervention where proposed arguments would be cumulative).

More importantly, AMP's purported expertise and financial interests are largely irrelevant to the question before the Court: whether the Jones Act violates the Constitution. *Center for Food Safety v. EPA*, No. 23-1633 (CKK), 2024 WL

16

1299338, at *10–11 (D.D.C. 2024) (denying permissive intervention by party seeking to contribute expertise tangentially related to the underlying subject of litigation). AMP's participation would serve only to turn a focused legal case into a sprawling economic policy debate. Rule 24(b) was not designed to open the door to every commercial beneficiary of a challenged statute when doing so provides no tangible benefits and only needlessly complicates litigation.

AMP seeks to intervene merely because it wants to preserve an indirect commercial advantage its members have long enjoyed under a statute now subject to constitutional scrutiny. While understandable, such an interest is not a valid basis for permissive intervention and comes with significant costs. For these reasons, the Court should deny AMP's request for permissive intervention.

## CONCLUSION

AMP's motion should be denied.

Dated: June 5, 2025.

Respectfully submitted,

/s/ *Joshua W. Polk*
JOSHUA W. POLK*
Cal. Bar No. 329205
JOSHUA P. THOMPSON
D.D.C. Bar No. TX0084
ANASTASIA P. BODEN
D.D.C. Bar No. CA00222
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
JPolk@pacificlegal.org
JThompson@pacificlegal.org
ABoden@pacificlegal.org
*Counsel for Plaintiff*
**admitted pro hac vice*

17

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2025, the forgoing document was filed via the

court's electronic filing system which effected service on all counsel of record:

ROBERT W. MEYER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Robert.W.Meyer@usdoj.gov
*Counsel for Defendants*

J. Timothy Hobbs
K&L GATES LLP
501 Commerce Street, Suite 1500
Nashville, TN 37203
Tim.Hobbs@klgates.com

Varu Chilakamarri
K&L GATES LLP
1601 K Street NW
Washington, DC 20006
Varu.Chilakamarri@klgates.com

*Counsel for Proposed-Intervenor
American Maritime Partnership and
Maritime Trades Department of the
AFL-CIO*

Miguel A. Estrada
Lucas C. Townsend
Amalia Reiss
Eric Brooks
Noah J. Delwiche
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036-4504
MEstrada@gibsondunn.com
LTownsend@gibsondunn.com
AReiss@gibsondunn.com
EBrooks2@gibsondunn.com
NDelwiche@gibsondunn.com

Rachel S. Brass*
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
RBrass@gibsondunn.com
*admitted pro hac vice*

*Counsel for Proposed-Intervenor
Matson Navigation Company, Inc.*

/s/ Joshua W. Polk
JOSHUA W. POLK

18