IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KŌLOA RUM COMPANY, | Civil Action No. 1:25-cv-00554-JEB |
| Plaintiff, | |
| v. | |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Control, | |
| Defendants, | |
| and | |
| MATSON NAVIGATION COMPANY, INC.; AMERICAN MARITIME PARTNERSHIP and MARITIME TRADES DEPARTMENT OF THE AFL-CIO, | |
| Intervenor-Defendants. | |

**INTERVENOR-DEFENDANTS AMERICAN MARITIME PARTNERSHIP AND MARITIME TRADES DEPARTMENT OF THE AFL-CIO'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF KŌLOA RUM COMPANY'S FIRST AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... iii

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND .......................................................................................................... 1

   A.   The History of the Jones Act and Prior Cabotage Laws ........................................ 1

   B.   Congress's Objectives for the Jones Act and Earlier Cabotage Laws ................... 4

   C.   Kōloa Rum Company ............................................................................................. 6

   D.   Procedural History ................................................................................................. 7

III.    LEGAL STANDARD .................................................................................................. 7

   A.   Rule 12(b)(1) ......................................................................................................... 7

   B.   Rule 12(b)(6) ......................................................................................................... 8

IV.     ARGUMENT ............................................................................................................... 9

   A.   Kōloa Rum's Claims are Time-Barred Under 28 U.S.C. § 2401(a). ................... 10

   B.   Kōloa Rum Does Not Have Standing to Bring Its Constitutional Challenge to the Jones
        Act. ...................................................................................................................... 12

   C.   Kōloa Rum Fails to State a Claim Under the Port Preference Clause. ................. 12

      1.   The Jones Act is a facially neutral law and therefore does not violate the Port Preference
           Clause. ............................................................................................................ 12

      2.   Kōloa Rum cannot state a Port Preference Clause claim through alleged discriminatory
           effect and purpose. ......................................................................................... 16

   D.   Kōloa Rum Fails to State a Claim Under the Due Process Clause. ...................... 20

      1.   Kōloa Rum has not alleged a fundamental liberty interest. ............................. 21

      2.   The Jones Act is substantially related to its intended national defense and interstate
           commerce purposes. ....................................................................................... 22

V.      CONCLUSION .......................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Abigail All. for Better Access to Dev. Drugs v. von Eschenbach*,
    495 F.3d 695 (D.C. Cir. 2007) ........................................................................ 22, 23

*Akina v. Hawaii*,
    141 F. Supp. 3d 1106 (D. Haw. 2015) ................................................................ 11

*Alab. Great S. Ry. Co. v. United States*,
    340 U.S. 216 (1951) ............................................................................................ 15

*Am. Trucking Ass'ns v. United States*,
    344 U.S. 298 (1953) ............................................................................................ 22

*\*Amoco Oil Co. v. United States*,
    23 C.I.T. 613 (1999), *aff'd*, 234 F.3d 1374 (Fed. Cir. 2000) ........................ 13, 14

*Armour Packing Co. v. United States*,
    209 U.S. 56 (1908) .............................................................................................. 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 8, 9

*Busby v. Cap. One, N.A.*,
    932 F. Supp. 2d 114 (D.D.C. 2013) ..................................................................... 8

*\*Cent. Vt. Transp. Co. v. Durning*,
    294 U.S. 33 (1935) ......................................................................................... 21, 23

*\*City of Houston v. F.A.A.*,
    679 F.2d 1184 (5th Cir. 1982) ................................................................. 13, 15, 19

*\*City of Milwaukee v. Yeutter*,
    877 F.2d 540 (7th Cir. 1989) ................................................................... 13, 15, 19

*Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*,
    313 F. Supp. 3d 285 (D.D.C. 2018) ..................................................................... 7

*Conn v. Gabbert*,
    526 U.S. 286 (1999) ........................................................................................... 21

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
    603 U.S. 799 (2024) ........................................................................................... 10

*Dittman v. California*,
    191 F.3d 1020 (9th Cir. 1999) ........................................................................... 21

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) ........................................................................ 9

*Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*,
    575 F. Supp. 3d 84 (D.D.C. 2021) ................................................................. 9

*FCC v. Beach Commc'ns, Inc.*,
    508 U.S. 307 (1993) ...................................................................................... 24

*Grand Lodge of Fraternal Ord. of Police v. Ashcroft*,
    185 F. Supp. 2d 9 (D.D.C. 2001) ................................................................... 7

*Hettinga v. United States*,
    677 F.3d 471 (D.C. Cir. 2012) (per curiam) ............................................ 8, 24

*In re Terrorist Attacks on Sept. 11, 2001*,
    657 F. Supp. 3d 311 (S.D.N.Y. 2023) ......................................................... 17

*Jafarzadeh v. Nielsen*,
    321 F. Supp. 3d 19 (D.D.C. 2018) ............................................................... 10

*Jah Kente Int'l, Inc. v. Indus. Bank of Wash., D.C.*,
    No. 22-cv-00848 (APM), 2023 WL 11056262 (D.D.C. June 26, 2023) ................ 8

*Kansas v. United States*,
    16 F.3d 436 (D.C. Cir. 1994) .................................................................. 13, 15

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ...................................................................... 8

*La. Pub. Serv. Comm'n v. Tex. & New Orleans Ry.*,
    284 U.S. 125 (1931) ...................................................................................... 14

*Matter of Gabriel Inv. Grp., Inc.*,
    24 F.4th 503 (5th Cir. 2022) ......................................................................... 19

*Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res.*,
    363 P.3d 224 (Haw. 2015) (Pollack, J., concurring).................................... 11

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
    583 U.S. 109 (2018)....................................................................................... 18

*NLRB v. SW Gen., Inc.*,
    580 U.S. 288 (2017) ...................................................................................... 16

*Novak v. United States*,
    795 F.3d 1012 (9th Cir. 2015) ........................................................... 1, 22, 23

*Oncale v. Sundowner Offshore Services, Inc.*,
   523 U.S. 75 (1998)......................................................................................... 16

*Rempfer v. U.S. Dep't of Air Force Bd. of Corr. of Military Records*,
   538 F. Supp. 2d 200 (D.D.C. 2008) ................................................................. 10

*Rostker v. Goldberg*,
   453 U.S. 57 (1981).......................................................................................... 24

*Sanchez v. Off. of State Superintendent of Educ.*,
   513 F. Supp. 3d 101 (D.D.C. 2021) ........................................................... 23, 24

*Sec'y of Agric. v. Cent. Roig Refin. Co.*,
   338 U.S. 604 (1950)......................................................................................... 22

*Shanks v. Int'l Union of Bricklayers & All. Craftworkers*,
   134 F.4th 585 (D.C. Cir. 2025) .......................................................................... 8

*Sickle v. Torres Adv. Enter. Sols., LLC*,
   884 F.3d 338 (D.C. Cir. 2018) ........................................................................... 8

*South Carolina v. Georgia*,
   93 U.S. 4 (1876).............................................................................................. 14

*State of Pennsylvania v. Wheeling and Belmont Bridge Co.*,
   59 U.S. 421 (1855)............................................................................... 13, 14, 19

*Territory of Alaska v. Troy*,
   258 U.S. 101 (1922)......................................................................................... 17

*Thomson Multimedia Inc. v. United States*,
   340 F.3d 1355 (Fed. Cir. 2003).................................................................. 13, 15

*Traux v. Raich*,
   239 U.S. 33 (1915)........................................................................................... 22

*United States v. Carolene Prods.*,
   304 U.S. 144 (1938)......................................................................................... 23

*United States v. Lanier*,
   520 U.S. 259 (1997)......................................................................................... 18

*Washington v. Glucksberg*,
   521 U.S. 702 (1997)......................................................................................... 22

*Zuber v. Allen*,
   396 U.S. 168 (1969)......................................................................................... 16

## Statutes & Legislative Journals

28 U.S.C. § 2401(a) ................................................................................. 9, 10, 11

46 U.S.C. § 50101 ..................................................................................... 5, 12, 18

46 U.S.C. § 55102 .................................................................................. 4, 12, 15, 23

50 Rev. Stat. § 4347 (1875) .............................................................................. 3

Act of Feb. 17, 1898, ch. 25, § 5, 30 Stat. 248 ............................................. 19

Alaska Statehood Act, Pub. L. No. 85-508, § 27(a), 72 Stat. 339, 351 (July 7, 1958) ........................................................................................................ 4, 17

Carl Levin & Howard P. (Buck) McKeon National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113-291, § 3503, 128 Stat. 3292 (2014) ................................. 5

Declaratory Judgment Act, 28 U.S.C. § 2201 ............................................... 10

Fifty-Fifth Cong., Sess. II, Ch. 26, § 1 (Feb. 17, 1898) ................................. 3

First Cong., Sess. I, Ch. 11, § 1 (Sept. 1, 1789) ............................................ 2

First Cong., Sess. I, Ch. 3, § 1 (July 20, 1789) ............................................. 2

Fourteenth Cong., Sess. II, Ch. 31, § 4 (Mar. 1, 1817) ................................. 2

Hawaii Admission Act, Pub. L. No. 86-3, 73 Stat. 4 (Mar. 18, 1959) ................. 17, 18

Merchant Marine Act of 1920, ch. 250, 41 Stat. 988 (June 5, 1920) .................. passim

Merchant Marine Act of 1936, ch. 858, 41 Stat. 1985 (June 29, 1936) ............... 5, 23

Sixty-Fifth Cong., Sess. I, Ch. 88 (Oct. 6, 1917) .......................................... 3

William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 3522, 134 Stat. 3388 (2021) ............................. 5

## Rules

Federal Rule of Civil Procedure 12 ........................................................ 7, 8, 9, 12

Federal Rule of Civil Procedure 24 ............................................................ 7, 9

## Constitutional Provisions

U.S. Const. amend. V .............................................................................. 1, 14, 20

U.S. Const. art. I, § 9, cl. 6.................................................................................... passim

**Other Authorities**

30 ANNALS OF CONG. 776 (1874) ................................................................................ 5

59 CONG. REC. 6863 (May 11, 1920) ........................................................................ 19

Cabotage, MERRIAM-WEBSTER.COM, https://www.merriam-
    webster.com/dictionary/cabotage.............................................................................. 1

Customs Letter Ruling No. HQ H331609, (Re: Coastwise Laws; 46 U.S.C.
    § 55103; 46 U.S.C. § 55102; 19 C.F.R. § 4.1), 2024 WL 5146641 (CBP June
    7, 2024) ................................................................................................................ 16

George Washington Papers, Series 2, Letterbooks 1754-1799: Letterbook 25,
    April 6, 1789–March 4, 1791, at 246 (December 8, 1790)...................................... 2

H.R. CON. RES. 65 (April 23, 1997) ............................................................................ 5

Second Annual Address to Congress Online by Gerhard Peters and John T.
    Woolley, *The American Presidency Project*,
    https://www.presidency.ucsb.edu/node/203719 ...................................................... 2

THE FEDERALIST NO. 11 (Alexander Hamilton) (Nov. 23, 1787) ................................ 2

## I.    INTRODUCTION

Plaintiff Kōloa Rum Company purports to operate a thriving business on a remote Hawaiian island where it produces award-winning rum that it sells all over the world.  Yet Kōloa Rum claims it is "crippled" by shipping costs attributable to Section 27 of the Merchant Marine Act of 1920—known as the Jones Act, which requires that merchandise shipped between U.S. points be on U.S. vessels—and asks the Court to enjoin enforcement of that act as to Hawaii because it allegedly violates the Constitution's Port Preference Clause and Fifth Amendment's Due Process Clause.

The Court should dismiss Kōloa Rum's First Amended Complaint with prejudice because it suffers from multiple legal defects that cannot be cured.  Kōloa Rum lacks Article III standing to assert its claims, and its claims are also time-barred.  In addition, Kōloa Rum's challenge to the Jones Act under the Port Preference Clause is meritless under both the plain text of the clause and two centuries of judicial interpretation.  No court has struck down a federal statute as violative of the Port Preference Clause, and Kōloa Rum provides no basis for this Court to become the first.  Kōloa Rum also fails to articulate any violation of its Due Process rights, including any fundamental rights that are implicated by the Jones Act.

The Court should dispense with this case once and for all.

## II.    BACKGROUND

### A.    The History of the Jones Act and Prior Cabotage Laws

For over 200 years, cabotage laws[1] have required that merchandise shipped between points in the United States be on American vessels.  These laws trace their roots back to our nation's

---

[1] "Cabotage is the transport of goods or passengers between two points in the same country." *Novak v. United States*, 795 F.3d 1012, 1016 (9th Cir. 2015) (citing *Cabotage*, BLACK'S LAW DICTIONARY (10th ed. 2014)).  Cabotage translates from French and originally referred to the limitation of access to French ports to French ships only. *See* Cabotage, MERRIAM-WEBSTER.COM,

founding.  In 1790, delivering his Second Annual Address to Congress, President George Washington urged Congress to enact "such encouragements to our own navigation as will render our commerce and agriculture less dependent on foreign [vessels], which may fail us in the very moments most interesting." George Washington Papers, Series 2, Letterbooks 1754-1799: Letterbook 25, April 6, 1789–March 4, 1791, at 246 (December 8, 1790).[2] *See also* THE FEDERALIST NO. 11 (Alexander Hamilton) (Nov. 23, 1787) (discussing the importance of an "ACTIVE COMMERCE in our own [vessels]").

In fact, the third and eleventh laws passed by the first U.S. Congress were early forms of cabotage.  The third law passed by Congress applied lower duties on vessels built in the United States or owned by U.S. citizens.  *See* First Cong., Sess. I, Ch. 3, § 1 (July 20, 1789) (applying a duty of "six cents per ton" on vessels built within the United States or belonging to U.S. citizens, "thirty cents per ton" on vessels built within the United States but belonging "wholly, or in part, to subjects of foreign powers," and "fifty cents per ton" on "all other ships or vessels").  The apparent purpose of these duties was to encourage domestic ownership and building of vessels.

The eleventh law passed by Congress established a system for registering U.S. vessels and "regulating the coasting trade."  *See* First Cong., Sess. I, Ch. 11, § 1 (Sept. 1, 1789) (defining "a vessel of the United States" as, generally, "any ship or vessel built within the United States and belonging wholly to a citizen or citizens thereof").

In the Navigation Act of 1817, Congress for the first time proscribed the transportation of merchandise between U.S. ports on vessels owned by non-U.S. citizens.  *See* Fourteenth Cong.,

---

https://www.merriam-webster.com/dictionary/cabotage (last visited July 24, 2025).  The terms "coastwise trade" and "coasting trade" refer to the same concept.

[2]  *See also* Second Annual Address to Congress Online by Gerhard Peters and John T. Woolley, *The American Presidency Project*, https://www.presidency.ucsb.edu/node/203719.

Sess. II, Ch. 31, § 4 (Mar. 1, 1817) (providing that "[n]o goods, wares, or merchandise, shall be imported . . . from one port of the United States to another port of the United States, in a vessel belonging wholly or in part to a subject of any foreign power"). Congress periodically recodified that proscription over the ensuing decades and expanded it by precluding transshipment through a foreign port and specifying that the penalty for a violation was forfeiture of the merchandise. *See, e.g.,* 50 Rev. Stat. § 4347 (1875); Fifty-Fifth Cong., Sess. II, Ch. 26, § 1 (Feb. 17, 1898) ("That no merchandise shall be transported by water under penalty of forfeiture thereof from one port of the United States to another port of the United States, either directly or via a foreign port, or for any part of the voyage, in any other vessel than a vessel of the United States.").

During World War I, Congress temporarily authorized the United States Shipping Board to suspend these cabotage requirements by issuing permits to vessels on a limited, case-by-case basis. *See* Sixty-Fifth Cong., Sess. I, Ch. 88 (Oct. 6, 1917) (providing that "during the present war with Germany and for a period of one hundred and twenty days thereafter" the Shipping Board "may, if in its judgment the interests of the United States require, suspend the present provisions of law and permit vessels of foreign registry . . . to engage in the coastwise trade of the United States" but only "upon a permit issued by" the Shipping Board to the specific vessel). Yet Congress retained the default proscription against using foreign vessels in U.S. commerce, and the wartime permitting exemption expired by its terms. *See id.*

Then, in 1920, Congress enacted the Jones Act—the law at issue in this case. *See* Sixty-Sixth Merchant Marine Act of 1920, ch. 250, 41 Stat. 988 (June 5, 1920). The Jones Act extended the century-old requirements of prior cabotage laws, retaining the requirement of U.S. ownership of vessels used for transporting merchandise, and adding new provisions. In particular, the relevant portion provides:

> That no merchandise shall be transported by water, or land and water, on penalty of forfeiture thereof, between points in the United States, including Districts, Territories, and possessions thereof embraced by the coastwise laws, either directly or via a foreign port, or for any part of the transportation, in any other vessel than a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States . . . .

*Id.*, § 27, 41 Stat. at 999.  The law as passed in 1920 contained an exemption for merchandise transported by certain "through routes" using Canadian rail lines for which rate tariffs were filed with the Interstate Commerce Commission, and the exemption excluded Alaska, a U.S. territory at the time.  *See id*.  When Alaska later became a state, Congress amended the act to remove the exclusion and put Alaska on equal footing with all other states.  *See* Alaska Statehood Act, Pub. L. No. 85-508, § 27(a), 72 Stat. 339, 351 (July 7, 1958).  The Jones Act did not then, and does not now, contain any other express exception for a specific state.  This portion of the Jones Act is currently codified at 46 U.S.C. § 55102(b).

**B.    Congress's Objectives for the Jones Act and Earlier Cabotage Laws**

In the Jones Act, Congress clearly laid out its goal of incentivizing the building and operation of a fleet of privately owned vessels—the American merchant marine—to promote U.S. economic interests and be available for use in time of war or national emergency:

> That it is necessary for the national defense and for the proper growth of its foreign and domestic commerce that the United States shall have a merchant marine of the best equipped and most suitable types of vessels sufficient to carry the greater portion of its commerce and serve as a naval or military auxiliary in time of war or national emergency, ultimately to be owned and operated privately by citizens of the United States; and it is hereby declared to be the policy of the United States to do whatever may be necessary to develop and encourage the maintenance of such a merchant marine, and…keep always in view this purpose and object as the primary end to be attained.

*Id.*, § 1, 41 Stat. 988.  Congress later reaffirmed these objectives:

> It is necessary for the national defense and development of its foreign and domestic commerce that the United States shall have a merchant marine . . . owned and operated under the United States flag by citizens of the United States insofar as may be practicable, and . . . composed of the best-equipped, safest, and most suitable

> types of vessels, constructed in the United States and manned with a trained and efficient citizen personnel. It is hereby declared to be the policy of the United States to foster the development and encourage the maintenance of such a merchant marine.

Merchant Marine Act of 1936, ch. 858, § 1, 41 Stat. 1985, 1985 (June 29, 1936). Today these objectives are codified at 46 U.S.C. § 50101.

These same objectives are evident in the Congressional record for the Navigation Act of 1817. *See, e.g.*, 30 ANNALS OF CONG. 776–78 (1874) (urging adoption of cabotage laws similar to Britian's, which increased shipping, extended foreign trade, and strengthened its navy); *id.,* at 774 (discussing how strong "navigation" laws, including cabotage laws, support domestic commerce, provide for transportation when the vessels of foreign nations are at war, and provide "a resource of defence"); *id.* ("'Our navigation involves still higher considerations. As a branch of industry it is invaluable, but as a resource of defence, essential.'") (quoting an earlier 1793 report from "Mr. [Thomas] Jefferson, then Secretary of State").

The fundamental objectives of the nation's cabotage laws, and the means of achieving those objectives by reserving transportation of merchandise between U.S. points to U.S. vessels, have remained largely constant for over 200 years. Congress has repeatedly reaffirmed its commitment to these principles. *See, e.g.*, H.R. CON. RES. 65 (April 23, 1997) ("[S]ection 27 of the Merchant Marine Act, 1920, popularly known as the Jones Act, and related statutes are critically important components of our Nation's economic and military security and should be fully and strongly supported"); Carl Levin & Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113-291, § 3503, 128 Stat. 3292, 3904–3905 (2014) ("It is the sense of Congress that United States coastwise trade laws promote a strong domestic trade maritime industry, which supports the national security and economic vitality of the United States and the efficient operation of the United States transportation system."); William

M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 3522, 134 Stat. 3388, 4422 (2021) ("a strong commercial maritime industry makes the United States more secure").  Today, because the Jones Act requires that domestic shipping occur on U.S.-built, U.S.-owned, and U.S.-crewed vessels, the United States has a merchant marine fleet that Congress desires.  This fleet remains vital for U.S. national security. Jones Act vessels are available to assist the U.S. Armed Forces, and mariners who work on Jones Act vessels crew U.S. Armed Forces sealift operations, during war and in times of humanitarian crises.

## C.    Kōloa Rum Company

Kōloa Rum began producing rum 16 years ago in 2009 on the Hawaiian island of Kauai. First Am. Compl. ("FAC"), Dkt. No. 13 at ¶ 2.[3]  Today Kōloa Rum sells its "award-winning" and "world-class premium rum" to customers in "36 mainland states and several foreign countries." *Id*. at ¶¶ 3, 5, 13.  Kōloa Rum "employs around 45 people, and it continues to grow."  *Id*. at ¶ 4. Because its distillery is located on a remote island in the middle of the Pacific Ocean, Kōloa Rum "relies heavily on maritime shipping to and from the mainland United States."  *Id*. at ¶ 52.  Kōloa Rum contends that it is "crippled" because the Jones Act "impose[s]" "disproportionate burdens on its ability to operate compared to mainland states."  *Id*. at ¶ 66.  Kōloa Rum further contends that the "Jones Act deprives Kōloa Rum of its right to earn a living without due process of law." *Id*. at ¶ 82.

---

[3] Kauai is located approximately 100 miles northwest of the capital Honolulu on the island of Oahu.

## D.    Procedural History

Kōloa Rum initiated this action against Defendants Kristi Noem and Pete R. Flores in their official capacities on February 25, 2025. Dkt. No. 1.[4]  Its original complaint alleged only that the Jones Act violated the Port Preference Clause.  *Id.* at 12–13.  Kōloa Rum amended its complaint a month later, correcting some misstatements of law about the Jones Act and adding a due process claim.  *See* Dkt. No. 13 at 10–12, 14.  On May 22, 2025, AMP and MTD jointly moved to intervene in support of Defendants under Federal Rule of Civil Procedure 24.  Dkt. No. 31; *see also* Dkt. No. 31-1.  The Court granted AMP and MTD's motion and ordered them to "comply with the same deadlines and Court Orders as Defendants." Dkt. No. 36 at 3, 5.

## III.    LEGAL STANDARD

## A.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss an action for lack of subject-matter jurisdiction, including for lack of Article III standing.  *See Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*, 313 F. Supp. 3d 285, 294 (D.D.C. 2018) (citing *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)).  To survive a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing that the court has jurisdiction." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  The Court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  *Id.*  In resolving a Rule 12(b)(1) motion, the Court must therefore give the plaintiff's factual allegations "'closer scrutiny' . . . than in resolving a 12(b)(6) motion for failure to state a

---

[4] In the time since Kōloa Rum filed its Amended Complaint, the Senate confirmed Rodney S. Scott as Commissioner of U.S. Customs and Border Patrol.  AMP and MTD have modified the caption of this motion accordingly.

claim." *Id.* at 13–14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 1350 (2d ed. 1987)).

**B.    Rule 12(b)(6)**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Sickle v. Torres Adv. Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018).   To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)); *Shanks v. Int'l Union of Bricklayers & All. Craftworkers*, 134 F.4th 585, 590 (D.C. Cir. 2025). "Facial plausibility exists when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Shanks*, 134 F.4th at 590 (quoting *Iqbal*, 556 U.S. at 678).   The Court may also dismiss a complaint due to a "lack of a cognizable legal theory." *Jah Kente Int'l, Inc. v. Indus. Bank of Wash., D.C.*, No. 22-cv-00848 (APM), 2023 WL 11056262, at *1 (D.D.C. June 26, 2023) (citation omitted).

At this stage, the Court must accept the plaintiff's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).   However, the Court "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam).   In other words, while "detailed factual allegations" are not necessary at this stage to withstand a Rule 12(b)(6) motion to dismiss, "a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Busby v. Cap. One, N.A.*, 932 F. Supp. 2d 114, 133–34 (D.D.C. 2013) (quoting *Twombly*, 550 U.S. at 555).   "Mere conclusory statements" of misconduct are not

enough to make out a cause of action against a defendant. *Iqbal*, 556 U.S. at 678 (noting that a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

When deciding whether to grant a motion to dismiss, the Court generally "may not consider materials outside the pleadings." *Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 575 F. Supp. 3d 84, 88 (D.D.C. 2021). However, the Court may consider material submitted as part of the complaint or relied upon in the complaint, *see id.*, as well as material subject to judicial notice, *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).[5]

## IV.    ARGUMENT

The Court should dismiss Kōloa Rum's Amended Complaint with prejudice on both justiciability and substantive grounds.  First, as a threshold matter, Kōloa Rum's claims are time-barred under 28 U.S.C. § 2401(a). Second, Kōloa Rum does not have Article III standing to challenge the Jones Act. Third, Kōloa Rum's Port Preference Clause challenge to the Jones Act is meritless because the act has an express, non-discriminatory purpose that satisfies the Port Preference Clause under two centuries of jurisprudence.  Finally, Kōloa Rum fails to articulate any violation of its Due Process rights, including any fundamental rights that are implicated by the Jones Act.

---

[5] As required by Federal Rule of Civil Procedure 24(c), Intervenor-Defendants attached a proposed pleading to the intervention motion but noted that they intended to file a Rule 12 motion in lieu of answer.  *See* Memorandum in Support of AMP and MTD's Motion to Intervene, Dkt. No. 31-3 at 7 & n 2.  This court can therefore treat this motion as filed under Rule 12(b), but treatment under Rule 12(c) is alternatively possible and would, in any event, similarly lead to dismissal of the Complaint.

A.    **Kōloa Rum's Claims are Time-Barred Under 28 U.S.C. § 2401(a).**

Kōloa Rum relies on the Declaratory Judgment Act, 28 U.S.C. § 2201, to bring a facial challenge to the Jones Act—a law that is over 100 years old and under which Kōloa Rum itself has been operating for nearly two decades.  This suit is time-barred.

Under 28 U.S.C. § 2401(a), the default statute of limitations for lawsuits against the United States is six years after the right to action first accrues.  By its plain text, this statute of limitations applies (with limited exceptions not applicable here) to all civil actions:

> Except as provided by chapter 71 of title 41 [involving certain contract disputes], every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action <u>first accrues</u>.

28 U.S.C. § 2401(a) (emphasis added); *see Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 810 (2024) ("When Congress revised and recodified the Judicial Code in 1948, it converted the Little Tucker Act's statute of limitations into a general statute of limitations for all suits against the Government—replacing 'under this paragraph' with 'every civil action commenced against the United States.'").[6]  A "civil action" under Section 2401(a) includes declaratory judgment actions and constitutional challenges like Kōloa Rum's here.  *See, e.g., Rempfer v. U.S. Dep't of Air Force Bd. of Corr. of Military Records*, 538 F. Supp. 2d 200, 206 (D.D.C. 2008) ("The limitation period applies to claims brought under . . . the Declaratory Judgment Act."); *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 36 (D.D.C. 2018) ("[B]oth APA and constitutional challenges are subject to § 2401(a)[.]" (quoting, *inter alia*, *Impro Prods., Inc. v. Block*, 722 F.2d 845, 851 n.12 (D.C. Cir. 1983))).

---

[6] *Corner Post* involved the question of when the statute of limitations in § 2401(a) begins to run for a claim brought under the Administrative Procedure Act.  603 U.S. at 806.  Kōloa Rum brings no such claim.

Kōloa Rum's Amended Complaint is therefore squarely precluded by this six-year limitations period, as it was brought well over six years after its right of action "first accrue[d]." 28 U.S.C. § 2401(a).  Kōloa Rum filed this action in 2025—105 years after Congress enacted the Jones Act and approximately 16 years after Kōloa Rum first became allegedly affected by the Jones Act's provisions.  *See* FAC, Dkt. No. 13 at ¶ 2 (alleging that Kōloa Rum began operations in 2009).  Kōloa Rum is no newcomer to the industry: it has, by its own admission, been successfully and continuously operating for well over sixteen years under the same Jones Act regime that it now seeks to challenge. *Id.* at ¶ 3 ("For nearly two decades, Kōloa Rum Company has bottled the spirit of Hawai'i[.]").[7]  Kōloa Rum's Amended Complaint makes no attempt to address why Kōloa Rum would be entitled to bring this challenge within the now-expired statute of limitations.

To be clear, there may be scenarios where a dismissal under 28 U.S.C. § 2401(a) would not be appropriate, including when a statutory challenge is raised as a defense to a specific enforcement action taken against the plaintiff or where a plaintiff challenges a new regulatory action issued by an agency.  But these are not the sorts of claims that Kōloa Rum brings here. Instead, the company simply seeks to unearth, on its own whim, settled matters that could have been raised long ago.  Kōloa Rum's challenge to the Jones Act is too late.  The Court should therefore dismiss the Amended Complaint with prejudice.

---

[7] With due respect for the traditional spelling of the state's name in the Hawaiian language, AMP and MTD will use the official spelling of the state's name (without the okina) when referring to the State of Hawaii for the sake of consistency and in accordance with the Hawaii Admission Act, Pub. L. 86-3 § 2, 73 Stat. 4, 4 (Mar. 18, 1959); *see also Akina v. Hawaii*, 141 F. Supp. 3d 1106, 1111 (D. Haw. 2015) (omitting the okina "for uniformity and to avoid compatibility issues between properly-used marks and electronic/internet publication"); *Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res.*, 363 P.3d 224, 248 n.2 (Haw. 2015) (Pollack, J., concurring) (same).

**B.      Kōloa Rum Does Not Have Standing to Bring Its Constitutional Challenge to the Jones Act.**

Kōloa Rum also lacks Article III standing to bring its constitutional challenge to the Jones Act. To avoid duplicative briefing, *see* Dkt. No. 36 at 4, AMP and MTD adopt and incorporate by reference the standing arguments asserted by Matson Navigation Company's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).

**C.      Kōloa Rum Fails to State a Claim Under the Port Preference Clause.**

The Court can dismiss Kōloa Rum's complaint based solely on the threshold defects addressed above and stop there.  Kōloa Rum's claim under the Port Preference Clause is also defective for several other reasons that require dismissal with prejudice.

*1.      The Jones Act is a facially neutral law and therefore does not violate the Port Preference Clause.*

Kōloa Rum's claim under the Port Preference Clause fails because Kōloa Rum concedes that the Jones Act has an "express purpose," FAC, Dkt. No. 13 at ¶ 25, that is non-discriminatory. *Id*. at ¶ 24 (alleging that the Jones Act has "the stated goals of ensuring that the United States had a strong and self-sufficient maritime industry, protecting national security interests by maintaining a fleet available for military use in times of war, and supporting American shipbuilding and maritime labor"); *see also* 46 U.S.C. § 50101.  Neither the Act's "stated goals" nor its substantive requirements reference Hawaii or facially discriminate against Hawaii or any state in any way. *See* 46 U.S.C. §§ 50101, 55102(b).  As such, the Jones Act does not violate the Port Preference Clause as a matter of law.

The Port Preference Clause states, in full, that:

No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another: nor shall Vessels bound to, or from, one State, be obliged to enter, clear, or pay Duties in another.

U.S. Const. art. I, § 9, cl. 6. This clause "was designed to prevent the federal government from providing any regulatory benefits to ports in one state over another." *Kansas v. United States*, 16 F.3d 436, 439 (D.C. Cir. 1994); *see also Amoco Oil Co. v. United States*, 23 C.I.T. 613, 620 (1999) (noting that the Port Preference Clause "was intended to protect states, as opposed to individual ports or regions, from Congressional regulation that intentionally discriminates against one state's ports to the advantage of another's"), *aff'd*, 234 F.3d 1374 (Fed. Cir. 2000).

The clause originated out of a concern by Maryland that a larger state like Virginia with more congressional representatives could push legislation to compel ships sailing into and out of the Chesapeake Bay to stop or load cargo at Norfolk or some other Virginia port, to the detriment of Maryland ports. *See State of Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 434 (1855) (describing history of the clause); *Kansas*, 16 F.3d at 439–40 (citing 2 Records of the Fed. Convention 417 (Max Farrand ed. 1966)); *Thomson Multimedia Inc. v. United States*, 340 F.3d 1355, 1364 (Fed. Cir. 2003) (noting that Maryland's delegate, Luther Martin, originally proposed the Port Preference Clause but "later opposed the Clause because it dealt only with express preferences and left states to bear the effects of other rules" (citing Luther Martin, Genuine Information (1788), reprinted in Philip B. Kurland & Ralph Lerner, 3 The Founders' Constitution 372 (1987))). The Port Preference Clause therefore "gave small states protection against *deliberate discrimination* against them by other, more powerful states." *City of Houston v. F.A.A.*, 679 F.2d 1184, 1198 (5th Cir. 1982) (emphasis added).

Pursuant to this original purpose, for nearly two centuries, "courts have understood that only explicit discrimination violates the Port Preference Clause." *City of Milwaukee v. Yeutter*, 877 F.2d 540, 546 (7th Cir. 1989); *see also Amoco Oil*, 23 C.I.T. at 620 ("A violation of the Port Preference Clause requires that an Act *explicitly* discriminate against the ports of a particular

state." (emphasis added)); *Kansas*, 16 F.3d at 439 (observing that the Port Preference Clause "has never been relied on by the federal judiciary to hold an act of Congress unconstitutional").

These courts recognized that Congress may enact laws that "greatly benefit particular ports and which incidentally result to the disadvantage of other ports in the same or neighboring states." *Amoco Oil*, 23 C.I.T. at 621 (quoting *La. Pub. Serv. Comm'n v. Tex. & New Orleans Ry.*, 284 U.S. 125, 131 (1931)). However, absent explicit discrimination, such laws do not violate the Port Preference Clause. "The ultimate question . . . is not whether the Act results in a preference, but whether Congress explicitly discriminated against a particular state." *Id*.

The U.S. Supreme Court first recognized this principle in the 1850s:

> There are many acts of congress passed in the exercise of [its] power to regulate commerce, providing for a special advantage to the port or ports of one State, and which very advant[a]ge may incidentally operate to the prejudice of the ports in a neighboring State, which have never been supposed to conflict with [the Port Preference Clause's] limitation upon its power. . . . It will not do to say that the exercise of an admitted power of congress conferred by the constitution is to be withheld, if it appears, or can be shown, that the effect and operation of the law may incidentally extend beyond the limitation of the power.

*Wheeling*, 59 U.S. at 433–34.

Over the next century, the Supreme Court cited *Wheeling* repeatedly to underscore that incidental preference is insufficient, and that proving a Port Preference Clause violation requires explicit and intentional discrimination against a particular state. *See*, *e.g.*, *South Carolina v. Georgia*, 93 U.S. 4, 13 (1876) (noting that the Port Preference Clause "does not extend to acts which may directly benefit the ports of one State and only incidentally injuriously affect those of another"); *Armour Packing Co. v. United States*, 209 U.S. 56 (1908) ("The fact that regulation, within the acknowledged power of Congress to enact, may affect the ports of one state more than those of another, cannot be construed as a violation of [the Port Preference Clause]."); *La. Pub. Serv. Comm'n*, 284 U.S. at 131 ("Congress, acting under the commerce clause, causes many things

to be done that greatly benefit particular ports and which incidentally result to the disadvantage of other ports in the same or neighboring states."); *Alab. Great S. Ry. Co. v. United States*, 340 U.S. 216, 229 (1951) (quoting *Louisiana Public Service Commission* and concluding that any preference given to the port of New Orleans over certain ports in Georgia and Texas were "the result of geography and not of any action of the [Interstate Commerce Commission]").  The D.C. Circuit invoked this principle in recent decades, noting that the Port Preference Clause "does not bar 'incidental advantages that might possibly result from the legislation of Congress upon other subjects connected with commerce, and confessedly within its powers."  *Kansas*, 16 F.3d at 440 (quoting *Wheeling*, 59 U.S. at 439).

Accordingly, the Port Preference Clause does not prohibit a "facially neutral," *City of Houston*, 679 F.2d at 1197, or "facially nondiscriminatory law that has incidental, disparate effects on ports of one or more states," *Thomson Multimedia*, 340 F.3d at 1364 (citing cases).  A government action does not violate the Port Preference Clause "even if [it] result[s] in some detriment to the port of a state, where [it] occur[s] (i) as an incident to some otherwise legitimate government act regulating commerce or (ii) more as a result of the accident of geography than from an intentional government preference." *City of Houston*, 679 F.2d at 1197; *accord Yeutter*, 877 F.2d at 545 ("Disparate consequences of neutral rules do not violate the Port Preference Clause.").

The Jones Act is a "facially neutral" and "facially nondiscriminatory" law.  The statute is equally applicable to all states and merely imposes ownership and other restrictions on vessels transporting merchandise "between points in the United States to which the coastwise laws apply." 46 U.S.C. § 55102(b).  The "coastwise laws generally apply to all points within the United States' territorial sea and internal waters," which U.S. Customs and Border Patrol "define[s] as the belt,

three nautical miles wide, seaward of the territorial sea baseline, and to points located in internal waters, landward of the territorial sea baseline." *See, e.g.*, Customs Letter Ruling No. HQ H331609 (Re: Coastwise Laws; 46 U.S.C. § 55103; 46 U.S.C. § 55102; 19 C.F.R. § 4.1), 2024 WL 5146641, at *2 (CBP June 7, 2024) (citing 33 C.F.R. § 2.22(a)(2)). Nothing in the statutory text of the Jones Act indicates an intent to disadvantage any state over another, or for the 48 contiguous states to receive some preferential treatment over non-contiguous states. Accordingly, because the Jones Act is facially neutral, it does not violate the Port Preference Clause.

    2.    *Kōloa Rum cannot state a Port Preference Clause claim through alleged discriminatory effect and purpose.*

Kōloa Rum claims that the Jones Act discriminates against Hawaiian ports in "purpose and effect." FAC, Dkt. No. 13 at ¶ 76. As discussed above, this allegation fails to state a cognizable claim, as it is well-established that a violation of the Port Preference Clause requires explicit discrimination, not merely incidental injurious effects. But even taken on their terms, Kōloa Rum's allegations fall flat.

*First,* the scant allegations in Kōloa Rum's complaint, which vaguely allege that Senator Jones prioritized American shipping interests over those of Hawaii—then a territory, not a state, *id.* at ¶¶ 20–25, are irrelevant and cannot overcome the statute's plain language and express non-discriminatory purpose.

The alleged personal motivations of Senator Jones, *id.* at ¶¶ 20–22, do not reflect congressional intent, as such sentiments "reflect at best the understanding of individual [c]ongressmen." *Zuber v. Allen*, 396 U.S. 168, 186 (1969); *see, e.g.*, *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 306 (2017) ("What Congress ultimately agrees on is the text that it enacts, not the preferences expressed by certain legislators."); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998) ("[I]t is ultimately the provisions of our laws rather than the principal concerns

of our legislators by which we are governed."); *In re Terrorist Attacks on Sept. 11, 2001*, 657 F. Supp. 3d 311, 329 n.9 (S.D.N.Y. 2023) (rejecting judgment creditors' "misplaced emphasis on statements of individual members of Congress as evidence of congressional intent" and "declin[ing] to credit the floor statements of an individual senator . . . as persuasive evidence of congressional intent"). The alleged "testimony from shipping companies" and the territorial governor of Hawaii, FAC, Dkt. No. 13 at ¶ 23, is even more attenuated.

But even if the cited motivations of Senator Jones were relevant to contemporary congressional purpose, they would not run afoul of the Port Preference Clause: Congress could not have violated the Port Preference Clause as to Hawaii when it passed the Jones Act in 1920 because Hawaii was not a state at that time. *See id.* at ¶ 7 ("the Jones Act . . . was adopted before Hawaii was a state"); *see also* Hawaii Admission Act, Pub. L. No. 86-3, 73 Stat. 4 (Mar. 18, 1959). The Port Preference Clause expressly proscribes a "preference . . . to the Ports of one State over those of another." U.S. Const., art. I, § 9, cl. 6. By its terms the clause applies to "States," and does not apply to U.S. territories like Hawaii was in 1920.

In *Territory of Alaska v. Troy*, 258 U.S. 101 (1922), the Supreme Court rejected an argument by the then-territory of Alaska that the Jones Act violated the Port Preference Clause by discriminating against ports of Alaska. The Jones Act—as codified at the time—contained a provision that expressly excluded Alaska from an exception to the Act's requirements. *Id.* at 110.[8] The court assumed without deciding that the "act does give preference to ports of the states over those of the territory." *Id.* But the court rejected the argument that the word "State" in the Port Preference Clause extends to territories. *Id.* at 111 ("This word appears very often in the

---

[8] Congress later amended the Jones Act when Alaska joined the Union to remove the exclusion. *See* Alaska Statehood Act, Pub. L. No. 85-508, § 27(a), 72 Stat. 339, 351 (July 7, 1958).

Constitution and as generally used therein it clearly excludes a 'territory.'"). Thus, Congress could not have discriminated against Hawaii in 1920 in a manner offensive to the Port Preference Clause.

When Hawaii joined the Union, it agreed to be bound by all existing laws of the United States. *See* Hawaii Admission Act, Pub. L. No. 86-3, 73 Stat. 4, 11 (Mar. 18, 1959) ("[T]he laws of the United States shall have the same force and effect within the said State as elsewhere within the United States[.]"). Kōloa Rum's Amended Complaint pleads no evidence that the State of Hawaii believed the Jones Act unconstitutionally discriminated against its ports at the time of its admission to the Union. *See generally* FAC, Dkt. No. 13.

In any event, the statute's plain language controls this question. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 132 n. 9 (2018) ("Even for '[t]hose of us who make use of legislative history,' 'ambiguous legislative history' cannot trump 'clear statutory language.'") (citation omitted); *United States v. Lanier*, 520 U.S. 259, 267 (1997) ("The legislative intent of Congress is to be derived from the language and structure of the statute itself, if possible, not from the assertions of codifiers directly at odds with clear statutory language."). The plain text of the Jones Act makes clear that the legislative purpose was nondiscriminatory—it was to ensure that the United States developed and maintained a merchant marine, available for the nation's defense and commerce. *See* 46 U.S.C. § 50101. This codified purpose prevails over any ad hoc statements by congressional members.

Kōloa Rum's allegation that the Jones Act has a discriminatory purpose is also undercut and rendered implausible by the nation's long history of cabotage laws that predated the Jones Act by over 100 years. *See supra* Section II.A. Indeed, Hawaii was a separate country altogether when Congress adopted the Navigation Act of 1817, the predecessor to the Jones Act. *See* Joint

Resolution to Provide for Annexing the Hawaiian Islands to the United States (July 7, 1898).[9]  The

long history of substantially identical U.S. cabotage laws demonstrates that there are legitimate

objectives underlying these laws that have nothing at all to do with Sen. Jones allegedly seeking

to discriminate against Hawaii in 1920.[10]

*Second*, Kōloa Rum's allegations about the purported discriminatory *effects* of the Jones

Act are also irrelevant and without support.  As the body of case law interpreting the Port

Preference Clause makes clear, incidental discriminatory effects from a facially neutral law are

not actionable.  *See, e.g.*, *Wheeling*, 59 U.S. at 433–34; *City of Houston*, 679 F.2d at 1197; *Yeutter*,

877 F.2d at 545.

Moreover, Kōloa Rum fails to provide anything other than conclusory allegations in

support of its claim that the Jones Act has a discriminatory effect.  To the contrary, any inequitable

effects here are the "result of the accident of geography" rather "than from an intentional

government preference."  *City of Houston*, 679 F.2d at 1197.  Kōloa Rum elected to produce rum

on a remote island in the middle of the ocean where transportation costs would necessarily be

higher relative to other companies not located in remote locations.[11]  Indeed, Kōloa Rum's own

allegations reinforce this point, acknowledging that even for its international sales—which are not

---

[9] At the time of Hawaii's annexation, Congress had already restricted coastwide trade to U.S.-flagged vessels.  *See* Act of Feb. 17, 1898, ch. 25, § 5, 30 Stat. 248, 248.  This further undercuts any suggestion that the Jones Act cabotage provisions—which are effectively the same as predecessor cabotage laws—intentionally discriminate against Hawaii ports.

[10] Indeed, Senator Jones himself stated that his bill "do[es] not deal in general . . . with the coastwise laws.  They are left just as they are; we have not attempted to interfere with them."  59 CONG. REC. 6863 (May 11, 1920).

[11] Moreover, Kōloa Rum elected to operate in a highly regulated liquor industry that is governed by a "byzantine patchwork" of federal and state alcohol regulations. *Matter of Gabriel Inv. Grp., Inc.*, 24 F.4th 503, 503 (5th Cir. 2022). The burdens associated with these regulations undoubtedly affect Kōloa Rum's ability to "enter new markets on the mainland." FAC, Dkt. No. 13 at ¶ 68.

controlled by the Jones Act[12]—"Kōloa Rum Company must first ship goods to the mainland United States due to a lack of international routes passing through Hawaiʻi ports."  *See* FAC, Dkt. No. 13 at ¶ 13; *see also id*. at ¶ 56 ("Due to a lack of international shipping routes from Hawaiʻi, Kōloa Rum Company must often ship goods to Los Angeles before they are shipped internationally.").  Any purported inequities resulting from the Jones Act are not imposed by the law, but rather incidental to the law and a function of Kōloa Rum's own business decisions.  Accordingly, Kōloa Rum has failed to allege facts that would support a claim of discriminatory effects, even if such a claim were cognizable (which it is not).

Because the Jones Act is a facially neutral and facially non-discriminatory law, and because Kōloa Rum provides no relevant, plausible allegations that Congress passed the Jones Act in order to discriminate against Hawaiian ports, Kōloa Rum has failed to state a claim under the Port Preference Clause. Accordingly, the Court should dismiss Kōloa Rum's First Cause of Action with prejudice.

## D.    **Kōloa Rum Fails to State a Claim Under the Due Process Clause.**

Kōloa Rum also raises a substantive due process claim.  FAC, Dkt. No. 13 at 14–15.  The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.  Kōloa Rum contends that the federal government's enforcement of the Jones Act "deprives Kōloa Rum Company of liberty without due process of law in violation of the Fifth Amendment to the U.S. Constitution" because it deprives Kōloa Rum "of its right to earn a living without due process of law." FAC, Dkt. No. 13 at ¶¶ 10, 82.  Kōloa Rum's claim is without merit.

---

[12] The Jones Act does not prevent foreign-flag vessels from transporting cargo between Hawaii and international ports.  Kōloa Rum has not plausibly alleged why the Jones Act, as opposed to Hawaii's remote geographic location, hampers the availability of foreign-flag shipping options to international destinations that are not governed by the Jones Act.

 *1.  Kōloa Rum has not alleged a fundamental liberty interest.*

 Kōloa Rum's own allegations directly conflict with its assertion that the Jones Act deprives it "of its right to earn a living."  *Id.*  Kōloa Rum boasts of its success in producing "award-winning" and "world-class premium rum" that is sold across the globe.  *See* FAC, Dkt. No. 13 at ¶¶ 3–5, 13 ("For nearly two decades, Kōloa Rum Company has bottled the spirit of Hawaiʻi, crafting world-class premium rum . . . Kōloa Rum Company employs around 45 people, and it continues to grow."), 4 ("Kōloa Rum Company ships its spirits to 36 mainland states and several foreign countries.").

 Kōloa Rum's due process claim therefore appears to be based on an alleged liberty interest in earning increased profits in a preferred industry.  *See id.* at ¶ 9 ("This counterproductive and protectionist law places a quintessentially American company at a severe disadvantage compared to other businesses. . . . Seeking a level playing field, Kōloa Rum Company challenges the enforcement of the Jones Act[.]").

 This is not a fundamental liberty interest that is protected by the Due Process Clause.  *See Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) (noting that any right to pursue one's field of private employment is "subject to reasonable government regulation"); *see also Dittman v. California*, 191 F.3d 1020, 1031 n.5 (9th Cir. 1999) (noting that the Supreme Court has "never held that the 'right' to pursue a profession is a fundamental right").  Indeed, the Supreme Court determined that the Jones Act did not violate a party's due process rights even where its enforcement was alleged to threaten the "loss of its business." *Cent. Vt. Transp. Co. v. Durning*, 294 U.S. 33, 41 (1935) (rejecting due process challenge to the Jones Act by foreign-owned steamship line despite company's alleged "loss of [] business" from Jones Act enforcement).

 Furthermore, as the Ninth Circuit recognized in a similarly meritless challenge to the Jones Act, any disproportionate discriminatory effect on Hawaiian commerce due to the Jones Act "does

not support a viable cause of action, whether framed as a matter of due process or as an attempt to enforce a supposed structural limitation on federal power under the Commerce Clause." *Novak*, 795 F.3d at 1022; *see also Am. Trucking Ass'ns v. United States*, 344 U.S. 298, 322 & n. 20 (1953) (explaining that the Due Process Clause is not violated even where a regulatory scheme causes some businesses to fail); *Sec'y of Agric. v. Cent. Roig Refin. Co.*, 338 U.S. 604, 616–19 (1950) (explaining that legislation did not offend the Due Process Clause even where it set different quotas for sugar from refiners in island territories than from refiners on the mainland, thereby creating inequalities).

This is not a situation where a plaintiff is alleging that Congress enacted a law that makes it impossible for that plaintiff to make a living or pursue a particular profession. *See, e.g.*, *Traux v. Raich*, 239 U.S. 33, 41 (1915) (invaliding on equal protection grounds a state law requiring companies to employ 80 percent U.S. citizens). Kōloa Rum has been successfully operating its business for nearly two decades now. Its desire for increased profits in a preferred regulatory environment does not implicate a fundamental liberty interest under the Due Process Clause.

2.   *The Jones Act is substantially related to its intended national defense and interstate commerce purposes.*

Because the Jones Act does not infringe upon any cognizable fundamental right, it is subject to rational basis review. *See Washington v. Glucksberg*, 521 U.S. 702, 722 (1997) (noting that "a challenged state action [must] implicate a fundamental right" to avoid rational basis review); *Abigail All. for Better Access to Dev. Drugs v. von Eschenbach*, 495 F.3d 695, 712 (D.C. Cir. 2007).[13] "The rational basis test requires that [Kōloa Rum] prove that the government's

---

[13] Citing footnote four of *United States v. Carolene Products*, Kōloa Rum suggests that Hawaii's lack of meaningful access to the political process at the time the Jones Act was passed due to its non-state status "necessitates a heightened level of judicial scrutiny." FAC, Dkt. No. 13 at ¶ 84. Footnote four, however, suggests that there may be legislation that restricts the political processes that would be expected to bring about repeal of undesirable legislation, not legislation that is

restrictions bear no rational relationship to a legitimate state interest." *Abigail All.*, 495 F.3d at

712. Under rational basis review, a statute is presumed to be valid and constitutional. *See Sanchez*

*v. Off. of State Superintendent of Educ.*, 513 F. Supp. 3d 101, 113 (D.D.C. 2021).

    The Jones Act readily survives rational basis review.[14] As discussed above, Congress

determined in 1920 that it was "necessary for the national defense and for the proper growth of its

foreign and domestic commerce" that the United States "have a merchant marine of the best

equipped and most suitable types of vessels sufficient to carry the greater portion of its commerce

and serve as a naval or military auxiliary in time of war or national emergency, ultimately to be

owned and operated privately by citizens of the United States[.]" Merchant Marine Act of 1920,

ch. 250, § 1, 41 Stat. 988, 988 (June 5, 1920). Congress reaffirmed that policy 16 years later by

enacting the Merchant Marine Act of 1936, ch. 858, 41 Stat. 1985 (June 29, 1936). Courts have

also repeatedly recognized the Jones Act as a proper exercise of Congress's commerce power and

therefore not a violation of the Due Process Clause. *See, e.g.*, *Novak*, 795 F.3d at 1022 (finding

that plaintiffs failed to state a due process claim because any incidental discriminatory effects

experienced by Hawaii as a result of the Jones Act "do[] not support a viable cause of action,

whether framed as a matter of due process or as an attempt to enforce a supposed structural

limitation on federal power under the Commerce Clause"); *Cent. Vt. Transp. Co.*, 294 U.S. at 41

(rejecting claim by steamship line that the Jones Act violated the due process clause because the

---

brought about by allegedly restricted political processes. *See United States v. Carolene Prods.*,
304 U.S. 144, 152 n.4 (1938). The statutory language of the Jones Act does not in any way restrict
any political processes available to Hawaii or any other state. *See* 46 U.S.C. § 55102(b). Kōloa
Rum's claim that the Jones Act should be subject to be heightened scrutiny therefore lacks merit.

[14] The Jones Act would also satisfy heightened scrutiny because it is narrowly tailored to apply
only to certain vessels engaged in domestic maritime commerce, and it serves a compelling
government interest by preserving a U.S.-owned and operated merchant marine fleet essential to
national defense and military readiness. This Court need not reach this issue, however, given that
the Kōloa Rum fails to state a substantive due process claim.

Jones Act is "no more arbitrary, burdensome, or unreasonable" than numerous regulations of interstate commerce that regulate transportation).

Kōloa Rum challenges Congress's wisdom, alleging that the Jones Act "demonstrably undermines the domestic shipping industry and American businesses involved in interstate commerce," and that "[t]here is no evidence demonstrating that the Jones Act has furthered any of its purported goals." FAC, Dkt. No. 13 at ¶ 86. These complaints are properly directed at Congress, not this Court. Even if Kōloa Rum's contentions were accurate, they are immaterial here, as all that is needed to survive rational basis review is a "plausible reason for the government action." *Sanchez*, 513 F. Supp. 3d at 112; *see also FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) ("[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." (citations omitted)). This is particularly true for laws that Congress enacts "for the national defense and for the proper growth of its foreign and domestic commerce." Merchant Marine Act of 1920, ch. 250, § 1, 41 Stat. 988, 988 (June 5, 1920); *see Rostker v. Goldberg*, 453 U.S. 57, 64 (1981) (noting that there is "no other area" where it accords Congress "greater deference" than its "authority over national defense"); *Hettinga*, 677 F.3d at 478 ("We grant statutes involving economic policy a 'strong presumption of validity.'" (quoting *Beach Commc'ns*, 508 U.S. at 314).

Where, as here, rational basis review applies and "there are plausible reasons for Congress' action, [a court's] inquiry is at an end." *Hettinga*, 677 F.3d at 478 (quoting *Beach Commc'ns*, 508 U.S. at 313–14). Kōloa Rum's due process claim fails as a matter of law.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Kōloa Rum's First Amended Complaint with prejudice.

Dated: July 30, 2025

K&L GATES LLP

By: */s/ J. Timothy Hobbs*
  J. Timothy Hobbs, Bar No. 976470
501 Commerce Street, Suite 1500
Nashville, TN 37203
Tim.Hobbs@klgates.com
Telephone:      +1 615 780 6700
Facsimile:      +1 615 780 6799

Varu Chilakamarri, Bar. No. 90023656
1601 K Street NW
Washington, DC 20006
Varu.Chilakamarri@klgates.com
Telephone:      +1 202 778 9165
Facsimile:      +1 202 778 9100

David Wang (*pro hac vice* pending)
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
David.Wang@klgates.com
Telephone:      +1 206 370 6554
Facsimile:      +1 206 623 7022

*Attorneys for Intervenor-Defendants*
*American Maritime Partnership and Maritime*
*Trades Department of the AFL-CIO*