IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KŌLOA RUM COMPANY,

              *Plaintiff*,

      v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security; and
RODNEY S. SCOTT, in his official capacity
as Commissioner of U.S. Customs and Border
Control,

              *Defendants*,

MATSON NAVIGATION COMPANY, INC.;
AMERICAN MARITIME PARTNERSHIP and
MARITIME TRADES DEPARTMENT OF
THE AFL-CIO,

              *Intervenor-Defendants*.

Civil Action No. 1:25-cv-00554-JEB

**INTERVENOR-DEFENDANTS AMERICAN MARITIME PARTNERSHIP AND
MARITIME TRADES DEPARTMENT OF THE AFL-CIO'S REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS KŌLOA RUM COMPANY'S FIRST AMENDED
COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ............................................................................................... 1

II.     ARGUMENT ...................................................................................................... 1

    A.      Kōloa Rum's Claims are Time-Barred and Cannot Be Saved by the Continuing
Violation Doctrine. ............................................................................................... 1

        1.      The limitations period runs from the first accrual of a plaintiff's claim. ...................... 1

        2.      The Jones Act does not constitute a continuing or repeating violation. ......................... 3

    B.      Kōloa Rum Lacks Standing to Bring Its Constitutional Challenge to the Jones Act. ........ 6

    C.      Kōloa Rum Fails to State a Claim Under the Port Preference Clause. ............................ 6

        1.      No federal court has adopted Kōloa Rum's interpretation of the Port Preference
Clause. ................................................................................................................ 7

        2.      Kōloa Rum fails its own test. ............................................................................ 9

    D.      Kōloa Rum Has Failed to State a Claim Under the Due Process Clause. ...................... 12

        1.      Kōloa Rum concedes that it has not alleged a fundamental liberty interest warranting
heightened scrutiny. ........................................................................................... 12

        2.      The Jones Act survives rational basis review. ...................................................... 14

III.    CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Appalachian Voices v. McCarthy*,
   989 F. Supp. 2d 30 (D.D.C. 2013) ............................................................................. 5, 6

*Armour Packing Co. v. United States*,
   209 U.S. 56 (1908) ....................................................................................................... 7, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................... 11, 12

*Cent. Vt. Transp. Co. v. Durning*,
   294 U.S. 33 (1935) ......................................................................................................... 15

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010) ....................................................................................................... 17

*City of Milwaukee v. Yeutter*,
   877 F.2d 540 (7th Cir. 1989) ....................................................................................... 8, 9

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024) ......................................................................................................... 2

*Ctr. for Biological Diversity v. Hamilton*,
   453 F.3d 1331 (11th Cir. 2006) ....................................................................................... 3

*Earle v. D.C.*,
   707 F.3d 299 (D.C. Cir. 2012) ..................................................................................... 3, 5

*Family Div. Trial Lawyers of Super. Ct.-D.C., Inc. v. Moultrie*,
   725 F.2d 695 (D.C. Cir. 1984) ....................................................................................... 12

*FCC v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993) ................................................................................................... 15, 16

*Ferguson v. Skrupa*,
   372 U.S. 726 (1963) ....................................................................................................... 15

*Gersman v. Grp. Health Ass'n, Inc.*,
   975 F.2d 886 (D.C. Cir. 2022) ....................................................................................... 13

*Golden Glow Tanning Salon, Inc. v. City of Columbus*,
   52 F.4th 974 (5th Cir. 2022) ........................................................................................... 16

*Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston*,
   660 F.3d 235 (5th Cir. 2011) ......................................................................................... 16

*Herr v. U.S. Forest Serv.*,
   803 F.3d 809 (6th Cir. 2015) ........................................................................................... 2

*Hettinga v. United States*,
   677 F.3d 471 (D.C. Cir. 2012) ................................................................................... 15, 16

*Hill v. U.S. Dep't of the Interior*,
   699 F. Supp. 3d 1 (D.D.C. 2023) ................................................................................. 4, 17

*Izaak Walton League of Am., Inc. v. Kimbell*,
  558 F.3d 751 (8th Cir. 2009) ............................................................. 3, 5

*Johnson v. Dist. of Columbia*,
  49 F. Supp. 3d 115 (D.D.C. 2014) ...................................................... 11

*Krishnan v. Mineta*,
  150 F. Supp. 2d 31 (D.D.C. 2001) ...................................................... 12

*McGregor v. La. State Univ. Bd. of Supervisors*,
  3 F.3d 850 (5th Cir. 1993) .................................................................. 3

*Neighbors of Casino San Pablo v. Salazar*,
  442 F. App'x 579 (D.C. Cir. 2011) ...................................................... 4

*Novak v. United States*,
  795 F.3d 1012 (9th Cir. 2015), .......................................................... 15

*Preminger v. Sec'y of Veterans Affs.*,
  517 F.3d 1299 (Fed. Cir. 2008) ........................................................... 5

*Rostker v. Goldberg*,
  453 U.S. 57 (1981) ............................................................................ 15

*Sanchez v. Off. of State Superintendent of Educ.*,
  45 F.4th 388 (D.C. Cir. 2022) ............................................................ 14

*Sec'y of Agric. v. Cent. Roig Refin. Co.*,
  338 U.S. 604 (1950) .......................................................................... 13

*St. Joseph Abbey v. Castille*,
  712 F.3d 215 (5th Cir. 2013) ......................................................... 15, 16

*State of Kansas v. United States*,
  16 F.3d 436 (D.C. Cir. 1994) .............................................................. 8

*State of Pennsylvania v. Wheeling & Belmont Bridge Co.*,
  59 U.S. 421 (1855) ......................................................................... 7, 8

*Stupak-Thrall v. Glickman*,
  346 F.3d 579 (6th Cir. 2003) .............................................................. 5

*Territory of Alaska v. Troy*,
  258 U.S. 101 (1922) .......................................................................... 10

*United States v. Carolene Prods. Co.*,
  304 U.S. 144 (1938) .......................................................................... 13

*Williams v. Lew*,
  819 F.3d 466 (D.C. Cir. 2016) ............................................................ 12

*Williamson v. Lee Optical*,
  348 U.S. 483 (1955) .......................................................................... 16

*Yukon-Kuskokwim Health Corp. v. United States*,
  444 F. Supp. 3d 215 (D.D.C. 2020) ..................................................... 6

## Statutes & Legislative Journals

28 U.S.C. § 2401(a) ........................................................................................... 1, 2, 5

46 U.S.C. § 50101 ................................................................................................. 9, 14

## Other Authorities

59 Cong. Rec. 6863 (May 11, 1920) ......................................................................... 10

Sam Heavenrich, The Neglected Port Preference Clause and the Jones Act,
   132 Yale L.J. 559 (2022) ...................................................................................... 7

## I.    INTRODUCTION

Kōloa Rum Company's opposition brief confirms that its claims are baseless and must be dismissed with prejudice.  Kōloa Rum does not dispute that it could have brought this case in 2009, and so the six-year statute of limitations from when its claims first accrued has now expired.  Kōloa Rum also lacks standing because its asserted harms are not traceable to the Jones Act or redressable by a ruling from this Court.  On the merits, should the Court reach them, Kōloa Rum relies on an interpretation of the Port Preference Clause that directly conflicts with two centuries of precedent, and fails to address many arguments about why its claims are implausible.  Kōloa Rum openly concedes that the main theory underlying its Due Process Clause claim is barred by circuit precedent.  Its other theories are similarly baseless.  The Court should scuttle this case.

## II.    ARGUMENT

### A.    Kōloa Rum's Claims are Time-Barred and Cannot Be Saved by the Continuing Violation Doctrine.

Kōloa Rum does not dispute that 28 U.S.C. § 2401(a) controls here, that its alleged injury first accrued 16 years ago, or that it could have filed suit within six years of that time—i.e., a decade ago.  Instead, Kōloa Rum claims that it can bring this suit anytime it wants—in perpetuity it seems—because the Jones Act continues to affect it.  That is not the law, and Kōloa Rum's arguments to the contrary are unavailing.

*1.    The limitations period runs from the first accrual of a plaintiff's claim.*

Kōloa Rum contends that barring its suit would "not only contradict the plain accrual rule recognized in *Corner Post* but would also produce the absurd result of placing unconstitutional statutes beyond judicial review solely by virtue of their age."  Dkt. No. 47 at 19.  Kōloa Rum misunderstands *Corner Post* and the issue at hand.  AMP and MTD do not argue that *no one* could challenge the Jones Act; they contend that *this plaintiff* cannot challenge the Jones Act in the

posture of this suit.  *See* Dkt. No. 44-1 at 18.  Of course, as the Supreme Court has made clear, regulated parties can always challenge the application of the law "in enforcement proceedings against them."  *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 823 (2024). And "newcomers" to the field who first suffer injury from a law more than six years after its passage can still challenge it, because the right of action "first accrues" under 28 U.S.C. § 2401(a) when a "plaintiff suffers the injury required to press" its claim in court.  *Id.* at 811, 824.  But Kōloa Rum's case presents a different question—whether a long-extant entity that was first allegedly injured by a law well over six years ago can suddenly bring a pre-enforcement challenge to that law.  The answer to that question is no.

A claim accrues under § 2401(a) when the plaintiff who is suing is first injured.  *Corner Post, Inc.*, 603 U.S. at 806–09 (citing approvingly *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 822 (6th Cir. 2015), which held that "[w]hen a party *first* becomes aggrieved by a regulation that exceeds an agency's statutory authority more than six years after the regulation was promulgated, that party may challenge the regulation without waiting for enforcement proceedings" (emphasis in original)).  Thus, in *Corner Post*, the plaintiff—a new convenience store—was permitted to challenge a decade-old Federal Reserve rule setting credit card transaction fees, because that store was a "newcomer" which had not even swiped its first credit card—and thus suffered its injury— until more than six years after the rule's issuance.  *Id.* at 804, 824.  The Court found *that* plaintiff's claim timely because it sued within six years of its own injury.  *Id.* at 804, 813.

So too here, the clock ran from when the Jones Act *first* allegedly affected Kōloa Rum's purchases and shipments, thus establishing the alleged right of action in 2009.  Dkt. No. 13 at ¶ 2; Dkt. No. 47 at 9.  By contrast, under Kōloa Rum's "fresh harm" theory, *Corner Post* would have no resonance—new and old businesses alike would be entitled to challenge the Federal Reserve

rule because every new credit card swipe—just like every new purchase or shipment under Kōloa Rum's preferred rule—would simply restart the clock. Dkt. No. 47 at 20. Under *Corner Post*, that is plainly not the rule.

   *2.  The Jones Act does not constitute a continuing or repeating violation.*

   Kōloa Rum next seeks an exception to the normal accrual rule, characterizing the Jones Act as a continuing or repeating violation, which would pause or perpetually restart the limitations period. Dkt. No. 47 at 20. But this exception does not fit and would only swallow the rule.

   To start, Kōloa Rum is challenging the Jones Act itself—not a specific enforcement ruling or some discrete agency action against the company. The mere existence of an offending law, however, is not a continued or repeated violation. That would "confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation." *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 867 (5th Cir. 1993); *Earle v. D.C.*, 707 F.3d 299, 306 (D.C. Cir. 2012) (explaining that the continuing violation doctrine does not "make actionable either a discrete unlawful act or the 'lingering effect of an unlawful act' . . . . Moreover, the 'mere failure to right a wrong . . . cannot be a continuing wrong . . . for that is the purpose of any lawsuit and the exception would obliterate the rule"); *see also Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 759 (8th Cir. 2009); *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006).

   Kōloa Rum cites several cases to support its view that the limitations period does not run on the prospective application of an unconstitutional law. *See* Dkt. No. 47 at 19–20. Except for one case, the cited authorities are all out-of-circuit damages cases brought under Section 1983 (which relies on state personal injury statutes of limitations, not § 2401(a)) or some other damages statute that provides a distinct framework for challenging certain injuries not applicable here.

   The one case Kōloa Rum cites involving 28 U.S.C. § 2401(a) is this Court's decision in

*Hill v. U.S. Department of the Interior*, 699 F. Supp. 3d 1 (D.D.C. 2023). But *Hill* cuts against it. There, members of the Crow Tribe who held allotments of land on the Crow Reservation sued the U.S. Department of the Interior in 2022, challenging the constitutionality of the Crow Tribe Water Rights Settlement Act of 2010 and the Secretary of Interior's subsequent 2016 publication of findings that the conditions specified in the Settlement Act for certain waivers and releases to take effect had been met. *Id.* at 3, 27. The allottees sued just within six years of the 2016 publication and argued that the Settlement Act did not actually take effect until that 2016 publication. *Id.* at 10 (explaining the Settlement Act ties the effective date of the waivers and releases of claims to the Act's "enforceability date," which the Settlement Act defined as the date the Secretary publishes findings in the Federal Register). Contrary to Kōloa Rum's view that the statute of limitations does not run on constitutional claims, the Court explained that "any facial challenge to the Settlement Act would be barred by the six-year statute of limitations." *Id.* at 27. The Court then went on to "assume for purposes of its analysis" that the allottees were bringing an as-applied challenge to the Settlement Act through their timely challenge to the Secretary's 2016 publication. *Id.* Unlike the allottees in *Hill*, Kōloa Rum did not bring its suit within six years of the Jones Act's application to its operations in 2009. *Hill* therefore does not support Koloa Rum's limitations theory; if anything, it demonstrates why the current challenge—whether characterized as facial or as-applied—is time barred.

*Hill* is also aligned with the numerous cases enforcing § 2401(a)'s time bar against plaintiffs who—like Kōloa Rum—argued that their late claims should survive because they were challenging laws that continued to burden them. *See, e.g.*, *Neighbors of Casino San Pablo v. Salazar*, 442 F. App'x 579, 580 (D.C. Cir. 2011) (finding time-barred a constitutional challenge to the Omnibus Indian Advancement Act that rendered property eligible for Indian casinos, even

though plaintiffs—the casino's neighbors—claimed ongoing harms from the casino's presence); *Izaak Walton League of Am., Inc.*, 558 F.3d at 759–61 (upholding time bar and rejecting "continuing violation" theory where plaintiff challenged a wilderness designation which had ongoing land-use consequences); *Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003) (holding that § 2401(a)'s time bar runs from when plaintiff first knows or should know of the injury stemming from the law). This makes good sense: if the continuing violation doctrine applied to the mere continuing operation of a rule or law, then "there effectively would be no statute of limitations because the injury would always be ongoing." *Preminger v. Sec'y of Veterans Affs.*, 517 F.3d 1299, 1307 (Fed. Cir. 2008) (rejecting application of continuing violation theory to § 2401(a)'s statute of limitations). The Court should simply apply the plain terms of § 2401(a) to find that the six-year limitations period runs from the time "the right of action *first accrues*." 28 U.S.C. § 2401(a) (emphasis added).

In any event, the continuing violation doctrine is a narrow "exception" to the normal rule of accrual—an exception which Kōloa Rum does not meet. This Circuit has recognized that the doctrine could apply in two situations: (1) where the challenged conduct's "character as a violation did not become clear until it was repeated . . . typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality," or (2) where a "statute imposes a continuing obligation to act" and a party fails to take the required action. *Earle*, 707 F.3d at 307 (brackets removed); *see also Appalachian Voices v. McCarthy*, 989 F. Supp. 2d 30, 45 (D.D.C. 2013). Neither of these scenarios applies here. Kōloa Rum's alleged injuries are not of the type such that "a violation did not become clear until it was repeated during the limitations period," like a harassment claim might be. Instead, the Amended Complaint alleges violations of the Port Preference and Due Process Clauses that stem directly from the Jones Act's restriction on

commerce.  Dkt. No. 13 ¶¶ 71–78, 84–86.  Nor does Kōloa Rum allege that the defendants are in continual violation of any statutory obligation to undertake a non-discretionary action, of the sort that this court has previously deemed a continuing violation.  *See, e.g.*, *Yukon-Kuskokwim Health Corp. v. United States*, 444 F. Supp. 3d 215, 220 (D.D.C. 2020) (applying continuing violation doctrine where agency missed statutory deadline to complete environmental remediation, because the statute imposed a "continuing obligation" to do so); *Appalachian Voices*, 989 F. Supp. at 45 (applying continuing violation doctrine where agency failed to revise coal-ash regulations, because statute imposed an unambiguous command requiring agency action).

Even under Kōloa Rum's own theory, its Amended Complaint would be defective, as it fails to assert any factual bases to support extending the limitations period.  Kōloa Rum does not dispute that it was first allegedly injured in 2009.  *See* Dkt. No. 44-1 at 17; Dkt. No. 47 at 8; Dkt. No. 15 at ¶ 2.  Beyond that, Kōloa Rum's Amended Complaint—like its response brief—is devoid of the allegations needed to determine a different ripening event for the current claims.  The lack of detail as to any particular shipment date, route, or alleged overcharge stemming from the Jones Act only confirms that this is an untimely challenge.

**B.      Kōloa Rum Lacks Standing to Bring Its Constitutional Challenge to the Jones Act.**

To avoid duplicative briefing, AMP and MTD adopt and incorporate by reference the standing arguments asserted by Intervenor-Defendant Matson Navigation Company's reply brief in support of its motion to dismiss.

**C.      Kōloa Rum Fails to State a Claim Under the Port Preference Clause.**

AMP and MTD explained in their opening brief that the Jones Act does not violate the Port Preference Clause because it is a facially neutral law adopted to create a merchant marine with economic and national security benefits to the United States, any disparate effects on one state's ports are incidental to the law's facially neutral objectives, and Kōloa Rum's scant allegations

about Congress's intent to punish Hawaii by adopting the Jones Act are implausible and thus insufficient to state a Port Preference Clause claim.  *See* Dkt. No. 44-1 at 19–27.  In response, Kōloa Rum advances an interpretation of the Port Preference Clause that conflicts with nearly two centuries of unbroken jurisprudence.  Kōloa Rum also fails to address numerous reasons why its claim is implausible and must be dismissed.

> 1.  *No federal court has adopted Kōloa Rum's interpretation of the Port Preference Clause.*

Kōloa Rum contends that the Port Preference Clause broadly "prohibits any 'preference' accomplished by 'regulation of Commerce,'" and that it can state a claim merely by alleging "that a law was enacted with the purpose of discriminating against a state's ports and that the law has achieved the discriminatory effect."  Dkt. No. 47 at 21.  These contentions conflict with every federal case interpreting the clause.[1]

Kōloa Rum errs by cherry picking quotations from the Supreme Court's decisions in *Wheeling* and *Armour Packing* and distorting their holdings.  Dkt. No. 47 at 23–24 (discussing *State of Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421 (1855) and *Armour Packing Co. v. United States*, 209 U.S. 56 (1908)).  Kōloa Rum contends that *Wheeling* interpreted the Port Preference Clause as reaching "any legislation 'looking to a direct privilege or preference' for a state's ports," and not only those laws with "facially explicit preferences."  Dkt. No. 47 at 23.  Kōloa Rum similarly contends that the statement in *Armour Packing* that the clause proscribes "legislation intended to give and having the effect of giving preference" allows it to state a claim

---

[1] Kōloa Rum's arguments track—in some cases word-for-word—a note written by a law student in the Yale Law Journal that advocates for the invalidation of the Jones Act under a "broad" reading of the Port Preference Clause.  *Compare* Dkt. No. 47 at 21–29, *with* Sam Heavenrich, The Neglected Port Preference Clause and the Jones Act, 132 YALE L.J. 559 (2022).  Kōloa Rum fails to cite to or otherwise acknowledge this student note in its opposition brief despite parroting the note's arguments and citations.  *See generally* Dkt. No. 47.

merely by alleging a discriminatory purpose and discriminatory effects. *Id*. at 24 (quoting *Armour Packing*, 209 U.S. at 80).

The Supreme Court has repeatedly rejected Kōloa Rum's arguments. In *Wheeling* and *Armour Packing*, the purported discriminatory effects of the challenged statutes were not relevant to the court's analysis. In *Wheeling*, the Supreme Court assumed there were discriminatory effects. 59 U.S. at 433 (describing the purported effects, "[c]onceding all this to be true," but finding no violation). In *Armour Packing*, the Supreme Court conceded that regulating shipments by rail might advantage shipments by water, but concluded these were "natural advantages and are not created by statutory law." 209 U.S. at 80. In both cases, the Supreme Court was satisfied that the statute in question had an express purpose unrelated to preferring a certain state's ports, and concluded that any incidental preferences "cannot be construed as a violation" of the clause. *Id*.; *see also Wheeling*, 59 U.S. at 433–34; *State of Kansas v. United States*, 16 F.3d 436, 441 (D.C. Cir. 1994) (looking to the challenged statute's "obvious purpose" and "primary impact").

Indeed, in *Wheeling*, the Court recognized that, by interpretating the Port Preference Clause as Kōloa Rum would prefer here, "the principal object of the framers of the instrument"—e.g., the Jones Act, in this case—"would be sacrificed to the subordinate consequences resulting from its exercise." 509 U.S. at 34. In other words, if the "principal object" of the statute is neutral with respect to state ports, that is the end of the inquiry. This is why Judge Easterbrook observed that "[d]isparate consequences of neutral rules do not violate the Port Preference Clause." *City of Milwaukee v. Yeutter*, 877 F.2d 540, 545 (7th Cir. 1989).

Kōloa Rum summarily discredits *Yeutter* as "unjustifiably cramped." Dkt. No. 47 at 24. But *Yeutter* merely summarized an "unbroken line" of Supreme Court cases spanning a century, including *Wheeling*, *Armour Packing*, and several others. 877 F.2d at 545–46. *Yeutter* also

credited the 1788 interpretation of the Port Preference Clause by its very proponent, Luther Martin, as he "was in the ideal position to know what he had and hadn't obtained from his colleagues at the [Constitutional] Convention." *Id*. at 546. "He got a ban on express discrimination; he wanted, and couldn't get, a ban on disparate impact." *Id*. But "disparate impact" is precisely what Kōloa Rum now seeks from this Court against centuries of precedent rejecting that approach. Federal courts' unbroken interpretation of the Port Preference Clause does not render the clause "meaningless," as Koloa Rum contends, Dkt. No. 47 at 22, but rather gives effect to its original purpose to proscribe explicit favoritism for one state's ports.

Like the statutes at issue in *Wheeling*, *Armour Packing*, *Yeutter*, *Kansas*, and all the other cases cited in AMP and MTD's opening brief, the Jones Act is a facially neutral law. Its express purpose is to create a U.S. merchant marine for economic and national security benefits. *See* 46 U.S.C. § 50101. The Jones Act says nothing about any ports, much less expressly provides any preference for the ports of one state over another's. Kōloa Rum does not dispute this. The unbroken line of precedent discussed above compels dismissal on this basis alone.

*2. Kōloa Rum fails its own test.*

Even if the Court were inclined to revisit centuries of precedent, Kōloa Rum fails to meet its own test for stating a claim under the Port Preference Clause. According to Kōloa Rum, it must show both a discriminatory purpose and a discriminatory effect of the Jones Act. Dkt. No. 47 at 21. Neither is plausibly alleged in Kōloa Rum's Amended Complaint.

*a. Kōloa Rum has not plausibly alleged that Congress had a discriminatory purpose.*

Kōloa Rum contends that the "statutory scheme" of the Jones Act was "designed to channel commerce away from Hawai'i, which was a territory at the time" of the Jones Act's passage. *Id*. at 25. Kōloa Rum provides no relevant allegations to support this contention, and the statute's plain language and legislative history show how implausible it is.

To begin with, Kōloa Rum ignores the relevant legislative history. As AMP and MTD explained in their opening brief, the Jones Act merely continued the same cabotage restrictions that were first enacted over 100 years earlier in 1817. *See* Dkt. No. 44-1 at 8–11, 25–26. Senator Jones himself acknowledged that the "coastwise laws" are "left just as they are; we have not attempted to interfere with them." 59 Cong. Rec. 6863 (May 11, 1920). Kōloa Rum does not dispute, and thus concedes, that the restrictions it complains about predated the Jones Act by over 100 years.

Kōloa Rum also fails to address the argument that since Hawaii was a territory in 1920, Congress could not possibly have violated the Port Preference Clause when it adopted the Jones Act, because the clause by its express terms applies only to "States." *See* Dkt. No. 44-1 at 24–25 (citing *Territory of Alaska v. Troy*, 258 U.S. 101 (1922), a case Kōloa Rum also fails to address). Kōloa Rum insists that interpretation of constitutional provisions "begins with the text." Dkt. No. 47 at 21. But Kōloa Rum fails to dispute, and thus concedes, that the plain text of the clause bars its claim because Hawaii was not a state when Congress passed the Jones Act.

Putting all this together, Kōloa Rum's fundamental premise seems to be that in 1817 Congress predicted that the sovereign nation of Hawaii would one day become a U.S. state, that Congress wanted to channel commerce away from this prospective state some 150 years into the future when it finally joined the Union, and Congress did so surreptitiously through a series of facially neutral statutes, ending with the Jones Act, having the explicit purpose of promoting national security and economic interests by incentivizing the creation of a merchant marine fleet. Rule 12(b)(6) does not compel the Court to credit such fantasy.

Nor does Kōloa Rum respond to the well-settled case law holding that the personal motivations of a particular legislator like Senator Jones cannot show congressional intent. *See*

Dkt. No. 44-1 at 23–24 (citing cases declining to elevate the motivation of individual congresspersons to indicate congressional intent). There is nothing left in Kōloa Rum's Amended Complaint to make plausible its allegation that Congress intended to channel commerce away from Hawaii. For this reason alone, Kōloa Rum's Port Preference Clause claim must be dismissed.

       b. *Kōloa Rum's allegations of discriminatory effects are conclusory and insufficient to support its claim.*

     Kōloa Rum complains about higher shipping costs purportedly due to the Jones Act, but its allegations are conclusory and thus fail to meet the plausibility standard required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Kōloa Rum asserts that "Hawaiian businesses face higher freight rates, fewer carrier options, and thinner profit margins, while their mainland competitors enjoy structural advantages," and that "[t]hese effects are the direct result of the Jones Act diverting traffic from Hawai'i ports to mainland ports, resulting in fewer and more expensive imports and exports." Dkt. No. 47 at 28. The Amended Complaint provides no further allegations as to what these costs might be, what other businesses it is referring to, and how these cost and profits margins actually compare to any other similarly-situated businesses on the mainland. Thus, Kōloa Rum's Amended Complaint presents no more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," by alleging generic discriminatory effects "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal marks omitted).

     Such "conclusory allegations" "are not entitled to the assumption of truth" at the motion-to-dismiss stage. *Id.* at 679; *accord Johnson v. Dist. of Columbia*, 49 F. Supp. 3d 115, 121 (D.D.C. 2014). Kōloa Rum claims that the Court must accept its conclusory allegation that the "the Jones Act continues to operate today to the systemic detriment of Hawai'i's ports." Dkt. No. 47 at 29; *see also, e.g.*, Dkt. No. 13 ¶ 49 ("The higher shipping costs imposed by the Jones Act lead to inflated prices for essential goods, including food products, raw materials, equipment, and many

other items."). But these are not facts; they are conclusory statements. And "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686; *see also Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (noting that courts are not bound to accept legal conclusions couched as factual averments); *Krishnan v. Mineta*, 150 F. Supp. 2d 31, 34 (D.D.C. 2001) (noting that courts need not accept allegations that are "overbroad and unsupported by specific factual averments").

The Court need not even evaluate these purported effects; because it has failed to allege any discriminatory intent, *see supra* Section II.C.2.a, Kōloa Rum has failed its own test under the Port Preference Clause. In any event, even if the Court takes Kōloa Rum's allegations regarding the purported effects of the Jones Act as true, Kōloa Rum still has failed to state a claim under any formulation of the Port Preference Clause framework—either the one that courts have accepted over the past two centuries or the novel one that Kōloa Rum advances.

## D.    Kōloa Rum Has Failed to State a Claim Under the Due Process Clause.

### 1.    *Kōloa Rum concedes that it has not alleged a fundamental liberty interest warranting heightened scrutiny.*

Kōloa Rum maintains that the Jones Act is subject to heightened scrutiny because the law burdens its right to earn a living, which it considers to be a fundamental right. Dkt. No. 47 at 36–39. Kōloa Rum concedes, however, that this argument is foreclosed by D.C. Circuit precedent that "has deemed the right nonfundamental." *Id.* at 38; *cf. Family Div. Trial Lawyers of Super. Ct.-D.C., Inc. v. Moultrie*, 725 F.2d 695, 709–10 (D.C. Cir. 1984) ("We agree that the appellants' right to earn a living as lawyers is not so fundamental that it triggers strict judicial scrutiny of the challenged system; if the system reflects a rational choice aimed at furthering legitimate state interests, a court must uphold it."). This concession ends the inquiry before this Court. *See*

*Gersman v. Grp. Health Ass'n, Inc.*, 975 F.2d 886, 897 (D.C. Cir. 2022) (the D.C. Circuit and district courts are "bound by the decisions of prior panels of this Court unless and until overturned by the court en banc or by Higher Authority" (internal quotation marks omitted)).

Kōloa Rum alternatively argues that heightened scrutiny applies to the Jones Act under footnote four of *United States v. Carolene Products Co.*, 304 U.S. 144 (1938). Kōloa Rum contends that this footnote somehow should compel the Court to "take a closer look to determine whether the law was a product of animus or aimed at some illegitimate end" because "Hawai'i did not have access to the political process" at the time. Dkt. No. 47 at 39. This argument fails.

Kōloa Rum provides no textual or caselaw authority to support the proposition that the cited footnote compels heightened scrutiny for territories that have yet to be admitted as States into the Union. *See Carolene Prods.*, 304 U.S. at 152 n.4 (suggesting only that "legislation which restricts those political processes which can ordinarily be expected to bring about repeal of undesirable legislation" or "statutes directed at particular religious, or national, or racial minorities" may "be subjected to more exacting judicial scrutiny under the general prohibitions of the Fourteenth Amendment than are most other types of legislation" (citations omitted)). Nor could Kōloa Rum's novel standard possibly be administered. By Kōloa Rum's logic, any law passed by Congress before a state is admitted to the Union that has a disproportionate effect on that state—however attenuated, and intentional or otherwise—is subject to heightened scrutiny. And by extension, any law passed by Congress today that has a disproportionate effect on Puerto Rico, Guam, or other current U.S. territories is subject to heightened scrutiny. This is not the law. *See, e.g.*, *Sec'y of Agric. v. Cent. Roig Refin. Co.*, 338 U.S. 604, 616–19 (1950) (explaining that legislation did not offend the Due Process Clause even where it set different quotas for sugar from refiners in island territories than from refiners on the mainland, thereby creating inequalities).

The Jones Act is not subject to heightened scrutiny, and the Court should thus evaluate Kōloa Rum's due process claim (if at all) under rational basis review.

      *2.   The Jones Act survives rational basis review.*

Retreating to its final redoubt, Kōloa Rum insists that it "need only plausibly allege that the Jones Act is not rationally related to its ends." Dkt. No. 47 at 31–35. Kōloa Rum misstates the test, and then fails it.

For its due process claim to survive, Kōloa Rum must "allege facts showing that *no reasonably conceivable* state of facts could provide a rational basis for the challenged policy." *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 396 (D.C. Cir. 2022) (emphasis added). This is a high bar that Kōloa Rum has not cleared.

The few conclusory assertions in Kōloa Rum's Amended Complaint cannot overcome the statute's plain language and context. Tracing its justification to the founding days of our republic, *see* Dkt. No. 44-1 at 8–9, Congress clearly desired a private merchant marine fleet consisting of U.S.-built, U.S.-owned, and U.S.-crewed vessels ready and available to assist the nation in time of war or national emergency. These objectives are clearly expressed in the statute, 46 U.S.C. § 50101, and Congress has repeatedly reaffirmed its commitment to them, *see* Dkt. No. 44-1 at 12–13 (citing examples). Congress decided to achieve these objectives by incentivizing U.S. citizens to build, own, and operate vessels by reserving certain U.S. trade routes for such vessels. AMP and MTD's members have done just that, and they wrought in hard steel and sweat what the nation's founders envisioned hundreds of years ago. Courts have repeatedly recognized the Jones Act as a proper exercise of Congress's commerce power and therefore not a violation of the Due Process Clause. *See* Dkt. No. 44-1 at 30 (citing *Novak v. United States*, 795 F.3d 1012, 1022 (9th

Cir. 2015),[2] and *Cent. Vt. Transp. Co. v. Durning*, 294 U.S. 33, 41 (1935)[3]).  Kōloa Rum's

disagreements with the purpose and effect of this longstanding policy must be taken to Congress,

not this Court.

Allegations that "the number and quality of American-built commercial ships have

declined" under the Jones Act, or that there are "fewer ships available for military use," Dkt. No.

47 at 33–34, go to the success of the Jones Act in achieving its objectives, not whether Congress

had a rational basis for the law in the first instance. Whether the Jones Act is adequately serving

national defense interests is not a question for the courts to resolve.  *See Rostker v. Goldberg*, 453

U.S. 57, 64 (1981) (noting that there is "no other area" where courts accord Congress "greater

deference" than its "authority over national defense"); *Hettinga v. United States*, 677 F.3d 471,

478 (D.C. Cir. 2012) ("We grant statutes involving economic policy a 'strong presumption of

validity.'" (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993)).

The Fifth Circuit case that Kōloa Rum relies upon does not suggest otherwise. *See St.*

*Joseph Abbey v. Castille*, 712 F.3d 215, 227 (5th Cir. 2013) ("[T]he inquiry is whether '[the]

measure bears a rational relation to a constitutionally permissible objective.'" (quoting *Ferguson*

*v. Skrupa*, 372 U.S. 726, 733 (1963) (Harlan, J., concurring))).  Indeed, that case acknowledges

---

[2] Kōloa Rum attempts to distinguish *Novak* because the plaintiffs there brought an equal
protection challenge to the Jones Act, as opposed to a due process clause challenge.  Dkt. No. 47
at 31.  While true, the Ninth Circuit nonetheless considered whether the plaintiffs there had a
viable due process claim when considering their motion for leave to amend their complaint to
plead such a claim.  *See Novak*, 795 F.3d at 1022.  The Ninth Circuit denied plaintiffs such leave
because a due process claim would have been futile.  *Id.* at 1022–23.

[3] Kōloa Rum asks the Court to disregard *Central Vermont* because the Supreme Court's due
process analysis in that case is "curt" and "looks nothing like the modern substantive due process
analysis."  Dkt. No. 47 at 31.  Kōloa Rum provides no reason why this Court should discount the
Supreme Court's conclusion that a law passed by Congress pursuant its Commerce Clause
powers does not violate a plaintiff's due process rights when there is no fundamental right that is
implicated.  *Cf. Wheeling*, 59 U.S. at 434–35; *Armour Packing*, 209 U.S. at 79–80.

that economic policy laws, such as cabotage laws, "may well be supported by a post hoc perceived rationale." *Id.* at 222–23 (citing *Williamson v. Lee Optical*, 348 U.S. 483 (1955)). In addition, contrary to Kōloa Rum's argument for recognizing a "fundamental right" to earn a living, *St. Joseph Abbey* explicitly noted that its due process analysis did not take into account "economic theory of social statics or draw upon a judicial vision of free enterprise." *Compare id.* at 227, *with* Dkt. No. 47 at 36–38 (citing, *inter alia*, Judge Ho's concurrence in *Golden Glow Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974 (5th Cir. 2022)).

Kōloa Rum contends that "[w]hile it's true that laws may be based on rational speculation, it's not true that a court must uphold them when the facts affirmatively dispel that speculation." Dkt. No. 47 at 34. The Supreme Court disagrees. *See Beach Commc'ns*, 508 U.S. at 315 ("[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."); *see also St. Joseph Abbey*, 712 F.3d at 223 (discussing *Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston*, 660 F.3d 235, 240 (5th Cir. 2011)), which found that even if Houston had been "motivated in part by economic protectionism" when enacting a permitting scheme that disfavored small cab companies, "there is no real dispute that promoting full-service taxi operations is a legitimate government purpose under the rational basis test").

Where, as here, rational basis review applies and "there are plausible reasons for Congress' action, [a court's] inquiry is at an end." *Hettinga*, 677 F.3d at 478 (quoting *Beach Commc'ns*, 508 U.S. at 313–14). Kōloa Rum's due process claim therefore fails as a matter of law.

\* \* \*

More broadly, Kōloa Rum contends that it is raising an as-applied challenge, not a facial challenge. Dkt. No. 47 at 16; *see also id.* at 8, 11, 39; Dkt. No. 13 ¶ 79. AMP and MTD's

arguments for dismissal do not turn on this distinction; Kōloa Rum's claims should be dismissed regardless of how they are characterized. To the extent it is relevant, however, Kōloa Rum's challenge is effectively a facial one: it does not challenge the law's application to just its company, but to all commerce with Hawaii. Moreover, the distinction between facial and as-applied challenges ultimately goes to the breadth of the remedy. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010); *Hill*, 699 F. Supp. 3d at 27. Kōloa Rum seeks a remedy that extends beyond itself and far beyond even the island of Kauai: an injunction of the Jones Act as applied to all Hawaiian individuals and businesses—a large population that Kōloa Rum has no standing or right to represent. In this sense, Kōloa Rum's challenge is facial.

## III.  CONCLUSION

For the foregoing reasons, as well as the reasons expressed in AMP and MTD's opening brief, Dkt. No. 44-1, because Kōloa Rum has not—and cannot—state a claim under the Port Preference Clause and Due Process Clause, the Court should dismiss Kōloa Rum's First Amended Complaint with prejudice.

Dated: October 3, 2025

K&L GATES LLP

By:    *s/ J. Timothy Hobbs*
    J. Timothy Hobbs, Bar No. 976470
    tim.hobbs@klgates.com
501 Commerce St.
Suite 1500
Nashville, Tennessee  37203
Telephone:      +1 615 780 6700
Facsimile:      +1 615 780 6799

Varu Chilakamarri, Bar. No. 90023656
1601 K Street NW
Washington, DC 20006
Varu.Chilakamarri@klgates.com
Telephone: +1 202 778 9165
Facsimile: +1 202 778 9100

David Wang (*pro hac vice*)
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
David.Wang@klgates.com
Telephone: +1 206 370 6554
Facsimile: +1 206 623 7022

*Attorneys for Intervenor-Defendants*
*American Maritime Partnership and Maritime*
*Trades Department of the AFL-CIO*